**BURSOR & FISHER, P.A.**
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*PHV* application forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mgirardi@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORINA**

| | |
|---|---|
| KACEY WILSON, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COLOURPOP COSMETICS, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kacey Wilson ("Plaintiff") brings this Class Action against ColourPop Cosmetics, LLC ("ColourPop" or "Defendant"), individually and on behalf of all others similarly situated. The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## NATURE OF THE ACTION

1.     This is a civil class action concerning Defendant's design, formulation, manufacture, marketing, advertising, distribution, and sale of eye makeup that contains color additives and ingredients that are dangerous when used on the immediate eye area.

2.     The products at issue include eyeshadow palettes (which Defendant sometimes refers to and promotes as, inter alia, "shadow palettes," "pigment palettes," or "pressed powder palettes") and eyeliner products that are formulated with and/or contain certain color additives that are not safe for use in the eye area (collectively "ColourPop Eye Makeup" or "Products"). Specifically, the Products are inherently dangerous because they are formulated with and/or contain the following color additives: FD&C Red No. 4; D&C Red No. 6, 7, 17, 21, 22, 27, 28, 30, 31, 33, 34, 36; D&C Violet No. 2; Ext. D&C Violet No. 2; FD&C Yellow No. 6; D&C Yellow No. 7, 8, 10, 11; Ext. D&C Yellow No. 7; D&C Orange No. 4, 5, 10, 11; D&C Green No. 6, 8; FD&C Green No. 3; D&C Brown No. 1; and/or D&C Blue No. 4 (the "Harmful Ingredients").[1]

3.     The United States Food and Drug Administration ("FDA") is responsible for approving individual color additives and setting usage restrictions.  In addition to being inherently dangerous, each of the Harmful Ingredients is designated by the FDA as unsuitable and unapproved for cosmetic use in the eye area.[2]

4.     The presence of one or more Harmful Ingredients renders the Products unsafe for use in the eye area (the "Defect").  The Products are thus adulterated and misbranded under the federal Food, Drug, and Cosmetics Act ("FDCA").  Accordingly, it is unlawful for Defendant to advertise, promote, market, or sell ColourPop Eye Makeup.  Nonetheless, Defendant's marketing,

---

[1] Here, and throughout, the term "Products" shall refer to any item sold by Defendant for use in the eye area that contains one or more Harmful Ingredients.

[2] See https://www.fda.gov/cosmetics/cosmetic-ingredient-names/color-additives-permitted-use-cosmetics

advertising, public statements, and social media posts and videos, encourage and instruct consumers to use the Products in the eye area.

5.     Defendant markets ColourPop Eye Makeup for a purpose (cosmetic application around the eye area) for which it cannot be used for both legally and because such use is inherently dangerous.  The Products cannot be used for their principal intended purpose.  The Products are thus worthless by virtue of the Defect.

6.     Defendant has undertaken a deliberate and willful pattern of conduct (including taking active measures) aimed at deceiving consumers, including Plaintiff, into believing that ColourPop Eye Makeup is safe for its intended use: cosmetic application around the eye area.

7.     At all relevant times, Defendant knew about the Defect and that the Products were banned by the FDA, but nevertheless marketed, advertised, and sold ColourPop Eye Makeup for use around the eyes without warning consumers of the known dangers.

8.     As a direct and proximate result of Defendant's misleading conduct, concealment of the Defect, and failure to adequately warn consumers about the presence of the Harmful Ingredients and the fact that the Products are banned by the FDA, Plaintiff and other similarly situated consumers ("Class" or "Class Members") purchased and/or used the Product to their detriment.

9.     Plaintiff and putative Class Members were unaware of the Defect and that the Products are banned by the FDA at the time they purchased the Products.  Had Plaintiff and Class Members known that ColourPop Eye Makeup contains a Defect rendering it unfit for its intended purpose and that they are banned by the FDA, they would not have purchased the Products or would have paid substantially less for the Products.

10.    Plaintiff and all putative Class Members purchased ColourPop Eye Makeup which suffered from the same Defect at the point of sale, and poses substantially the same safety risk to Plaintiff, putative Class Members, consumers, and the public.

11.    All of the Products suffer from the same Defect and are similarly mislabeled and falsely advertised because each of the Products contains one or more ingredients the FDA has deemed not fit for use around the eye area.

12.     Plaintiff and each putative Class Member have been damaged and suffered an injury in fact caused by Defendant's false, fraudulent, unfair, deceptive, and misleading practices, as set forth herein, and seek compensatory damages and injunctive relief.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the Class is a citizen of a State different from the Defendant.

14.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business within the State of California and is registered as a limited liability company in the State of California.  Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchase.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, because Defendant transacts business and/or has agents within this District, and because Defendant maintains its principal place of business within the State of California and is registered as a limited liability company in the State of California.

## PARTIES

16.     Plaintiff Kacey Wilson is a resident of San Francisco, California, who purchased and used ColourPop Eye Makeup within the relevant time period.  Specifically, Plaintiff Wilson purchased and used ColourPop's "Boudoir Noir" and "Menage a Muah" eyeshadow palettes, both of which contain the Harmful Ingredients and thus suffer from the Defect.

17.     ColourPop Cosmetics, LLC is registered as a limited liability company in the State of California and has its principal place of business at 1451 Vanguard Drive, Oxnard, California 93033.  ColourPop designs, formulates, manufactures, markets, advertises, distributes, and sells a wide range of consumer cosmetic products including but not limited to, eyeshadow, eyeliner,

eyelid primer, and eyebrow pencils, nationwide, including in California.[3]  Defendant's misleading and unlawful marketing, advertising and product information concerning the Products was conceived, reviewed, approved, and otherwise controlled from Defendant's California headquarters.  Defendant's misleading marketing concerning the Products was coordinated at, emanated from, and was developed at its California headquarters.  All critical decisions regarding the misleading marketing and advertising of the Products were made in California.

## THE PRODUCTS

18.    ColourPop Eye Makeup is sold at retail locations throughout the United States, including Ulta Beauty stores, and the Products are also available for purchase online at www.colourpop.com and through third-party retailers' websites.[4]

19.    The Products that are the subject of this lawsuit include eyeshadow palettes (which Defendant sometimes refers to as, inter alia, "shadow palettes," "pigment palettes," or "pressed powder palettes"), eyeliners (which Defendant sometimes refers to as "liners"), and other categories of products that Defendant has promoted or advertised for use in the eye area during the maximum time period allowed by law.

20.    The Products, which are sold online by Defendant at www.Colourpop.com as well as by third-party retailers, are all: (1) advertised and marketed by Defendant for cosmetic use on the eye area; (2) are reasonably understood by consumers to be safe and suitable for use in the eye area; and (3) purchased and used by consumers for cosmetic use on the eye area even though sale for such use is prohibited by FDA regulations.

***Defendant's Eyeshadow Palettes***

21.    There are currently over 100 different variations of ColourPop Eyeshadow Palettes available for purchase at  www.colourpop.com/collections/shadow-palette, many of which are formulated with and contain color additives that are prohibited for use around the eye area.

---

[3] *See generally* https://colourpop.com/ (last accessed July 29, 2022).

[4] https://www.ulta.com/brand/colourpop (last accessed July 29, 2022).

22.     The price of Colourpop Eyeshadow Palettes can range from around $10.00 to $39.00, and each product contains between 4-35 distinct colors or shades ("Color Pans") which ColourPop often refers to as "pressed powders."

23.     But regardless of what ColourPop calls each eyeshadow palette Product, they are intentionally marketed and sold to be indistinguishable from eyeshadow or eye makeup, their only reasonable and foreseeable use by consumers is cosmetic application in the eye area, and Defendant's promotional images, tutorials, and other advertising materials instruct and encourage that said products be used for cosmetic application in the eye area.

24.     ColourPop also markets, sells, advertises, and promotes other Eye Makeup Products containing the Harmful Ingredients for use on and around the eye area.

25.     For example, the ColourPop's Colour Me Obsessed! crème gel liner vault (an eyeliner) webpage depicts a model using the product in the shades "Good Reef" (pink) and "Catsuit" (teal) in the eye area even though those shades contain Harmful Ingredients.[5]



---

[5] Specifically, "Good Reef" contains the Harmful Ingredients Red 6 (CI 15850) and Yellow 10 (CI 47005) and "Catsuit" contains the Harmful Ingredient Yellow 10 (CI 47005).



26.     The webpage for the Colour Me Obsessed! eyeliner further states "Our super pigmented BFF Crème Gel Liner gives your eyes the prettiest pop of colour." (*see* Figure 3), and the Product on the website is found under "Makeup / Eyes / Eye Sets."[6] Defendant proceeds to explain the Product allows for "comfortable application in the waterline," which instructs for using the product in an area that comes in direct contact with the eye.




6 https://colourpop.com/products/colour-me-obsessed-creme-gel-liner-roll-vault#view-ingredients

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                              6

27.     In the "Application Tips" section of the Colour Me Obsessed! product's webpage, Defendant does not have a warning or use restriction listed for the Product.[7] Additionally, there is not a warning in or by the ingredients list, despite the Product containing Harmful Ingredients.

28.     Defendant regularly instructs and encourages consumers to use and apply ColourPop Eye Makeup containing the Harmful Ingredients in and around the eye area.

## THE PRODUCTS VIOLATE STATE AND FEDERAL REGULATIONS

29.     Defendant has engaged in unfair, unlawful, and fraudulent business conduct by formulating, manufacturing, distributing, marketing, advertising, and selling Colourpop Eye Makeup because the Products: (1) contain color additives that make them unreasonably dangerous for their sole and intended purpose; (2) are misbranded, mislabeled, and adulterated; and (3) are illegal to sell, advertise, or promote for cosmetic application and use in the eye area.

30.     Both the FDA and California Health & Safety Code tightly regulate color additives for use in cosmetic products.[8]

31.     For instance, the FDA states on its website that "If your product . . . contains a color additive, by law[9] you must adhere to requirements for:

a.  **Approval.** All color additives used in cosmetics (or any other FDA-regulated product) must be approved by FDA.  There must be a regulation specifically addressing a substance's use as a color additive, specifications, and restrictions.

b.  **Identity and specifications.** All color additives must meet the requirements for identity and specifications stated in the Code of Federal Regulations (CFR).

c.  **Use and restrictions.** Color additives may be used only for the intended uses stated in the regulations that pertain to them.  The regulations also specify other restrictions for

---

[7] https://colourpop.com/products/colour-me-obsessed-creme-gel-liner-roll-vault#view-ingredients
[8] California State law incorporates the FDA's color additive regulations.
[9] [FD&C Act, Sec. 721; 21 U.S.C. 379e; 21 CFR Parts 70 and 80]

certain colors, such as the maximum permissible concentration in the finished product."[10]

32.     Under the FD&C Act, "Except in the case of coal-tar hair dyes, failure to meet U.S. color additives requirements causes a cosmetic to be adulterated."[11]

33.     Pursuant to 21 CFR 70.5(a), Defendant may not use a color additive in products unless the regulation for that additive specifically permits such use.  A particular color additive may be safe for one purpose, such as use in lipstick, but unsafe for use for another purpose, such as around the eye area.

34.     The FDA defines "area of the eye" as "the area enclosed within circumference of the supra-orbital ridge and the infra-orbital ridge, including the eyebrow, the skin below the eyebrow, the eyelids and the eyelashes, and conjunctival sac of the eye, the eyeball, and the soft areolar tissue that lies within the perimeter of the infra-orbital ridge."[12]

35.     The FDA does not permit the following color additives to be used around the eye area (defined herein as "Harmful Ingredients"):[13]

- FD&C Red No. 4; D&C Red No. 6, 7, 17, 21, 22, 27, 28, 30, 31, 33, 34, 36
- D&C Violet No. 2, Ext. D&C Violet No. 2
- FD&C Yellow No. 6; D&C Yellow No. 7, 8, 10, 11; Ext. D&C Yellow No. 7
- D&C Orange No. 4, 5, 10, 11
- D&C Green No. 6, 8; FD&C Green No. 3
- D&C Brown No. 1
- D&C Blue No. 4

36.     Each of the Products is formulated with and contains one or more of the Harmful Ingredients.

---

[10] https://www.fda.gov/industry/color-additives-specific-products/color-additives-and-cosmetics-fact-sheet (last accessed July 29, 2022); Federal Food, Drug, and Cosmetic Act ("FD&C Act"), § 721: 21 U.S.C. 379e.

[11] FD&C Act, § 601(e); 21 U.S.C. 361(e)

[12] 21 CFR § 70.3(s)

[13] 21 CFR 74.2254, 74.2260, 74.2261, 74.2321, 74.2322, 74.2327, and 74.2328.

37.     ColourPop knows that these products are used in the eye area, and intentionally markets them for such purpose.  For example, ColourPop states under the application tips section for its "Fade Into Hue" eyeshadow (which contains Harmful Ingredients) to "[use] the pigments on your temples or underneath your brow," which, by the FDA's definition, *is* in the immediate eye area, even though the Products contain Harmful Ingredients.[14]

***Any Purported Disclaimer Language on Defendant's Website Is Not Curative***

38.     For a portion of the ColourPop Eye Makeup Products, Defendant's website includes vague language and inconsistent statements such as "* while not intended for use in the immediate eye area, these shades can be used anywhere else on your face or body! we recommend using these shades to enhance your overall look - for example, using the pigments on your temples or underneath your brow."[15]



**application tips**

tips: apply with your favorite shadow brushes. flat and firmer brushes will give the most color payoff. fluffier brushes are great for blending.

*while not intended for use in the immediate eye area, these shades can be used anywhere else on your face or body! we recommend using these shades to enhance your overall look - for example, using the pigments on your temples or underneath your brow.

39.     This is neither a safety warning nor an adequate disclaimer because: (1) it does not assist the consumer in understanding the danger; (2) it is designed and displayed in such a manner that a reasonable consumer would not see, receive, or understand it; (3) it does not actually instruct consumers to *not* use the product in the eye area, and (4) it specifically instructs consumers to use the Products in the immediate eye area, which *includes* "underneath your brow."

40.     The substance and placement of any purported disclaimer by Defendant falls far short of being prominent and conspicuous warnings.  And, any such purported disclaimers are contrary to other more prominent advertising in which Defendant specifically markets and sells the Products to be used in the eye area.

---

[14] *See, e.g.*, https://colourpop.com/products/fade-to-hue-pressed-powder-makeup-palette
[15] https://colourpop.com/products/fade-to-hue-pressed-powder-makeup-palette

41.     Defendant's purported disclaimers do nothing to assist the consumer in understanding the known risks of using ColourPop Eye Makeup, nor do they suggest that any known dangers exist.

42.     Further, to the extent any disclaimer recommends consumers use the Products "on your temples or **underneath your brow**," such a disclaimer directly contradicts the FDA's standards for what is included in the meaning of "the immediate eye area." (emphasis added)

43.     Consumers can navigate through the entire purchasing process online at ColourPop.com or with a third-party seller of the Products without ever encountering Defendant's hidden disclaimer.

44.     Further, the Products' promotional images and Defendant's marketing materials undermine and are directly contrary to any such purported disclaimers because models are repeatedly shown wearing specific eyeshadow colors that contain Harmful Ingredients on the eye area.

45.     Further, many ColourPop Eye Makeup products have no disclaimer whatsoever even though they are formulated with Harmful Ingredients.  For example, Defendant's webpage for its "Of Quartz" Product (which contains the Harmful Ingredient Yellow 10) does not include any warning language, purported disclaimers, or online statements that suggest or otherwise indicate that the product contains Harmful Ingredients (nor does its physical packaging).  It does, however, depict a model with the Product on her eye.[16]

***Plaintiff's Experience***

46.     Plaintiff Wilson purchased several of the Products, including but not limited to the Menage a Muah Palette and Boudoir Noir Palette, ("Plaintiff's Purchased Products") for personal cosmetic use.  Plaintiff has, within the past 5 years, purchased the Products from the Ulta Beauty or website.  Plaintiff's most recent purchase occurred in 2021.

47.     Plaintiff Wilson believed that Plaintiff's Purchased Products were safe for their intended use, namely for use around the eye area.

---

[16] https://colourpop.com/products/of-quartz-pressed-powder-palette

48.     Plaintiff Wilson reasonably relied on Defendant's representations and omissions when she decided to purchase and use various ColourPop Eye Makeup products, including but not limited to, Menage a Muah Palette and Boudoir Noir Palette for use in the eye area.

49.     At the time of purchase, Plaintiff Wilson was not aware of any warnings, safety issues, or instructions for use indicating that the Products are not safe or fit for use in the eye area.

50.     Similarly, Plaintiff Wilson was not aware of any warnings or disclosures that the Menage a Muah Palette and Boudoir Noir Palette contain color additives that the FDA has deemed not safe or fit for use in the eye area.

51.     The products Plaintiff purchased, like all of the Products at issue in this case are and were: (1) designed, formulated, and/or manufactured with Harmful Ingredients which render them unsafe and unfit for their intended use and purpose (cosmetic application to the eye area); (2) designed, formulated, and manufactured with substandard materials and/or construction which results in them being adulterated and/or misbranded Products that are unlawful to sell; and (3) Defendant deceptively omitted and concealed these and other material facts from Plaintiff Wilson and other reasonable consumers.

52.     As a result of Defendant's deceptive misrepresentations and fraudulent business practices, Plaintiff Wilson suffered injury and loss of money, including but not limited to: (1) Plaintiff Wilson did not receive any of the advertised benefits as described above; (2) Plaintiff Wilson paid for ColourPop Eye Makeup products that are unsafe by virtue of their design, formulation, construction, or workmanship; and (3) Plaintiff Wilson paid more for ColourPop Eye Makeup products than they are worth because the Products, by virtue of being formulated with and/or containing Harmful Ingredients, are misbranded, mislabeled, adulterated, and worthless.

53.     If Plaintiff Wilson had known that the Products are unfit for their intended use and defective, and that the representations made by Defendant are false and misleading, she would not have purchased the Products or would have paid substantially less than she did.  Therefore, Plaintiff Wilson did not receive the benefit of her bargain.

54.     Plaintiff will be unable to rely on the Products' marketing and advertising in the future, and so will be unable to purchase the Products in the future, although she would like to if

they were reformulated to remove the Harmful Ingredients.  Plaintiff continues to purchase eye

makeup products, although she does not currently purchase the Products, and intends on

purchasing eye makeup products in the future.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action individually and as representatives of all those similarly

situated, pursuant to Fed. R. Civ. P. 23, on behalf of the below-defined Class and Subclass:

> **Class**:
> All persons residing in the United States who purchased ColourPop Eye Makeup
> containing Harmful Ingredients during the maximum period permitted by law.
>
> **California Subclass**:
> All members of the Class who purchased ColourPop Eye Makeup containing Harmful
> Ingredients in California during the maximum period permitted by law.

56.     Specifically excluded from these definitions are: (1) Defendant, any entity in which

Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns

and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or

immediate family; and (3) Class Counsel.

57.     **Numerosity**: The Members of the Classes are so numerous that joinder of all

Members is impracticable.  While the exact number of putative Class Members is presently

unknown, it likely consists of tens of thousands of people geographically disbursed throughout the

United States.  The number of putative Class Members can be determined by sales information and

other records in Defendant's possession.  Moreover, joinder of all putative Class Members is not

practicable given their numbers and geographic diversity.  The Classes are readily identifiable from

information and records in the possession of Defendant and their authorized retailers.

58.     **Typicality**: The claims of the representative Plaintiff are typical in that Plaintiff,

like all putative Class Members, purchased ColourPop Eye Makeup that was designed, formulated,

manufactured, marketed, advertised, distributed, and sold by Defendant. Plaintiff, like all putative

Class Members, has been damaged by Defendant's misconduct in that, inter alia, Plaintiff incurred

or will continue to incur damages as a result of overpaying for defective ColourPop Eye Makeup

which makes the Products inherently dangerous and not fit for its intended use. Furthermore, the

1  factual basis of Defendant's misconduct is common to all putative Class Members because

2  Defendant has engaged, and continues to engage, in systematic fraudulent behavior that was and is

3  deliberate, includes negligent misconduct, and results in the same injury to all putative Class

4  Members.

5      59.    **Commonality**: Common questions of law and fact exist as to all putative Class

6  Members.  These questions predominate over questions that may affect only individual Class

7  Members because Defendant has acted on grounds generally applicable to the Classes.  Such

8  common legal or factual questions include, inter alia:

9      (a) Whether ColourPop Eye Makeup is defective;

10     (b) Whether ColourPop Eye Makeup is defectively designed and/or manufactured;

11     (c) Whether ColourPop Eyes Makeup is dangerous;

12     (d) Whether Defendant knew or reasonably should have known about the Defect prior to

13         distributing and selling ColourPop Eye Makeup to Plaintiff and the putative Classes;

14     (e) Whether Defendant knew or reasonably should have known ColourPop Eye Makeup

15         was dangerous when Defendant packaged, marketed, advertised, specified, instructed,

16         encouraged, and otherwise represented that ColourPop Eye Makeup was intended for

17         use in the eye area;

18     (f) Whether Defendant concealed from, omitted, and/or failed to disclose to Plaintiff and

19         the putative Classes the dangers associated with ColourPop Eye Makeup as a result of

20         the Products' Harmful Ingredients;

21     (g) Whether Defendant breached the implied warranty of merchantability and the Song-

22         Beverly Consumer Warranty Act, relating to ColourPop Eye Makeup;

23     (h) Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by

24         selling and/or marketing defective and/or misbranded ColourPop Eye Makeup;

25     (i) Whether Defendant violated Cal. Bus. & Prof. Code § 17500, *et seq.* (FAL);

26     (j) Whether Defendant violated Civil Code §§ 1750, *et seq.* (CLRA);

27     (k) Whether Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* (UCL);

28

(l)  Whether Plaintiff and the putative Classes are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of any such damages;

(m) Whether Defendant should be enjoined from selling and marketing ColourPop Eye Makeup containing Harmful Ingredients;

(n)  Whether Defendant should be enjoined from selling, promoting, and advertising that ColourPop Eye Makeup is safe and fit for use in the eye area when, in fact, the Products contain color additives that are prohibited for use in the eye area, i.e. the Harmful Ingredients; and

(o)  Other issues which may be revealed in discovery

60.     **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of putative Class Members. Plaintiff has no interests that are antagonistic to those of putative Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

61.     **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met.  Defendant will continue to commit the unlawful practices alleged herein, and putative Class Members will remain at an unreasonable and serious safety risk as a result of the Defect.  Defendant has acted and refused to act on grounds that apply generally to the putative Classes, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Classes as a whole.

62.     **Predominance and Superiority**: Plaintiff and putative Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, putative Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of putative Class Members' individual claims, it is likely that few putative Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, putative Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact

1    would also be a superior method to multiple individual actions or piecemeal litigation in that class

2    treatment will conserve the resources of the courts and the litigants and will promote consistency

3    and efficiency of adjudication.

4         63.    Plaintiff is not aware of any potential issues that would preclude the maintenance of

5    this class action.

6         64.    Defendant has acted or refused to act on grounds generally applicable to the putative

7    Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to

8    the putative Classes appropriate.

### <u>COUNT I</u>
**Breach of Implied Warranty**
**(Individually and on behalf of the Classes)**

9
10

11        65.    Plaintiff reasserts the allegations set forth in all preceding paragraphs and

12   incorporates such allegations by reference as if fully set forth herein.

13        66.    Plaintiff brings this cause of action against Defendant individually and on behalf of

14   the Classes.

15        67.    As described above, Plaintiff has standing to pursue this claim because Plaintiff has

16   suffered an injury-in-fact and has lost money or property as a result of Defendant's conduct.

17        68.    Defendant was at all relevant times the manufacturer, distributor, warrantor,

18   merchant, and/or seller of the ColourPop Eye Makeup.  Defendant knew or had reason to know of

19   the specific use for which the ColourPop Eye Makeup was purchased, as evidenced by Defendant's

20   marketing efforts, website(s), social media accounts, advertisements, and other statements that

21   promote and encourage consumers to use the Products in the eye area.

22        69.    By placing the ColourPop Eye Makeup into the stream of commerce, Defendant

23   provided Plaintiff and Class Members with implied warranties that ColourPop Eye Makeup was

24   merchantable and fit for the ordinary purposes for which it was sold.

25        70.    However, the ColourPop Eye Makeup is not fit for its ordinary purpose—use in the

26   eye area—because it contains ingredients that the FDA has deemed not fit for use around the eye

27   area.

28

71.     The Harmful Ingredients contained in ColourPop Eye Makeup prevent the Products from being safely used for their intended purpose, and thus constitutes a breach of the implied warranty of merchantability.  These problems are caused and exacerbated by Defendant's failure to adequately disclose to or warn Plaintiff and consumers of the Defect and that ColourPop Eye Makeup is not safe to use in the eye area. Defendant impliedly warranted that ColourPop Eye Makeup was of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that ColourPop Eye Makeup manufactured, supplied, distributed, and/or sold by Defendant was safe and reliable for use as eyeshadow, eyeliner, or other cosmetic use in the eye area; and (ii) a warranty that ColourPop Eye Makeup would be fit for its principal and intended use as eye makeup.

72.     Contrary to the applicable implied warranties, ColourPop Eye Makeup, at the time of sale and thereafter, was not fit for its ordinary and intended purpose of providing Plaintiff and Class Members with a cosmetic product that can be safely applied to the eye area without risk of injury.  Instead, ColourPop Eye Makeup suffers from a defective design and/or defective manufacturing, as alleged herein.

73.     Defendant's conduct described in this complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted in whole or in substance by statutes in all 50 states and the District of Columbia.

74.     The ColourPop Eye Makeup was defective at the time of sale when it left the exclusive control of Defendant or its agents.

75.     Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiff and members of the Classes, not third-party retailers, resellers, or distributors who sold the product. Moreover, Defendant exercised substantial control over which outlets can carry and sell ColourPop Eye Makeup, which are the same places that Plaintiff and Class Members purchased the Products.  In addition, Defendant's warranties are in no way designed to apply to the third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell it on an individual basis to consumers. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased ColourPop Eye Makeup.

76.    Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid an amount for the product that they would not have otherwise paid.  Plaintiff and the Class also did not receive the value of the product they paid for— the products are worthless or worth far less than Defendant represents due to the Defect.

77.    Defendant was provided extensive pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of warranty.  Any additional time to do so would be unnecessary and futile because Defendant has known of and concealed the Defect and has refused to repair or replace the defect free of charge.

78.    Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable conduct.

79.    As a result of the breach of the implied warranty of merchantability, Plaintiff and Class Members are entitled to legal and equitable relief, including injunctive relief, damages, attorneys' fees, litigation expenses and costs, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT II
**Breach of Implied Warranty Under the Song-Beverly Consumer Warranty Act
California Civil Code §§ 1790, *et seq.*
(Individually and on behalf of the Classes)**

80.    Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

81.    Plaintiff brings this cause of action against Defendant individually and on behalf of the Classes.

82.    As described above, Plaintiff has standing to pursue this claim because Plaintiff has suffered an injury-in-fact and has lost money or property as a result of Defendant's conduct.

83.    Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, every sale of consumer goods in California is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.

84.     Defendant is in the business of manufacturing, assembling, producing and/or selling the ColourPop Eye Makeup to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

85.     Defendant knew or had reason to know of the specific use for which the ColourPop Eye Makeup was purchased, as evidenced by Defendant's marketing efforts, website(s), social media accounts, advertisements, and other statements that promote and encourage consumers to use the Products in the eye area.

86.     By placing the ColourPop Eye Makeup into the stream of commerce, Defendant provided Plaintiff and Class Members with implied warranties that ColourPop Eye Makeup was merchantable and fit for the ordinary purposes for which it was sold.

87.     However, the ColourPop Eye Makeup is not fit for its ordinary purpose—use in the eye area—because it contains ingredients that the FDA has deemed not fit for use around the eye area.

88.     The Harmful Ingredients contained in ColourPop Eye Makeup prevent the Products from being safely used for their intended purpose, and thus constitutes a breach of the implied warranty of merchantability.  These problems are caused and exacerbated by Defendant's failure to adequately disclose to or warn Plaintiff and consumers of the Defect and that ColourPop Eye Makeup is not safe to use in the eye area. Defendant impliedly warranted that ColourPop Eye Makeup was of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that ColourPop Eye Makeup manufactured, supplied, distributed, and/or sold by Defendant was safe and reliable for use as eyeshadow, eyeliner, or other cosmetic use in the eye area; and (ii) a warranty that ColourPop Eye Makeup would be fit for its principal and intended use as eye makeup.

89.     Contrary to the applicable implied warranties, ColourPop Eye Makeup, at the time of sale and thereafter, was not fit for its ordinary and intended purpose of providing Plaintiff and Class Members with a cosmetic product that can be safely applied to the eye area without risk of injury.  Instead, ColourPop Eye Makeup suffers from a defective design and/or defective manufacturing, as alleged herein.

90.     Defendant's actions, as complained of herein, breached the implied warranties that ColourPop Eye Makeup was of merchantable quality and fit for such use.  *See* Cal. Civ. Code §§ 1791.1 and 1792.

91.     The ColourPop Eye Makeup was defective at the time of sale when it left the exclusive control of Defendant or its agents.

92.     Defendant's intended beneficiaries of its implied warranties were ultimately Plaintiff and members of the Classes, not third-party retailers, resellers, or distributors who sold the product. Moreover, Defendant exercised substantial control over which outlets can carry and sell ColourPop Eye Makeup, which are the same places that Plaintiff and Class Members purchased the Products.  In addition, Defendant's warranties are in no way designed to apply to the third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell it on an individual basis to consumers. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased ColourPop Eye Makeup.

93.     Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid an amount for the product that they would not have otherwise paid.  Plaintiff and the Class also did not receive the value of the product they paid for— the products are worthless or worth far less than Defendant represents due to the Defect.

94.     Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable conduct.

95.     Plaintiff and the Class members seek all relief available under the Song-Beverly Act.

96.     Plaintiff and Class Members are entitled to legal and equitable relief, including injunctive relief, damages, attorneys' fees, litigation expenses and costs, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT III**
**(IN THE ALTERNATIVE)**
**Unjust Enrichment or Restitution**
**(Individually and on behalf of the Classes)**

97.     Plaintiff Wilson reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

98.     This alternative claim is asserted on behalf of Plaintiff and Class Members to the extent there is any determination that any warranties extended to Plaintiff and Class Members by Defendant do not govern the subject matter of the disputes with Defendant, or that Plaintiff does not have standing to assert such claims against Defendant.

99.     Plaintiff and Class Members conferred a monetary benefit on Defendant, and Defendant received and had knowledge of this benefit.

100.     By their wrongful acts and omissions described herein, including selling Defective ColourPop Eye Makeup, Defendant was unjustly enriched at the expense of Plaintiff and Class Members.

101.     Plaintiff and Class Members' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct alleged herein.

102.     Defendant has profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and Class Members under circumstances in which it would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct, as described herein in connection with selling the defective ColourPop Eye Makeup.

103.     Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the ColourPop Eye Makeup on the same terms or for the same price if they had known that the Products were defective or contained federally prohibited ingredients at the time of purchase.

104.     Defendant either knew or should have known that payments rendered by Plaintiff and Class Members were given and received with the expectation that ColourPop Eye Makeup was free of defects and was capable of providing the benefits represented by Defendant in the labeling,

marketing, and advertising of the Products.  It is inequitable for Defendant to retain the benefit of payments under these circumstances.

105.    Plaintiff and Class Members seek restitution from Defendant and an order from this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from their wrongful conduct and establishing a constructive trust from which Plaintiff and Class Members may seek restitution.

106.    When required, Plaintiff and Class Members are in privity with Defendant because Defendant's sale of ColourPop Eye Makeup was either direct or through authorized third-party retailers and resellers.  Purchases through authorized retailers and resellers are sufficient to create privity because authorized third parties are Defendant's agents for the purpose of selling ColourPop Eye Makeup.

107.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

108.    Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims for restitution entail fewer elements.

1    In short, significant differences in proof and certainty establish that any potential legal claim

2    cannot serve as an adequate remedy at law.

**COUNT IV**
**Violation of the California False Advertising Law ("FAL")**
**California Business and Professions Code §§ 17500, *et seq.***
**(Individually and on behalf of the Classes)**

3

4

5    109.    Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates

6    such allegations by reference as if fully set forth herein.

7    110.    Plaintiff brings this cause of action against Defendant individually and on behalf of

8    the Classes.

9    111.    The conduct described herein took place within the state of California and

10   constitutes deceptive or false advertising in violation of California Business and Professions Code

11   §§ 17500, *et seq*.

12   112.    California Business and Professions Code §§ 17500, *et seq*. prohibits deceptive or

13   misleading practices in connection with advertising or representations made for the purpose of

14   inducing, or which are likely to induce, consumers to purchase products.

15   113.    Defendant, when they marketed, advertised, and sold ColourPop Eye Makeup,

16   represented to Plaintiff and Class Members that ColourPop Eye Makeup was free of defects and

17   safe when, in reality, the Products contained Harmful Ingredients that render them defective and

18   unsafe.

19   114.    At the time of their misrepresentations and/or omissions, Defendant was either

20   aware that ColourPop Eye Makeup was defective and unsafe or was aware that it lacked the

21   information and/or knowledge required to make such a representation truthfully.  Defendant

22   concealed, omitted, and failed to disclose this information to Plaintiff and Class Members.

23   115.    Defendant's packaging and product descriptions were false, misleading, and likely

24   to deceive Plaintiff and other reasonable consumers about the true nature of ColourPop Eye

25   Makeup and the fact that it should not be used in the eye area.

26   116.    Defendant's conduct therefore constitutes deceptive or misleading advertising.

27

28

117.     Plaintiff Wilson has standing to pursue claims under the FAL because she reasonably reviewed and relied on Defendant's packaging, advertising, representations, and marketing materials when selecting and purchasing ColourPop Eye Makeup.

118.     In reliance on the statements made in Defendant's advertising and marketing materials, and Defendant's omissions and concealment of material facts regarding the quality and use of ColourPop Eye Makeup, Plaintiff and Class Members purchased ColourPop Eye Makeup.

119.     Had Defendant disclosed the true defective nature of ColourPop Eye Makeup, Plaintiff and Class Members would not have purchased the Products or would have paid substantially less for them.

120.     As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff Wilson and Class Members who purchased ColourPop Eye Makeup.

121.     Plaintiff and Class Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendant by means of their deceptive or misleading representations, including monies already obtained from Plaintiff and Class Members as provided for by the California Business and Professions Code §§ 17500, *et seq*.

122.     Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for

damages are not equally certain as restitution because claims under the FAL entail fewer elements.

In short, significant differences in proof and certainty establish that any potential legal claim

cannot serve as an adequate remedy at law.

**COUNT V**
**Violation of the California Consumer Legal Remedies Act ("CLRA"),**
**Civil Code §§ 1750, *et seq.***
**(Individually and on behalf of the Classes)**

123.    Plaintiff Wilson reasserts the allegations set forth in all preceding paragraphs and

incorporates such allegations by reference as if fully set forth herein.

124.    Plaintiff Wilson brings this cause of action individually and on behalf of the

Classes.

125.    The conduct described herein took place in the state of California and constitutes

unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal

Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*

126.    Plaintiff and California Class Members are "consumers" as defined by Civil Code §

1761(d) because they purchased ColourPop Eye Makeup for personal or household use.

127.    Defendant is a "person" as defined by Civil Code § 1761(c).

128.    The Products are "goods" as defined by Civil Code § 1761(a).

129.    Plaintiff and Class Members' purchases of ColourPop Eye Makeup are

"transactions" as defined by Civil Code 25 § 1761(e).

130.    As set forth below, the CLRA deems the following unfair methods of competition

and unfair or deceptive acts or practices undertaken by any person in a transaction intended to

result or which does result in the sale or lease of goods or services to any consumer as unlawful.

(a) "Representing that goods … have sponsorship, approval, characteristics, ingredients,
    uses, benefits, or quantities which they do not have." Civil Code § 1770(a)(5); and

(b) "Representing that goods … are of a particular standard, quality, or grade, or that goods
    are of a particular style or model, if they are of another." Civil Code § 1770(a)(7).

131.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in

violation of Civil Code §§ 1770(a)(5) and (a)(7) when they represented, through their advertising

and other express representations, that ColourPop Eye Makeup had benefits or characteristics that it did not actually have.

132.   As detailed in the body of this complaint, Defendant has repeatedly engaged in conduct that violates the CLRA and has made false representations and statements to consumers about ColourPop Eye Makeup's benefits, characteristics, and quality.  Indeed, Defendant concealed, omitted, and failed to disclose information and facts about the Products which are material to Plaintiff and California Class Members.

133.   ColourPop Eye Makeup was not and is not "reliable," in that the product is not safe and is of inferior quality and trustworthiness compared to other products in the industry.  As detailed above, Defendant further violated the CLRA when they falsely represented that ColourPop Eye Makeup meets a certain standard or quality.

134.   As detailed above, Defendant violated the CLRA when they advertised ColourPop Eye Makeup with the intent not to sell the Product as advertised and knew that ColourPop Eye Makeup was not as represented.

135.   Defendant's deceptive practices were specifically designed to induce Plaintiff and Class Members to purchase ColourPop Eye Makeup.

136.   Defendant engaged in uniform marketing efforts in order to reach and persuade Plaintiff and Class Members to purchase ColourPop Eye Makeup.  Defendant's packaging, advertising, marketing, website, and retail product identification and specifications, contain numerous omissions as well as false and misleading statements regarding the quality, safety, and reliability of ColourPop Eye Makeup.

137.   Despite Defendant's omissions and representations, Defendant also concealed information and material facts from Plaintiff Wilson and Class Members, who reasonably relied on Defendant's representations and omissions of material facts.

138.   Defendant's business practices are misleading and/or likely to mislead reasonable consumers and should be enjoined.

139.   On July 27, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code §

1782(a). The letter also provided notice of breach of express and implied warranties. The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

140.    In accordance with Civil Code § 1780(a), Plaintiff and Class Members seek damages and injunctive and equitable relief for Defendant's violations of the CLRA, including an injunction to enjoin Defendant from continuing their deceptive advertising and sales practices, and compensatory and punitive damages.

141.    Plaintiff also seeks punitive damages.  Defendant's conduct in deceiving customers and the public, including Plaintiff, about the serious health consequences of using ColourPop Eye Makeup for its intended purpose, concealing material information about the Products' ingredients, and continuing to launch new products with the identical safety defect in violation of United States law, even after Plaintiff put Defendant on notice of the dangers, constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

142.    Defendant actively and knowingly participated in the dissemination of misrepresentations and concealment of material information related to the Products.

143.    Defendant's malicious and fraudulent conduct must be punished to deter future harm to others.  Therefore, exemplary damages are appropriate under that the circumstances.

144.    Defendant has significant relationships with the State of California in regard to the conduct giving rise to punitive damages and the law applicable to this particular issue.

145.    The malicious conduct described herein occurred and arose from Defendant's headquarters in California from where Defendant made corporate decisions related to selling, promoting, advertising, and labeling the Products.  Therefore, Cal. Civ. Code § 3294 applies to the punitive damages' aspect of this case.

146.    Pursuant to California Civil Code § 1780(a)(1)-(5) and § 1780(e), Plaintiff seeks damages, an order enjoining Defendant from the unlawful practices described above, a declaration

that Defendant's conduct violates the Consumers Legal Remedies Act, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

**COUNT VI**
**Violations of the California Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(Individually and on behalf of the Classes)**

147.    Plaintiff Wilson reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

148.    Plaintiff Wilson brings this cause of action individually and on behalf of the Classes.

149.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

150.    Plaintiff Wilson and Class Members suffered an injury, by virtue of purchasing defective cosmetic products, because Defendant misrepresented and/or omitted material facts about the Products' true quality, reliability, safety, use, and ingredients.

151.    Had Plaintiff Wilson and Class Members known about Defendant's misrepresentations and/or omissions of material fact, they would not have purchased the Products or would have paid significantly less for them.

152.    Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in the preceding paragraphs of this complaint.

153.    There is no benefit to consumers or competition by allowing Defendant to deceptively label, market, and advertise the Products.

154.    Plaintiff Wilson and Class Members had no way of reasonably knowing that ColourPop Eye Makeup was deceptively packaged, marketed, advertised, and labeled, or that ColourPop Eye Makeup was defective, unsafe, and unsuitable for its intended use.  Thus, Plaintiff Wilson and Class Members could not have reasonably avoided the harm they suffered. Further, this harm outweighs any legitimate justification, motive or reason for packaging, marketing, advertising, and labeling the Products in a deceptive and misleading manner.  Accordingly, Defendant's actions are immoral, unethical, unscrupulous, and offend well-established public policies.

155.    Unlawful Prong.  A business act or practice is unlawful pursuant to the UCL if it violates any other law or regulation.

156.    Defendant's conduct violates FDA regulations and California statutes adopting the FDA regulations, as discussed herein.  Defendant's conduct also violates the CLRA.

157.    Unfairness Prong.  A business act or practice is unfair pursuant to the UCL if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

158.    Defendant's unfair acts and practices include but are not limited to knowingly exposing consumers to unreasonable risk of injury by marketing and advertising the Products as eyeshadow when using the Products in this manner is inherently dangerous.

159.    Fraudulent Prong: A business act or practice is fraudulent pursuant to the UCL if it is likely to deceive members of the public.

160.    Defendant took active measures to deceive Plaintiff by representing that the Products were safe for their intended purpose through marketing and advertising communications which instructs and encourages consumers to use the Products in an unsafe manner.  Plaintiff relied on these representations and omissions to her detriment.

161.    Defendant's actions, in disseminating misleading and deceptive statements to consumers throughout the state of California and nationwide, including Plaintiff Wilson and Class Members, were and are likely to deceive reasonable consumers by obfuscating and omitting the Products' true defective nature, and therefore constitute violations of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

162.    Plaintiff Wilson and Class Members seek injunctive relief prohibiting Defendant from continuing their unlawful, unfair, and fraudulent business practices, and all other equitable relief available to the fullest extent permitted by law.

163.    Plaintiff and Class Members are entitled to a full refund of the Products' purchase price because mislabeled cosmetics cannot legally be manufactured, advertised, distributed, or sold, and thus, ColourPop Eye Makeup is worthless as a matter of law.

164.    Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct

of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

### COUNT VII
### Fraud
### (Individually and on behalf of the Classes)

165. Plaintiff Wilson reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

166. Plaintiff Wilson brings this cause of action individually and on behalf of the Classes.

167. As discussed above, Defendant provided Plaintiff and Class members with materially false or misleading information about the ColourPop Eye Makeup. Specifically, Defendant instructed consumers to use the Products in the eye area and represented, through its advertising and other express representations that the Products were intended for cosmetic use on the eye area and/or that the products were safe for use in the eye area.

168. Further, Defendant concealed, omitted, and failed to disclose information and facts about the Products which are material to Plaintiff and California Class Members, namely that the products are not safe for use around the eye area, are banned by the FDA for use around the eye

area, and/or contain Harmful Ingredients designated by the FDA as unsuitable and unapproved for cosmetic use in the eye area.

169.    Defendant knew about the Defect and that the Products are banned by the FDA, but nevertheless marketed, advertised, and sold ColourPop Eye Makeup for use around the eyes and without warning consumers of the known dangers.

170.    The misrepresentations and omissions of material fact made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the defective Products.

171.    The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

172.    As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

a.   For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as Class Representative and Plaintiff's attorneys as Class Counsel;

b.   For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pled or as the Court may deem proper; and

h.   For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

1    Dated:  September 12, 2022                    **BURSOR & FISHER, P.A**.

2                                                 By: ___/s/ *Yeremey Krivoshey*_____

3                                                 Yeremey Krivoshey (State Bar No. 295032)
4                                                 1990 North California Blvd., Suite 940
                                                  Walnut Creek, CA 94596
5                                                 Telephone: (925) 300-4455
                                                  Facsimile:  (925) 407-2700
6                                                 E-mail: ykrivoshey@bursor.com

7                                                 **BURSOR & FISHER, P.A.**
                                                  Matthew A. Girardi (*PHV* application forthcoming)
8                                                 888 Seventh Avenue
                                                  New York, NY 10019
9                                                 Telephone: (646) 837-7150
                                                  Facsimile:  (212) 989-9163
10                                                E-Mail: mgirardi@bursor.com

11                                                *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28