LEWIS BRISBOIS BISGAARD & SMITH LLP
Jon P. Kardassakis, SB# 90602
  Email: Jon.Kardassakis@lewisbrisbois.com
Michael K. Grimaldi, SB# 280939
  Email: Michael.Grimaldi@lewisbrisbois.com
Daniel B. Segal, SB# 339878
  Email: Daniel.Segal@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant
ColourPop Cosmetics, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KACEY WILSON, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COLOURPOP COSMETICS, LLC,<br><br>Defendant. | Case No. 3:22-cv-05198-TLT<br><br>Hon. Trina L. Thompson<br><br>**DEFENDANT COLOURPOP COSMETICS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT FOR LACK OF STANDING (FRCP 12(B)(1)), AND (2) FAILURE TO STATE A CLAIM (FRCP12(B)(6))**<br><br>Concurrently Filed with a<br>Request for Judicial Notice and Proposed Order<br><br>Date:  January 3, 2023<br>Time: 2:00 p.m.<br>Ctrm: 9 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

NOTICE OF MOTION

2

PLEASE TAKE NOTICE that on January 3, 2023 at 2:00 p.m., or as soon thereafter as the

3 matter may be heard in Honorable Trina L. Thompson, in Courtroom 9 of the United States

4 Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102. Defendant ColourPop

5 Cosmetics, LLC ("ColourPop") will, and hereby does, move the Court under Federal Rules of Civil

6 Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6) to dismiss plaintiff's Complaint.

7

STATEMENT OF RELIEF SOUGHT. ColourPop seeks an order under Federal Rules of Civil

8 Procedure 12(b)(1) and 12(b)(6) dismissing with prejudice plaintiff's Complaint for lack of

9 standing and failure to state a claim upon which relief can be granted. Each of plaintiff's claims

10 for (1) Breach of Implied Warranty; (2) Breach of Implied Warranty Under the Song-Beverly

11 Consumer Warranty Act, Cal. Civil Code §§ 1790, et seq. ("Song-Beverly"); (3) Unjust

12 Enrichment or Restitution; (4) False Advertising Law, Cal. Bus. & Prof. C. § 17500, et seq.

13 ("FAL"); (5) Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (6)

14 Unfair Competition Law, Cal. Bus. & Prof. C. § 17200, et seq. ("UCL"); and (7) "Fraud" fails and

15 should be dismissed.

16

This motion is based on this notice, the concurrently-filed memorandum of points and

17 authorities, the request for judicial notice, and all other facts the Court may or should take notice

18 of, all files, records, and proceedings in this case, and any oral argument the Court may entertain.

19

20 Date: November 21, 2022                LEWIS BRISBOIS BISGAARD & SMITH LLP

21

22                                        By: _____Michael Grimaldi_____

23                                             Michael K. Grimaldi
                                             Attorneys for Defendant
24                                           ColourPop Cosmetics, LLC

25

26

27

28

# TABLE OF CONTENTS

Page

I.  Introduction and Statement of Issues to Be Decided ............................................. 1

II.  Summary of Relevant Facts ................................................................................... 2

III.  The FDCA's Prohibition on Private Enforcement and Implied Preemption Bars All of Plaintiff's Claims That Are Attempting to Enforce the FDCA. ........................... 4

IV.  Plaintiff Lacks an Injury-In-Fact Under Article III, Statutory Standing for Failing to Plead An Injury Under the UCL/FAL, Damages under CLRA, and the Rest of Her Claims Because the Cosmetics She Purchased Worked. .......................................... 9

V.  Plaintiff Lacks Standing and Cannot Bring Claims for Other Reasons. ............... 11

  A.  Plaintiff's Generic Implied Warranty, Unjust Enrichment, and Fraud Claims Fail Because They Are Not Tethered to a Specific State Law. ................................. 11

  B.  Plaintiff Lacks Standing to Assert Nationwide Class Claims. ......................... 11

  C.  A Song-Beverly Claim Can Only Be Made on Behalf of Cal. Residents. ........... 12

  D.  Plaintiff Does Not Have Standing to Seek Injunctive Relief and Has Not Plausibly Alleged a Risk of Future Harm. ..................................................... 13

  E.  Plaintiffs Only Has Standing to at Most Sue for the Two Products She Purchased and the Rest Must Be Dismissed. ................................................... 15

VI.  Plaintiff Pleads No Facts About Her Purchase and Instead Offers Legal Conclusions Making Her Claims Implausible Under Rule (8)(a) and 9(b). ................ 16

VII.  Plaintiff's Two Implied-Warranty Claims Fail. ....................................................... 17

VIII.  Plaintiff's Fraud, UCL, FAL, and CLRA Claims Fail for Numerous Reasons. ........ 18

  A.  Plaintiff Does Not Allege any Representation, Let Alone a False or Misleading Representation on the Product Label or Otherwise. .......................... 18

  B.  Plaintiff Has Not Alleged Facts Demonstrating a Further Duty to Disclose. ....... 19

  C.  Plaintiff Has Not Alleged Any Facts Showing Intent to Defraud. ...................... 21

  D.  Plaintiff Fails to Plausibly Allege Reliance on or Exposure to Any Statements or Advertising Regarding the Products She Purchased. ....................... 21

  E.  Plaintiff's UCL "Unfairness" Claim Fails. ....................................................... 22

IX.  There Is No Cause of Action for Unjust Enrichment Under California Law. ............ 23

X.  Plaintiff Fails to Allege that She Lacks an Adequate Remedy at Law, and Thus Her Equitable Claims/ Remedies Fail under Ninth Circuit Precedent. ........................... 23

XI.  Conclusion ........................................................................................................... 25

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                                                   iii                                 Case No. 3:22-cv-05198-TLT

COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1

## TABLE OF AUTHORITIES

Page

2

3  **Cases**

4  *Ahern v. Apple Inc.*,
5      411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................. 20

6  *Ashcroft v. Iqbal*,
      556 U.S. 662 (2009) ....................................................................................... 9, 17, 21
7
   *Astiana v. Hain Celestial Grp., Inc.*,
8      783 F.3d 753 (9th Cir. 2015) ................................................................................. 23

9  *Ballard v. Bhang Corp.*,
      2020 WL 6018939 (C.D. Cal. Sept. 25, 2020) ...................................................... 17
10
   *Bardin v. DaimlerChrysler Corp.*,
11     136 Cal. App. 4th 1255 (2006) .............................................................................. 22

12 *Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007) ............................................................................................... 16
13
14 *Blissard v. FCA US LLC*,
      2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) ........................................................ 21
15
   *Borchenko v. L'Oreal USA, Inc.*,
16     389 F. Supp. 3d 769 (C.D. Cal. 2019) ..................................................................... 9

17 *Buckman Co. v. Plaintiffs' Legal Comm.*,
      531 U.S. 341 (2001) ............................................................................................... 6, 7
18
19 *Cheng v. BMW of N. Am., LLC*,
      2013 WL 3940815 (C.D. Cal. July 26, 2013) ........................................................ 16
20
   *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*,
21     68 Cal. App. 4th 445 (1998) .................................................................................. 21

22 *City of Los Angeles v. Lyons*,
      461 U.S. 95 (1982) ............................................................................................ 13, 14
23
24 *Clark v. Am. Honda Motor Co.*,
      528 F. Supp. 3d 1108 (C.D. Cal. 2021) ................................................................. 24
25
   *Clemens v. DaimlerChrysler Corp.*,
26     534 F.3d 1017 (9th Cir. 2008) ............................................................................... 18

27 *Cover v. Windsor Surry Co.*,
      2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ......................................................... 12
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Critcher v. L'Oreal USA, Inc.*,
   959 F.3d 31 (2d Cir. 2020) .................................................................................... 4

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ......................................................................... 13, 14

*Davidson v. Sprout Foods Inc.*,
   No. 22-cv-01050-RS, 2022 U.S. ................................................... 9, 13, 14, 23

*Easter v. Am. W. Fin.*,
   381 F.3d 948 (9th Cir. 2004) .............................................................................. 11

*Engalla v. Permanente Medical Group, Inc.*
   15 Cal. 4th 951 (1997) ........................................................................... 9, 18, 20

*Erie R.R. v. Tompkins*,
   304 U.S. 64 (1938) ............................................................................................. 11

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ................................................... 24

*Guar. Tr. Co. of N.Y. v. York*,
   326 U.S. 99 (1945) ............................................................................................. 24

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................ 22

*Hassell v. Uber Techs., Inc.*,
   2020 WL 7173218 (N.D. Cal. Dec. 7, 2020) .................................................... 24

*Hauck v. Advanced Micro Devices, Inc.*,
   2018 WL 5729234 (N.D. Cal. Oct. 29, 2018) ................................................... 17

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
   2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ..................................................... 14

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) ............................................................ 19

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ....................................................................... 19, 20

*In Sonner v. Premier Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................... 2, 23, 25

*Jensen v. Quality Loan Serv. Corp.*,
   702 F. Supp. 2d 1183 (2010) ............................................................................. 21

*Johnson v. Nissan N. Am., Inc.*,
   272 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................................ 12

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

      v       Case No. 3:22-cv-05198-TLT

COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)......................................................................................22

*Knowles v. Arris Int'l PLC*,
   2019 WL 3934781 (N.D. Cal. Aug. 20, 2019), *aff'd*, 847 F. App'x 512 (9th Cir. 2021)........................................................................................................................17

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011)............................................................................................9

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
   44 Cal. App. 4th 194 (1996)...................................................................................23

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014).....................................................................10

*Lewis v. Casey*,
   518 U.S. 343 (1996)........................................................................................15, 16

*Lorentzen v. Kroger Co.*,
   532 F. Supp. 3d 901 (C.D. Cal. 2021)................................................................14, 16

*Loreto v. Procter & Gamble Co.*,
   515 F. App'x 576 (6th Cir. 2013)..............................................................................9

*In re MacBook Litig.*,
   2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)...........................................................25

*Martinez v. Mead Johnson & Co.*,
   LLC, 2022 WL 15053334 (C.D. Cal. Oct. 22, 2022)...................................................14

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)..............................................................................11, 12

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) .......................................................................18

*Moceck v. Alfa Leisure, Inc.*,
   114 Cal. App. 4th 402 (2003)..................................................................................17

*Mohebbi v. Khazen*,
   50 F. Supp. 3d 1234 (N.D. Cal. 2014) .....................................................................21

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021)......................................................................................18

*Nationwide Biweekly Admin., Inc. v. Sup.Ct.*,
   9 Cal. 5th 279 (2020).............................................................................................23

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs.*,
   48 F.4th 1040 (9th Cir. 2022) ............................................................................. *passim*

*In re Packaged Seafood Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) .................................................................. 12

*PhotoMedex, Inc. v. Irwin*,
   601 F.3d 919 (9th Cir. 2010) ................................................................................... 7

*Punian v. Gillette*,
   2015 WL 4967535 (N.D. Cal. August 20, 2015) .................................................... 21

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) .................................................................................. 21

*In re Samsung Litig.*,
   2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) ........................................................ 11

*Schertz v. Ford Motor Co.*,
   2020 WL 5919731 (C.D. Cal. July 27, 2020) ......................................................... 24

*Schertzer v. Bank of Am., N.A.*,
   445 F. Supp. 3d 1058 (S.D. Cal. 2020) .................................................................. 11

*Sciacca v. Apple, Inc.*,
   362 F. Supp. 3d 787 (N.D. Cal. 2019) ................................................................... 20

*Sinatro v. Barilla Am., Inc.*,
   No. 22-CV-03460-DMR, 2022 WL 10128276 (N.D. Cal. Oct. 17, 2022) .............. 14

*Smith v. Allmax Nutrition, Inc.*,
   2015 WL 9434768 (E.D. Cal. Dec. 24, 2015) ........................................................ 23

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................................... 10

*Stewart v. Electrolux Prods., Inc.*,
   304 F. Supp. 3d 894 (E.D. Cal. 2018) ................................................................... 18

*Stewart v. Kodiak Cakes, LLC*,
   537 F. Supp. 3d 1103 (S.D. Cal. 2021) ...................................................... 11, 12, 14

*Teresa Adams v. Cole Haan, LLC*,
   2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ......................................................... 24

*Tietsworth v. Sears, Roebuck & Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................. 18

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ............................................................................................. 9

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                              vii                         Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Troup v. Toyota Motor Corp.*,
    545 F. App'x 668 (9th Cir. 2013)..................................................................... 17

*Vanduzen v. Homecomings Fin.*,
    No. 2:09-cv-01237-GEB-GGH, 2010 U.S. Dist. LEXIS 46106 (E.D. Cal. May
    10, 2010).............................................................................................................. 21

*Watkins v. MGA Entm't, Inc.*,
    550 F. Supp. 3d 815 (N.D. Cal. 2021) .............................................................. 24

*Whitson v. Bumbo*,
    2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) ................................................... 10

*Williams v. Apple, Inc.*,
    2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ................................................... 25

*Williams v. Yamaha Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ........................................................................... 20

*Wilson v. HP Co.*,
    668 F.3d 1136 (9th Cir. 2012) ........................................................................... 20

*Zakikhan v. Hyundai Motor Co.*,
    2021 WL 4805454 (C.D. Cal. June 28, 2021) ................................................... 18

*Zambrano v. CarMax LLC*,
    2014 WL 228435 (S.D. Cal. Jan. 21, 2014) ...................................................... 18

*In re Zappos.com, Inc.*,
    888 F.3d 1020 (9th Cir. 2018) ........................................................................... 13

**Statutes**

21 U.S.C. § 321 ........................................................................................................ 4

21 U.S.C. § 337 .................................................................................................... 1, 6

21 U.S.C. § 361 ............................................................................................... 4, 5, 8

21 U.S.C. § 362 ............................................................................................... 4, 5, 8

21 U.S.C. §379 ........................................................................................................ 4

Bus. & Prof. Code § 17500 .................................................................................... 19

Cal Civ. Code § 1780 ............................................................................................... 9

Cal. Civ. Code § 1792 ............................................................................................ 12

Cal. Com. Code § 2314 ..................................................................................... 17, 18

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Federal Food, Drug, and Cosmetic Act (FDCA) [21 U.S.C. 301 *et seq.*].......................... 1, 4, 5, 8

**Other Authorities**

21 C.F.R. § 4.2206 ..................................................................................................................... 5

21 C.F.R. §70.5 ............................................................................................................... 4, 5, 19

21 C.F.R. § 71.1 ............................................................................................................................ 5

21 C.F.R. §§ 74.2052-74.2711 ...................................................................................................... 5

21 C.F.R. § 701 ....................................................................................................................... 4, 13

Code of Federal Regulation Title 21, Chapter 1 ................................................................... 4

L.R. 7-4 ............................................................................................................................................ 1



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

ColourPop is a family-owned cosmetics company based in California that manufactures a variety of quality products at affordable prices. *See* https://colourpop.com/pages/about-us. All of their makeup and products are tested on ColourPop employees, not animals. *Id.* With a name like "ColourPop," the company is known for vibrant and unique shades. This case is about a select few of the pigments that ColourPop uses to make colors for its makeup palettes. Plaintiff does not claim that ColourPop makes any false misrepresentation on its cosmetics labels or that the makeup products that she bought do not work. She bought two "Pressed Powder Palette" makeup products and "used" them. Comp ¶16. She does not allege the ColourPop makeup she purchased caused her eye irritation, physical injury, or that the makeup cannot be used.

Her theory is that ColourPop violated a technical FDA regulation regarding what types of color additives may be used in makeup that is intended *only* for the eyes. Plaintiff's case fails because there is no direct or indirect right to bring a private action under the Federal Food, Drug, and Cosmetic Act (FDCA). Nor is there any way to privately enforce the FDCA. The Ninth Circuit just confirmed this in *Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs.*, 48 F.4th 1040, (9th Cir. 2022), ruling "This Act includes a *prohibition on private enforcement*: all proceedings to enforce or restrain violations of the FDCA must be 'by and in the name of the United States.'…" *Id.* at 1044 (quoting 21 U.S.C. §337(a)). *Nexus* affirmed the pleading-stage dismissal of state-law claims, including those under California's Unfair Competition Law, that relied on this same FDCA section (§337(a)) barring private enforcement. *Nexus* likewise bars all of plaintiff's claims here because each of her state-law claims attempts to enforce the FDCA. Like *Nexus*, "The prohibition of private enforcement applies squarely, as does 'implied preemption.'" *Id.* at 1051-52.

While the Court does not need to reach any issue besides preemption, the following other issues to be decided (L.R. 7-4) can only be decided in ColourPop's favor:

1.      Plaintiff has failed to allege the products she purchased do not work as makeup. The fact that she "used" her makeup and it worked demonstrates she received the benefit of the bargain. She lacks an injury-in-fact under Article III or an injury or damages needed to plead the rest of her claims.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

2.      Plaintiff's unwieldy putative class action lacks standing for numerous other reasons including that she cannot plead nationwide claims, has not pled what law applies, cannot seek injunctive relief, and can only bring claims regarding the product she purchased.

3.      The implied-warranty claim fails because the product can be used as makeup, and plaintiff has not pled the product is not fit for ordinary use.

4.      All the fraud-based claims fail for numerous reasons including that plaintiff has not alleged any representation (let alone a false one). ColourPop owed no duty to disclose because there is no safety defect, and plaintiff has not alleged reliance on or exposure to any pre-purchase representation.

5.      Plaintiff's unjust enrichment claim fails because unjust enrichment is not a claim under California law.

6.      Plaintiff's claim for equitable relief fails because she has failed to allege she lacks an adequate legal remedy as required under *Sonner*.

Stripping the conclusions from the complaint leaves almost nothing. Plaintiff's claims fail as a matter of law, and her failure to plead the facts to support her conclusions requires dismissal.

## II.    SUMMARY OF RELEVANT FACTS

ColourPop sells a generic makeup that can be used for any part of the body called a "Pressed Powder Palette." Plaintiff purchased two ColourPop "Pressed Powder Palettes" that are called "Boudoir Noir" and "Menage a Muah." Comp. ¶16. These palettes state no representations on the front label and just say the product name, "ColourPop," "pressed powder palettes," and the net weight. See product pictures, RJN Exs. 1 & 2. The back labels of these palettes show the names of the 12 different shades or pans each palette contains and the ingredient list. *Id.* On the back of the "Boudoir Noir" palette, and next to the shade name "Bedtime Story*", is an asterisk "*" and further below on this back panel is the instruction "*not intended for use in the immediate eye area." RJN Ex. 1 . Likewise, the back panel of the "Menage a Muah" palette lists three of the 12 shades with asterisks—"Big Tease*", "Confess*," and "No Drama*" —and further below is the same instruction "*not intended for use in the immediate eye area." RJN Ex. 2. These instructions inform consumers that of the 12 shades included in the "Boudoir Noir" palette, one of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

the 12 includes an instruction that it is not intended for use in the immediate area of the eye. The other 11 can be used anywhere, including around the eye. Similarly, of the 12 shades included in the "Menage a Muah" palette, three of the shades designated with asterisks include an instruction that they are not intended for use in the immediate eye area. The other nine can be used anywhere, including around the eye. These instructions are the only place that "eye" is mentioned on the packages.

Plaintiff only takes issue with the shades bearing the instruction "not intended for the eye area." Comp. ¶5. Her theory is that each of these asterisk shades contain color additives that are prohibited by FDA regulations for cosmetics that are intended for use in the eye area. Comp. ¶2. It is uncontested that none of the asterisk-free shades contains FDA prohibited pigments for the eyes. Plaintiff takes issue with four asterisk-bearing shades out of the twenty-four total shades in her two palettes.

Plaintiff alleges she bought these two ColourPop palettes from an Ultra Beauty store and she "used" the makeup. Comp. ¶¶16, 46. She does not allege where on her body she "used" or applied the makeup. Did she use it on her eyes or elsewhere? She does not allege any problems with the makeup after her "use." She does not allege eye irritation, staining, physical injury, or any problem whatsoever. She does not allege the makeup did not work as makeup or any dissatisfaction. She does not allege if she saw the instruction on the back of the packages. She does not allege what she read in the store or online before she bought the products. She does not allege if she saw any advertising for the "Boudoir Noir" and "Menage a Muah" palettes that she purchased. She does not allege that she saw any ColourPop advertising at all. She does not allege what she knew about the palettes before she purchased. She does not allege what color additives were "harmful" in the palettes she purchased.

Plaintiff does not allege any law barring the sale of a generic makeup like the palettes she purchased. ColourPop warned consumers that a few of the many shades were not intended for the eye area. Consumers are free to use a generic makeup as they see fit. Plaintiff does not allege *any* other consumers complaining of eye irritation, physical injury, or any other issue.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

III.   **THE FDCA'S PROHIBITION ON PRIVATE ENFORCEMENT AND IMPLIED PREEMPTION BARS ALL OF PLAINTIFF'S CLAIMS THAT ARE ATTEMPTING TO ENFORCE THE FDCA.**

_Federal Regime for Labelling and Selling Cosmetics_. In enacting the FDCA, Congress set out to provide national uniformity to the manufacture and sale of cosmetics.[1] _Critcher v. L'Oreal USA, Inc._, 959 F.3d 31, 35 (2d Cir. 2020). "The FDCA [21 U.S.C. 301 _et seq._] established a comprehensive regulatory scheme governing, among other things, the ingredients, packaging, and marketing of cosmetic products." _Id._ The statute governs the labeling of cosmetics. According to the FDCA, cosmetics must follow labeling protocols and may be deemed "misbranded" for several reasons, among them: if the "labeling is false or misleading in any particular," 21 U.S.C. §362(a).[2] The FDCA may deem cosmetics "adulterated" for many reasons, including if it "contains, a color additive which is unsafe within the meaning of section 721(a) [21 USC §379e(a)]." 21 U.S.C. §361(e). The FDCA deems cosmetics with color additives unsafe—for regulatory/adulteration purposes—if the additive is not approved specifically for the intended use. 21 U.S.C. §379e(a)(1)(A). The FDA is required to create a list of "color additives for use in or on cosmetics…" _Id._ §379e(b)(1). The FDCA empowered the Food and Drug Administration to prescribe more specific labeling requirements consistent with the statute, which it has done. _Id._ §371(a). The FDA is charged with ensuring cosmetics safety. _Id._ §393(b)(2)(D).

The FDA has issued regulations on color additives (Code of Federal Regulation Title 21, Chapter 1, Subchapter A, Parts 70-81). One of these regulations, 21 C.F.R. §70.5(a), concerns "General restrictions on use of color additives" and is the basis for this suit. This regulation states regulations that generally approve the use of a color additive for cosmetics do not "authorize" the color additive for use in a cosmetic "intended for use in the area of the eye" unless that additive is

---

[1] The FDCA defines cosmetics as "articles intended to be rubbed, poured, sprinkled or sprayed on, introduced into or otherwise applied to the human body for cleansing, beautifying, promoting attractiveness or altering the appearance." 21 U.S.C. §321(i).

[2] The FDA has promulgated regulations regarding cosmetic misbranding, but only in two narrow areas: (1) a label that is misleading with respect to another product, and (2) a name that includes or suggests one or more, but not all main ingredients. 21 C.F.R. §701.1.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

"specifically" approved.[3] 21 C.F.R. §70.5(a). Some color additives approved for cosmetics are deemed safe in general, but they are not "specifically" approved for the area near the eye. The listing of eye-approved cosmetics is in 21 C.F.R. §§ 74.2052-74.2711. As an example, "Green No. 5 may be safely used for coloring cosmetics generally, including cosmetics intended for use *in the area of the eye*, in amounts consistent with current good manufacturing practice." 21 C.F.R. §74.2205(b). On the other hand, Green No. 6 "may be safely used for coloring externally applied cosmetics in amounts consistent with good manufacturing practice." 21 C.F.R. § 4.2206(b). Green No. 6 is considered a "safe" cosmetic in general; it just has not *yet* been "specifically" approved for the eyes. Indeed, all the color additives that plaintiff lists in her complaint as being "harmful" (Comp. ¶35) have all been deemed "safe" in the listings. 21 C.F.R. §§74.2052-74.2711. The FDA has just not determined *yet* that the additives not "specifically" approved for eyes are in fact harmful and likely to cause physically injury to the user. These color additives have not been authorized yet due to a lack of a formal petition. 21 C.F.R. § 71.1. These same additives are approved for use around the eyes in Europe. RJN Ex. 3.

*Nexus Is Case Dispositive*. The basis of this suit is that the products contain color additives that are not approved by the FDA for eye makeup when the FDA requires they be "specifically" approved. 21 C.F.R. §70.5(a). Plaintiff's theory is that the makeup violates a technical FDA regulation. Plaintiff contends the cosmetics are adulterated and misbranded under the FDCA. Comp. ¶4; 21 U.S.C. §361(e) (defining "Adulterated cosmetics"), §362(a) (defining "Misbranded cosmetics"). The problem for her is that *Nexus* affirmed "the FDA's exclusive authority to enforce violations of the Food, Drug, and Cosmetic Act," and dismissed similar state-law claims based on implied preemption. 48 F.4th at 1041. *Nexus* mandates dismissal here.

*Nexus* affirmed dismissal of a pharmaceutical manufacturer's claims that a pharmacy

---

[3] 21 C.F.R. §70.5(a) ("Color additives for use in the area of the eye. No listing or certification of a color additive shall be considered to authorize the use of any such color additive in any article intended for use in the area of the eye unless such listing or certification of such color additive specifically provides for such use. Any color additive used in or on any article intended for use in the area of the eye, the listing or certification of which color additive does not provide for such use, shall be considered to be a color additive not listed under parts 73, 74, and 81 of this chapter, even though such color additive is certified and/or listed for other uses.").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67     5     Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1   unlawfully produced copies of its FDA-approved drug, ruling the claims were preempted by the

2   FDA's exclusive-enforcement power. Nexus, a manufacturer, developed an FDA-approved drug.

3   *Id.* at 1042. While the FDCA exempts drug compounding by "outsourcing facilities" from FDA

4   approval requirements, the Act excludes from this exception compounded drugs that are

5   "essentially a copy of one or more approved drugs." *Id.* at 1043. To avoid the FDCA's bar on

6   private enforcement, Nexus alleged violation of state laws like California's UCL against the

7   pharmacy claiming the state-laws prohibit the sale of drugs not approved by the FDA. *Id.* at 1044.

8   The court affirmed the district court's ruling that, under the implied-preemption doctrine, Nexus's

9   state-law claims were barred because they were contrary to the FDCA's exclusive-enforcement

10  provision (21 U.S.C. § 337(a)). *Id.* at 1049. The court held all of Nexus's claims depended on a

11  determination of whether the pharmacy's generic version of Nexus's drug was "essentially a

12  copy" of Nexus's approved drug, and the plain text of the FDCA left that determination to the

13  FDA and its enforcement process. *Id.*

14      *Nexus*'s reasoning equally applies to this cosmetics case because the FDCA bars private

15  enforcement on cosmetics regulations by the same statute. 21 U.S.C. § 337(a). The court's holding

16  could not be clearer: "Proceedings to enforce or restrain violations of the FDCA… must be by and

17  in the name of the United States, not a private party. Nexus's claim is such a proceeding, so it is

18  barred by the exclusive enforcement statute." *Id.* at 1049 (citing 21 U.S.C. § 337(a)). The court

19  reasoned that "to permit Nexus to proceed with a claim that Defendants violated this law when the

20  FDA did not so determine would, in effect, *permit [Nexus] to assume enforcement power which*

21  *the statute does not allow and require the finder of fact to make a decision that the FDA itself did*

22  *not make.*" *Id.*

23      *Nexus* finds support in Supreme Court and Ninth Circuit precedent. *Buckman Co. v.*

24  *Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001), holds that another plaintiff's fraud-on-the-

25  FDA claim (defective bone screws) against a consulting company that helped the manufacturer

26  obtain FDA approval for the device was impliedly preempted. The court determined "the federal

27  statutory scheme amply empowers the FDA to punish and deter fraud against the Administration"

28  and the "delicate balance of statutory objectives . . . can be skewed by allowing fraud-on-the-FDA

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                    6                    Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1   claims under state tort law." *Id.* at 341, 348. The court held that the state law claims were

2   "impliedly preempted" because allowing the claims to go forward would "exert an extraneous pull

3   on the scheme established by Congress. *Id.* at 353. *Buckman* clarified that "the fraud claims

4   exist[ed] solely by virtue of" the FDCA and not on traditional state tort law predating the federal

5   statute. *Id. Nexus* held that the plaintiff also "relie[d] on a state statute which itself relies on the

6   federal statute, not traditional state tort law theory." *Nexus*, 48 F.4th at 1046.

7        The Supreme Court's guidance is that "[t]he claims not preempted were made by patients

8   injured by defective medical devices, who pleaded traditional common law tort claims against the

9   manufacturers of the medical devices. The claims allowed to go forward did not rely on

10   noncompliance with FDA requirements, as Nexus's does, but rather on traditional tort law duties."

11   *Id.* Further, "[t]he statutory prohibition on private enforcement gives the FDA discretion to temper

12   enforcement or not to enforce in circumstances it deems appropriate. If state law facilitates

13   enforcement beyond what the FDA has deemed appropriate, then state law claims may indeed

14   'stand as an obstacle' to FDA's enforcement discretion by enabling what the FDA regards as over-

15   enforcement." *Id.* at 1048.

16        The Ninth Circuit has "been protective of the FDA's statutory monopoly on enforcement

17   authority." *Id.* In *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 922 (9th Cir. 2010), a medical device

18   manufacturer claimed that a competitor misrepresented in marketing materials the scope of its

19   FDA approval for a laser. The court held that the claims were "preempted," because of the statute

20   reserving enforcement to the FDA. *Id.* The plaintiff argued that the statutory prohibition of private

21   enforcement of the FDCA did not apply, because it was suing to enforce other laws, the Lanham

22   Act and state unfair competition law, not the FDCA. *See id.* at 924-25, 928-30. The court held that

23   to the extent the claim was based on an arguably false assertion of FDA approval, it "would

24   require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has

25   not itself concluded that there was a violation," so the action was barred by the FDCA's

26   prohibition of private enforcement. *Id.* at 924, 930-31. That claim could only be permissibly made

27   by the government. *Id.* at 926-28.

28        *Plaintiff's Case Theory Seeks to Enforce the FDCA*. As in *Nexus* and *Photomedex*, the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                                   7                        Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1  plaintiff's claims would require litigation of whether ColourPop's generic makeup violates FDA

2  rules on what pigments can be used in makeup where the FDA has not itself so concluded. 21

3  U.S.C. §§ 361(e), 362(a); 21 C.F.R. § 70.5(a). Plaintiff cites zero consumer complaints or

4  enforcement actions from the FDA. It is the FDA's exclusive authority to judge whether a generic

5  makeup like this is "misbranded" or "adulterated"—and whether to exercise its enforcing

6  discretion. "The plain text of the FDCA leaves that determination in the first instance to the FDA's

7  balancing of risks and concerns in its enforcement process." *Nexus*, 48 F.4th at 1050. Plaintiff is

8  not claiming she was physically "harm[ed]" which is "*where a traditional common law tort action*

9  *might provide a remedy to the [consumer] and escape preemption." Id.* Instead, her claim is that

10  she was "harmed economically because the defendant violated the FDCA." *Id.* The purported state

11  law violation here "says in substance 'comply with the FDCA,' not a traditional common law

12  tort." *Id.* All of plaintiff's claims here are based on this same theory that she was "harmed

13  economically" by ColourPop's alleged regulatory violation.

14       Her theory involves two steps: (1) ColourPop violated the FDCA by selling makeup with

15  color additives that are not yet approved by the FDA for eye makeup; (2) ColourPop violated state

16  law by selling cosmetics the FDA has not approved. Comp. ¶2. She equates the unapproved FDA

17  colors to be a "defect" because they have not yet been specifically approved by the FDA for eye

18  makeup. ¶4. Because of this, she claims the makeup is "adulterated and misbranded under the

19  federal Food, Drug, and Cosmetics Act ('FDCA')." ¶¶4,11. She claims she was harmed

20  economically due to this FDA violation. Comp. ¶12. Every claim rests upon a FDCA violation.[4]

21  _____

22  [4] Breach of Implied Warranty (Claim 1) and Song-Beverly (Claim 2): Plaintiff claims the
   "Makeup is not fit for its ordinary purpose—use in the eye area—*because* it contains ingredients

23  that *the FDA* has deemed not fit for use around the eye area." Comp. ¶¶70, 87. Unjust Enrichment
   (Claim 3): She alleges ColourPop was "selling Defective ColourPop Eye Makeup," which she

24  defines as makeup colors not approved by the FDA. ¶100. FAL (Claim 4): She claims ColourPop
   falsely advertised the makeup because it contains "Harmful Ingredients," which she defines as

25  colors not approved by the FDA. ¶113. CLRA (Claim 5): She offers the conclusion ColourPop
   made "false representations and statements to consumers about ColourPop Eye Makeup"; the only

26  issue plaintiff has raised is that some of the colors are not FDA approved. ¶132. UCL (Claim 6):
   Plaintiff claims Defendant's conduct *violates FDA regulations* and California statutes adopting the

27  FDA regulations…" ¶156. "Fraud" (Claim 7): Plaintiff claims ColourPop failed to disclose that
   the products are "*banned by the FDA* for use around the eye area …." ¶168.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                                    8                          Case No. 3:22-cv-05198-TLT
                    COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff "in substance seeks to enforce the FDCA" no matter how she couches it. *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579 (6th Cir. 2013). She is suing *because* the conduct allegedly violates the FDCA and is seeking to enforce it via state law. In one recent food case in this district, the court found a UCL claim impliedly preempted by the FDCA because the FDCA can only be enforced by the United States, and because the state-law claim was "entirely dependent upon the FDCA." *Davidson v. Sprout Foods Inc.*, No. 22-cv-01050-RS, 2022 U.S. Dist. WL 13801090, at *4 (N.D. Cal. Oct. 21, 2022) (quoting *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1230 (9th Cir. 2013)); *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 774 (C.D. Cal. 2019) (plaintiff's UCL claim was preempted because it "exists solely by virtue of the FDCA and [state] law which references the FDCA."). So too here.

But for the FDA regulations that pervade every claim, plaintiff would not have sued. Plaintiff admits she has no issues with the product beyond the FDA color issue. Without being able to rely on the FDCA then, there is nothing left of this complaint.

## IV. PLAINTIFF LACKS AN INJURY-IN-FACT UNDER ARTICLE III, STATUTORY STANDING FOR FAILING TO PLEAD AN INJURY UNDER THE UCL/FAL, DAMAGES UNDER CLRA, AND THE REST OF HER CLAIMS BECAUSE THE COSMETICS SHE PURCHASED WORKED.

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). To have statutory standing to pursue or state claims under the UCL and FAL, plaintiff must show that she "suffered injury in fact and has lost *money or property* as a result of the unfair competition." *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 321 (2011) (citing Cal. Bus. Prof. Code §§ 17204, 17535). Under the CLRA, only a consumer "who suffers any *damage* as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770" may bring an action. Cal Civ. Code § 1780. Fraud requires the element of "resulting damage." *Engalla v. Permanente Medical Group, Inc.* 15 Cal. 4th 951, 974 (1997). Plaintiff does not plausibly plead injury in fact or damages to support any of her claims. She offers only conclusions. Comp. ¶52. The complaint does not suffice because it "offers labels and conclusions" and "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1      <u>Plaintiff Has Not Alleged an Economic Injury Because the Colourpop Makeup She</u>

2  <u>Purchased Worked</u> (she does not allege otherwise). She does not allege she had any issue, defect,

3  problem with the products' performance as makeup. The only reasonable inference is that she

4  received the benefit of the bargain. *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962,

5  972 (C.D. Cal. 2014) ("a purchaser of a product who receives the benefit of his bargain has not

6  suffered Article III injury-in-fact traceable to the defendant's conduct."). Plaintiff bought Menage

7  a Muah or Boudoir Noir for a specific purpose, and plaintiff has not alleged that they could not be

8  used for that purpose. Where the wrong stems from the assertion of insufficient performance of a

9  product, a plaintiff must allege "something more" than "overpaying for a defective product" to

10  support his or her claim. *Id* at 973; *Whitson v. Bumbo*, 2009 WL 1515597, at *2-6 (N.D. Cal. Apr.

11  16, 2009) (no standing where the plaintiff alleged a defect but did not allege that the defect

12  occurred in the product she purchased or that she saw any representations suggesting the product

13  was safe for use). Plaintiff has not alleged plausible facts necessary to show an injury based on

14  economic injury.

15      <u>Plaintiff Only Attempts to Allege a Technical Statutory Violation But Cannot Allege a</u>

16  <u>Concrete Injury Because the Product Worked</u>. Article III standing requires concrete injury even in

17  the context of a statutory violation. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016). "Article III

18  grants federal courts the power to redress harms that defendants cause plaintiffs, not a

19  freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 141 S. Ct.

20  at 2205. In *Transunion*, plaintiffs alleged that defendant maintained inaccurate information on

21  their credit reports in violation of the Fair Credit Reporting Act. A class of 8,185 individuals with

22  OFAC alerts in their credit files sued TransUnion under the FCRA for failing to use reasonable

23  procedures to ensure the accuracy of their credit files. *Id* at 2200. For 6,332 of the 8,185 class

24  members, this inaccurate information was never disseminated. *Transunion* held that the "mere

25  presence of an inaccuracy in an internal credit file," which plaintiffs alleged violated FCRA, did

26  not amount to "concrete harm" absent disclosure to a third party. *Id* at 2210. Because the 6,332 did

27  not suffer a concrete harm, they lacked standing. *Id* at 2214.

28      Like the *Transunion* class members who only could show a statutory violation, plaintiff

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  has only alleged a technical statutory violation but no concrete harm because of that alleged

2  violation. She has not alleged ColourPop's products caused her physical injury or that they do not

3  work. All she alleges is that the products violate regulations, which requires dismissal. This same

4  logic mandates dismissal of all her claims for failing to plausibly plead an injury or damage.

5  **V.      PLAINTIFF LACKS STANDING AND CANNOT BRING CLAIMS FOR OTHER REASONS.**

**A.      Plaintiff's Generic Implied Warranty, Unjust Enrichment, and Fraud Claims**
6
**Fail Because They Are Not Tethered to a Specific State Law.**
7

8          Claims I, III, and VIII are pled on behalf of a nationwide class but do not identify any

9  state's law that applies. Comp. ¶¶65-79, 97-108, 165-172. The failure to identify which state laws

10  govern these common law/state-law claims means the claims brought on behalf of the nationwide

11  class have not been adequately pled. *In re Samsung Litig.*, 2018 WL 1576457, at *4 (N.D. Cal.

12  Mar. 30, 2018)("As this Court and other courts in this district have recognized, due to variances

13  among state laws, failure to allege which state law governs a common law claim is grounds for

14  dismissal."); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 157 (S.D. Cal. 2021)

15  ("Plaintiffs must allege the applicable law to determine whether they plead a sufficient claim.").

16  Further, "[t]he elements necessary to establish a claim for unjust enrichment also vary materially

17  from state to state." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012). Plaintiff is

18  not suing under a "federal general common law." *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

19  Plaintiff's Claims I, III, and VIII claims should be dismissed for failure to allege what law applies.

**B.      Plaintiff Lacks Standing to Assert Nationwide Class Claims.**
20

21          Plaintiff lacks standing to bring claims based on laws of states in which she does not

22  reside. Plaintiff is a resident of California but seeks to represent a class for nationwide claims for

23  each of her claims. Comp. ¶55. In *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004), the

24  Ninth Circuit held that district courts can address the issue of standing before addressing the issue

25  of class certification. *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1072 (S.D. Cal. 2020).

26  "Following *Easter*, there is a growing trend among courts within the Northern, Eastern, and

27  Southern Districts of California to address the issue of Article III standing at the pleading stage

28  and dismiss claims asserted under laws of states in which no plaintiff resides or has purchased

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                                11                          Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1  products." *Id.* (collecting cases). "In the absence of a named Plaintiff who has purchased a product

2  within the relevant state… there can be no determination that an interest was harmed that was

3  legally protected under the relevant state's laws." *In re Packaged Seafood Litig.*, 242 F. Supp. 3d

4  1033, 1095 (S.D. Cal. 2017). Thus "if a complaint includes multiple claims, at least one named

5  class representative must have Article III standing to raise each claim." *Stewart*, 537 F. Supp. 3d

6  at 1124. Every claim based on violation of a state law without a representative plaintiff should be

7  dismissed for lack of standing. *Id.*

8          Additionally, "[m]ultiple California district courts have applied *Mazza v. American Honda*

9  *Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) at a motion to dismiss stage." *Cover v. Windsor*

10  *Surry Co.*, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) (collecting cases). In *Mazza*, a

11  putative class sued Honda for violations of California state laws. While Honda was headquartered

12  in California and made the alleged misrepresentations in California, the transaction that caused the

13  alleged injury occurred in other states for most class members. *Id.* at 590. The Ninth Circuit

14  reversed certification of a national class after concluding that, under California's choice of law

15  rules, "each class member's consumer protection claim should be governed by the consumer

16  protection laws of the jurisdiction in which the transaction took place." *Id*. at 594.

17          Numerous courts agree that "[i]n analogous cases, *Mazza* is not only relevant but

18  controlling, *even at the pleading stage*." *Cover*, 2016 WL 520991, *5. Many of these courts have

19  recognized that nationwide class claims present threshold standing issues that should be addressed

20  at the pleading stage. *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal.

21  2017). This threshold standing inquiry raises the same concern "that plaintiffs present named class

22  representatives who possess individual standing to assert each state law's claims against

23  [ColourPop]." *Id.* Thus, as in *Johnson*, Plaintiff Wilson, a California resident, lacks standing to

24  maintain a nationwide class claims. *Id.* at 1176.

25      **C.      A Song-Beverly Claim Can Only Be Made on Behalf of Cal. Residents.**

26          The Song-Beverly Act specifically limits itself to transactions that occurred in California.

27  The Act states that the implied warranty of merchantability applies only to "consumer goods that

28  are sold at retail *in this state*…" Cal. Civ. Code § 1792 (emphasis added). Because plaintiff seeks

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    to certify a nationwide class, the claims of non-residents should be dismissed.

2    **D.   Plaintiff Does Not Have Standing to Seek Injunctive Relief and Has Not Plausibly Alleged a Risk of Future Harm.**

3    Plaintiff lacks standing to seek injunctive relief because she cannot plausibly allege she

4    will be misled into buying the makeup in the future now that she knows the makeup is made with

5    what she labels "Harmful Ingredients." All ingredients and the instruction are listed on the product

6    labeling and online. RJN Ex. 1 & 2. "A plaintiff must demonstrate constitutional standing

7    separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956,

8    967 (9th Cir. 2018). A plaintiff seeking injunctive relief must demonstrate a "real or immediate

9    threat that they will be wronged again—a likelihood of substantial and immediate irreparable

10   injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1982). "[T]he injury or threat of injury

11   must be both real and immediate, not conjectural or hypothetical." *Id.* at 102. "A plaintiff

12   threatened with future injury has standing to sue if the threatened injury is certainly impending, or

13   there is a substantial risk the harm will occur." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th

14   Cir. 2018).

15   Plaintiff is not threatened with any future injury since she cannot be deceived by the

16   allegedly misleading label now that she has learned the product contains "Harmful Ingredients."

17   All the cosmetics' ingredients are listed on the packaging as required (21 C.F.R. §701.3(a)), which

18   also includes an instruction as to particular shades. RJN. 1 & 2. Because all ingredients are listed

19   on the package, plaintiff can determine what ingredients are in the product and whether the

20   product remains "deceptive." Comp. ¶36. Plaintiff is on notice and knows what she is purchasing.

21   Plaintiff does not allege otherwise that she is unable to determine the ingredients. ¶54. Because

22   there is no likelihood of future harm, there is no standing to seek an injunction.

23   While under *Davidson* certain consumer-protection plaintiffs may seek injunctive relief, it

24   does not mean that all such plaintiffs can do so. *Davidson* is "narrower than a blanket conclusion

25   that plaintiffs seeking injunctive relief in mislabeling cases always have standing." *Schneider v.

26   Chipotle Inc.*, 328 F.R.D. 520, 528 (N.D. Cal. 2018). *Davidson* applies only in the limited

27   circumstances where the consumer *credibly alleges* that she intends to purchase the product again

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                              13                    Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1   but is "*unable*" to determine whether the product remains deceptive. *Davidson*, 889 F.3d at 970.

2   *Davidson* concluded that the plaintiff "face[d] the similar injury of being unable to rely on [the

3   defendant's] representations of its product in deciding whether or not she should purchase the

4   product in the future" absent injunctive relief. *Id.* at 971-72. Unlike *Davidson*, the plaintiff here

5   cannot reasonably claim she will be deceived again because she knows what the "harmful

6   ingredients" are and those ingredients are listed on the package. Comp. ¶54. This case is different

7   from those challenging representations about product characteristics like "natural" or "flushable,"

8   where the plaintiffs alleged that they could not doublecheck the package to determine whether the

9   defendant's representations is true. *Davidson* at 970-71 (plaintiff "has no way of determining

10   whether the representation 'flushable' is in fact true when she regularly visits stores.").

11       Plaintiff cannot plausibly allege that she remains unaware about what ingredients are in the

12   product since she knows which ingredients she takes issue with. Comp. ¶35. She just wants the

13   products to be "reformulated" and she would know from the ingredient list if that were to occur.

14   ¶54. This case is similar to cases where courts dismiss injunctive relief claims because plaintiffs

15   can determine from the package labeling whether the product remains deceptive.[5] Plaintiff has not

16   established a "real and immediate threat of repeated injury" sufficient to establish Article III

17   standing to assert her claim for injunctive relief. *Lyons*, 461 U.S. at 102.

18

19

20

_____

21   [5] *See, e.g.*, *Sinatro v. Barilla Am., Inc.*, No. 22-CV-03460-DMR, 2022 WL 10128276, at *10

22   (N.D. Cal. Oct. 17, 2022)(dismissing request for injunctive relief because ethe plaintiff could not
     "plausibly allege that they remain unaware that the products are manufactured in the United States

23   from ingredients that are not from Italy"); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103,
     1127 (S.D. Cal. 2021) (finding no standing for injunctive relief where plaintiffs could "cross-

24   check their previous disappointing purchases" by examining information on the front label with
     the nutrition facts label); *Martinez v. Mead Johnson & Co.*, LLC, 2022 WL 15053334, at *8 (C.D.

25   Cal. Oct. 22, 2022)(dismissing injunctive relief claim where plaintiff can look at the ingredient list
     of the product to determine the predominant ingredients by weight); *Hawyuan Yu v. Dr Pepper*

26   *Snapple Grp., Inc.*, 2020 WL 5910071, at *8 (N.D. Cal. Oct. 6, 2020) ("Given what Plaintiff
     knows about Defendants' products and his preference for applesauce and apple juice free of trace

27   amounts of pesticides, the Court does not find it plausible that he would be misled into purchasing

28   these Products in the future.").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                    14                    Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1

2

**E.      Plaintiff Only Has Standing to at Most Sue for the Two Products She Purchased and the Rest Must Be Dismissed.**

3

In *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901 (C.D. Cal. 2021), the court came to the

4

commonsense conclusion that a plaintiff only has Article III standing to bring a class action for the

5

product(s) that plaintiff purchased. This same logic requires dismissal of all the products in this

6

case beyond the two that plaintiff purchased. The *Lorentzen* plaintiff brought a class action against

7

Kroger alleging the grocery chain's private-labelled coffee products are misleading. *Id.* at 905.

8

While plaintiff only purchased one type of Kroger's private-labelled coffee products, she brought

9

a class action regarding eight types of Kroger's private-labelled coffee products. *Id.* at 909.

10

Plaintiff alleged all eight types of the private-labelled coffee products made the same

11

representations and are similarly deficient. *Id.* at 905. Kroger argued that plaintiff lacked Article

12

III standing to bring claims for the seven other private-labelled coffee products she did not

13

purchase. The court agreed. *Id*. at 907-09. Under Article III, federal courts have limited

14

jurisdiction and can only hear "[c]ases" and "[c]ontroversies." To constitute a case or controversy,

a plaintiff must have standing and is required to prove they suffered an "injury in fact."

15

16

Some district courts have held that a plaintiff has Article III standing to sue for products

17

they did not purchase as long as those other products or the alleged misrepresentations are

18

"substantially similar." As *Lorentzen* held, these cases ran afoul of binding U.S. Supreme Court

19

precedent, including *Blum v. Yaretsky,* which held that "[n]or does a plaintiff who has been subject

20

to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating

21

conduct of another kind, *although similar*, to which he has not been subject." 457 U.S. 991, 999

22

(1982) (emphasis added). *Lorentzen* held that the "substantial similarity' analysis "appears to be

23

inconsistent with the basic concept of standing." *Lorentzen*, 532 F. Supp. 3d at 908. "The standing

24

requirement extends to each claim and each remedy sought." *Davis v. Fed. Election* Comm'n, 554

U.S. 724, 734 (2008).

25

26

"The similarity of a product, by itself, says nothing about whether a party suffered an

27

injury traceable to the allegedly wrongful conduct of another. A plaintiff who is falsely led to buy

28

a product may claim injury resulting from that purchase; the same plaintiff, however, cannot claim

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

injury from similarly false advertising upon which he or she did not injuriously rely (by buying a similar product or otherwise). Article III 'standing is not dispensed in gross.' *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). …Importing a 'substantial similarity' test into the principle of standing overlooks this point and invites an analysis that is both difficult to apply and unrelated to its objective." *Lorentzen* at 908-09. "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis*, 518 U.S. at 357. *Lorentzen* held that because "[p]laintiff bought only one of the eight Products," "[s]he therefore did not suffer any injury—economic or otherwise—related to the other seven Products." *Lorentzen* at 909. Because plaintiff did not have standing with respect to the seven products she did not purchase, the court dismissed plaintiff's claims with respect to those products. *Id.*

The exact same logic applies here. Plaintiff only purchased two ColourPop palettes. Comp. ¶16. Plaintiff does not allege what other products are "at issue." Instead, she tries to claim that any product that has a "harmful ingredient" is at issue. ¶¶35-36, 55. She did not purchase these other products. Standing principles make clear she can only bring a class action for products she purchased. Plaintiff also does not allege facts showing "substantial similarity." Even if "substantial similarity" applied, plaintiff does not allege what "harmful ingredient" is in the products she purchased and does not identify what other products have those same ingredients.

## VI.   PLAINTIFF PLEADS NO FACTS ABOUT HER PURCHASE AND INSTEAD OFFERS LEGAL CONCLUSIONS MAKING HER CLAIMS IMPLAUSIBLE UNDER RULE (8)(A) AND 9(B).

Plaintiff fails to plead "enough facts to state a claim to relief that is plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). She fails to plead her fraud claims with particularity as required by Rule 9(b). Her complaint consists primarily of "labels and conclusions, and *a formulaic recitation of the elements*" that can and should be disregarded. *Twombly*, 550 U.S. at 555. Plaintiff claims she "believed that Plaintiff's Purchased Products were safe for their intended use, namely for use around the eye area." Comp. ¶47. She fails to provide facts to support this conclusion. She does not allege she read any product labels (front or back) or any details about her

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67
16
Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1   product buying experience or comparing prices. ¶¶46-54. *She does not allege there is anything*

2   *wrong with the product.* She discusses products she did not purchase. At the motion to dismiss

3   stage, only the named plaintiff's claims are relevant. *Cheng v. BMW of N. Am., LLC*, 2013 WL

4   3940815, at *4 (C.D. Cal. July 26, 2013) ("[C]ourts generally consider only claims of named

5   plaintiffs in ruling on [a] motion to dismiss . . . prior to class certification.").

6          Plaintiff fails to allege facts that show she read product labels, saw any advertising, or

7   alleged what was written the labels or ads. This makes her conclusions of reliance implausible.

8   Comp. ¶¶46-54. At bottom, her "naked assertions" are "devoid of further factual enhancement."

9   *Iqbal*, 556 U.S. at 678; *Ballard v. Bhang Corp.*, 2020 WL 6018939, at *7 (C.D. Cal. Sept. 25,

10  2020) (dismissing, per Rules 8, 9(b), claims based on the theory that chocolates contained a

11  smaller quantity of CBD than advertised because plaintiff failed to allege "which chocolates he

12  bought, when he bought them, how they were advertised, and how they fell short…").

13         Plaintiff does not allege particular facts to satisfy Rule 9. Rather, she alleges *conclusions*

14  like that she paid more than she should have for ColourPop's products because the products

15  contain "Harmful Ingredients" and are "worthless." ¶52. Plaintiff lists thirty ingredients that she

16  alleges the FDA does not permit to be used around the eye. Plaintiff does not allege which of these

17  ingredients is in the two products she purchased and how these ingredients harmed her.

18  **VII.   PLAINTIFF'S TWO IMPLIED-WARRANTY CLAIMS FAIL.**

19         <u>Plaintiff Does Not Allege Facts Showing The Product Is Unmerchantable and Unfit for</u>

20  <u>Ordinary Use</u>. Under the Song-Beverly Act and the California Commercial Code's implied

21  warranty of merchantability, "[t]he core test of merchantability is fitness for the ordinary purpose

22  for which such goods are used." *Knowles v. Arris Int'l PLC*, 2019 WL 3934781, at *4 (N.D. Cal.

23  Aug. 20, 2019), *aff'd*, 847 F. App'x 512 (9th Cir. 2021). This implied warranty requires goods to

24  be "fit for the ordinary purposes for which such goods are used" and is breached only if the goods

25  "[do] not possess even the most basic degree of fitness." *Moceck v. Alfa Leisure, Inc.*, 114 Cal.

26  App. 4th 402, 406 (2003); Cal. Com. Code § 2314(2)(c). Plaintiff must allege that "the product did

27  not possess even the most basic degree of fitness for ordinary use." *Hauck v. Advanced Micro*

28  *Devices, Inc.*, 2018 WL 5729234, at *8 (N.D. Cal. Oct. 29, 2018). Courts in this district regularly

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                          17                    Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    dismiss implied-warranty claims for failing to plausibly allege unmerchantability.[6]

2         Plaintiff alleges no facts to show the products she purchased were unmerchantable nor

3    unfit for use as makeup. To the contrary, plaintiff admits she kept buying and using the products

4    for years and wishes to continue buying them. Comp. ¶¶46, 54. Plaintiff's implied-warranty claims

5    fail due to the lack of plausible facts to show the products she purchased did not work as makeup

6    and were unmerchantable. An implied warranty does not promise a perfect, or even problem-free

7    product; it only assures the buyer that the product will "at least function for its intended purpose."

8    *Zambrano v. CarMax LLC*, 2014 WL 228435, at *7 (S.D. Cal. Jan. 21, 2014). Here, plaintiff used

9    the products as makeup, and the products worked as makeup.

10        <u>The UCC Implied-Warranty Claim Fails for Lack of Privity</u>. Under California Commercial

11   Code § 2314, a plaintiff asserting a claim for breach of warranty must stand in vertical contractual

12   privity with the defendant as "adjoining links in the distribution chain." *Clemens v. DaimlerChrysler*

13   *Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). There is no third-party beneficiary exception as *Clemens*

14   recognized, and California law has not changed. This mandates dismissal.[7]

15   **VIII.   PLAINTIFF'S FRAUD, UCL, FAL, AND CLRA CLAIMS FAIL FOR NUMEROUS REASONS.**

16        **A.    Plaintiff Does Not Allege any Representation, Let Alone a False or Misleading
              Representation on the Product Label or Otherwise.**

17        Plaintiff has not alleged a required element of her fraud claim—a "*false* representation."

18   *Engalla, Inc.* 15 Cal. 4th at 974. "[C]laims based on deceptive or misleading marketing must

19   demonstrate that a "reasonable consumer" is likely to be misled by the representation."

20   *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021). She has not alleged facts showing

21   ColourPop made an actionable "false representation" or any representation. She has not identified

---

[6] *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) ("the district court properly
dismissed the Troups' claim predicated on breach of the implied warranty of merchantability. The
Troups failed to allege that their Prius was unfit for its intended purpose..."), *Minkler v. Apple,
Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014), *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp.
2d 1123, 1142-43 (N.D. Cal. 2010).

[7] *See, e.g.*, *Stewart v. Electrolux Prods., Inc.*, 304 F. Supp. 3d 894, 915 (E.D. Cal. 2018)
("*Clemens* forecloses a third-party-beneficiary exception to the rule of privity"); *Zakikhan v.
Hyundai Motor Co.*, 2021 WL 4805454, at *9 (C.D. Cal. June 28, 2021) (same).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                         18                    Case No. 3:22-cv-05198-TLT
                COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1  any advertising or packaging statement regarding the two products she purchased. Plaintiff's *ipse*

2  *dixit* and conclusions do not cut it under Rule 9(b). Plaintiff does not allege where she saw the

3  Menage a Muah or Boudoir Noir palettes or what she relied on when she saw them. Plaintiff's sole

4  allegation is that ColourPop represented the product as a generic makeup. The product name is

5  accurate and does not amount to fraud. Plaintiff cannot point to a promise ColourPop made

6  regarding the products she purchased. ColourPop did not promise anything. Her failure to

7  plausibly allege a false statement that plaintiff relied on pre-suit disposes of these claims.

8  **B.   Plaintiff Has Not Alleged Facts Demonstrating a Further Duty to Disclose.**

9  <u>ColourPop Bore No Further Duty to Disclose Due to the Lack of a Physical Product Defect</u>

10  <u>Relating to the Central Function of the Makeup and No Safety Defect</u>. To the extent plaintiff's

11  claims are based on omissions, those omissions are only actionable if they are "contrary to a

12  representation actually made by the defendant, or an omission of a fact the defendant was obliged

13  to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). The duty to disclose is

14  limited.[8] To establish a duty to disclose, plaintiffs must allege that the undisclosed information (1)

15  "caused an *unreasonable* safety hazard" or (2) that the omission is an alleged physical product

16  defect that was "central to the product's function." *Id.* She has not alleged these elements.

17  <u>*No Unreasonable Safety Defect*</u>. Plaintiff alleges no safety defect with respect to the

18  products she purchased. She does not allege she experienced a safety issue or that others

19  experienced a safety issue. She does not allege the makeup she used cause eye irritation, eye

20  injury, or any other physical reaction. The fact that certain color additives are not "approved" is

21  not tantamount to the FDA finding that the additives are in fact unsafe and will cause physical

22

___

23  [8] Plaintiff alleges "omissions" in her FAL claim. Comp. ¶114. But the FAL does not apply to

24  omissions. The FAL states that "[i]t is unlawful for any ... corporation ... with intent directly or indirectly to dispose of real or personal property... to make or disseminate ... any *statement* ...

25  which is known, or by the exercise of reasonable care should be known, to be untrue or misleading[.]" Bus. & Prof. Code § 17500. The plain language of the statute—which prohibits

26  making a false *statements*—does not encompass omissions. "[M]any courts have [thus] held a plaintiff who asserts that a business omitted a material fact in its advertisements, labels, or

27  literature has not stated a claim under the FAL." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016). This same logic applies to dismiss the FAL omission claim.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   injury. 21 C.F.R. § 70.5(a). That the FDA has not approved these pigments does not say anything

2   about their safety. It shows that no company has yet undertaken the process of petitioning the FDA

3   with scientific evidence. The European Union, known for generally stricter regulations, allows

4   these pigments around the eye. RJN Ex. 3. Indeed, packaging for Menage a Muah and Boudoir

5   Noir warns customers that certain shades are "***not intended for use in the immediate eye area***."

6   See RJN Ex. 1 & 2. Plaintiff does not allege facts showing the makeup "caused an *unreasonable*

7   safety hazard," which could trigger a further duty to disclose. *Hodsdon* at 861.

8   _No Physical Defect that Effects the Makeup's Central Function_. A manufacturer only has a

9   duty to disclose alleged product defects that relate to the "central functionality" of the product. *Id.*

10  at 863. Central-functionality defects stop the product from being usable, such as defects that cause

11  a broken laptop screen or a defect that causes data corruption on a hard drive. *Id.* at 862-63.

12  Plaintiff here has not alleged any physical defect or any issues relating to the products'

13  performance. She admits she "used" the product for "years." Comp. ¶46. Her own experience

14  shows the makeup was functional. *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 568 (N.D. Cal. 2019)

15  (plaintiff alleges no facts that demonstrate that the Filter Defect impairs the computers' central

16  function such that Apple had a duty to disclose the Filter Defect).

17  Plaintiff Does Not Allege ColourPop's Knowledge of a Defect or Safety Issue. To state a

18  claim for failing to disclose a defect, a party must allege "that the manufacturer knew of the defect

19  at the time a sale was made." *Williams v. Yamaha Ltd.*, 851 F.3d 1015, 1025-26 (9th Cir. 2017)

20  (affirming dismissal of claims brought under the CLRA and UCL based on lack of knowledge);

21  *Wilson v. HP Co.*, 668 F.3d 1136, 1145 n.5 (9th Cir. 2012) (noting that for a UCL claim "the

22  failure to disclose a fact that a manufacturer does not have a duty to disclose, i.e., a defect of

23  which it is not aware, does not constitute an unfair or fraudulent practice."); *Engalla*, 15 Cal. 4th

24  at 974 (fraud requires proving "*knowledge of falsity or scienter*"). Here, plaintiff has not alleged a

25  single consumer complaint, an online forum post, or *FDA* investigation that pre-dates her product

26  purchases and could confer knowledge of safety issues or a central defect. Instead, plaintiff offers

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67

20

Case No. 3:22-cv-05198-TLT

COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    conclusions. Comp. ¶169. Courts have dismissed complaints based on a similar lack of facts.[9]

2    ### C.    Plaintiff Has Not Alleged Any Facts Showing Intent to Defraud.

3        "Fraud is an intentional tort; it is the element of fraudulent intent, or intent to deceive, that

4    distinguishes it from actionable negligent misrepresentation and from nonactionable innocent

5    misrepresentation. It is the element of intent which makes fraud actionable …." *City of Atascadero*

6    *v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Cal. App. 4th 445, 482 (1998). Plaintiff offers

7    conclusions about intent (Comp. ¶¶ 170), which cannot be credited. *Mohebbi v. Khazen*, 50 F.

8    Supp. 3d 1234, 1252 (N.D. Cal. 2014) ("[c]onclusory statements about" intent to defraud,

9    "without corroborating factual allegations," are "insufficient, standing alone, to adequately allege"

10   a fraud claim). Comp. ¶169. These are "naked assertions." *Ashcroft*, 556 U.S. at 680. Courts

11   dismiss cases like this where the plaintiff does not allege facts showing fraud.[10]

12   ### D.    Plaintiff Fails to Plausibly Allege Reliance on or Exposure to Any Statements
     or Advertising Regarding the Products She Purchased.

13       Plaintiffs are required to plead actual reliance for their claims. *Reid v. Johnson & Johnson*,

14

15   _____

[9] *E.g.*, *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 800 (N.D. Cal. 2019) (granting motion to
dismiss and finding that plaintiff's allegations do not show Apple's knowledge of the alleged
defect because plaintiff "fails to explain how Apple's alleged knowledge of the alleged defect in
the First Generation Watches relates to knowledge of the alleged defect in the Series 1, 2, and 3
Watches."); *Blissard v. FCA US LLC*, 2018 WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) (finding
allegations of exclusive knowledge insufficient where the plaintiffs made speculative allegations
about Defendant's testing and records and relied on consumer complaints on third-party websites
or to NHTSA but the plaintiffs "concede that they have not identified any complaint that predates
[one named plaintiff's] purchase."); *Punian v. Gillette*, 2015 WL 4967535, at *9 (N.D. Cal.
August 20, 2015) (dismissing CLRA, UCL, and FAL claims because the plaintiff failed to
sufficiently allege that the defendants had knowledge of the defect at the time the defendant made
its advertising statements or at the time of sale).

[10] *Vanduzen v. Homecomings Fin.*, No. 2:09-cv-01237-GEB-GGH, 2010 U.S. Dist. LEXIS 46106,
at *13 (E.D. Cal. May 10, 2010) ("Plaintiff has failed to allege that [defendants] each specifically
had knowledge that these misrepresentations were false and made with the intention of Plaintiff
relying on the misrepresentations."); *Mohebbi*, 50 F. Supp. 3d at 1251-52 (holding "Plaintiff
provides little more than a series of cursorily pleaded statements, none of which show that any of
the Defendants made any statements with the intent to defraud Plaintiff — though Plaintiff
repeatedly uses the words 'fraud' and 'defrauded'); *Jensen v. Quality Loan Serv. Corp.*, 702 F.
Supp. 2d 1183, 1186 (2010) ("Plaintiff must allege facts relating to each element of fraud as to
[the defendant], including [the defendant's] intent to induce reliance and Plaintiff's actual reliance
on…[the] misrepresentation. To the extent Plaintiff asserts such a claim, it is insufficiently pled.").

16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

780 F.3d 952, 958 (9th Cir. 2015). Plaintiff pleads no facts explaining what advertising she relied on *prior* to her purchasing the palettes. The complaint includes an Instagram post featuring a product she did not purchase. Comp. ¶25. She does not allege Instagram posts of the products she purchased. She offers no plausible explanation for why she continued to purchase ColourPop products—for "the past 5 years"—if she was dissatisfied with the makeup. ¶46. Plaintiff fails to provide (1) any facts about her purchases (2) *what* representations *she relied on*, (3) *when* she saw those representations, or (4) *how* any specific representations were false or misleading to her. She repeats conclusions. ¶48 ("Plaintiff Wilson reasonably relied on Defendant's representations and omissions when she decided to purchase and use various ColourPop Eye Makeup products…"). Her conclusions are insufficient. *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 823-24 (N.D. Cal. 2017) (finding the lack of facts was "particularly important here where Plaintiffs intermittently propose three different theories of fraud."). Plaintiff does not allege seeing specific examples of advertising she saw or what was misleading about them. *Id.* (finding "Plaintiffs only generically refer[ing] to 'advertisements' or 'advertising'" as not particular). Rule 9(b) requires more. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009) (affirming dismissal where plaintiff did not plead with particularity the content of television advertising or sales materials he claimed was misleading, when he saw it, or which he relied on when purchasing).

### E.     Plaintiff's UCL "Unfairness" Claim Fails.

Plaintiff alleges no facts about what is unfair about a product she "used" and works. Because the other parts of the UCL claim overlap entirely with her "unfairness" claim (Comp. ¶157), the UCL unfairness claim falls with them. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017). ColourPop's purported failure to disclose information it had no duty to disclose is not substantially injurious, immoral, or unethical. *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1263 (2006) (holding that the use of less expensive tubular steel exhaust manifolds did not violate public policy because the defendant made no representation about the composition of the manifolds and the plaintiffs did not allege a safety concern or a violation of the warranty); *Hodsdon*, 891 F.3d at 867 (dismissing same claim).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                    22                    Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

IX.   **THERE IS NO CAUSE OF ACTION FOR UNJUST ENRICHMENT UNDER CALIFORNIA LAW.**

There is no such thing as a standalone claim for "Unjust Enrichment or Restitution." Complaint ¶¶ 97-108. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("In California, there is not a standalone cause of action for "unjust enrichment," which is synonymous with "restitution.") Restitution is only a remedy, not a cause of action, and thus this claim fails for this reason alone. *Nationwide Biweekly Admin., Inc. v. Sup.Ct.*, 9 Cal. 5th 279, 326, 332 (2020) (noting that restitution is a "clearly equitable remed[y]" and "the equitable purpose of restitution"). When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Astiana., Inc.*, 783 F.3d at 762. Even if plaintiff did allege a quasi-contract claim, "[i]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996). A direct purchase equates to an express contract under the California Commercial Code. *Smith v. Allmax Nutrition, Inc.*, 2015 WL 9434768, at *9 (E.D. Cal. Dec. 24, 2015) ("Although Rule 8… allows a party to state multiple, even inconsistent claims, the rule does not allow a plaintiff invoking state law to assert an unjust enrichment claim while also alleging an express contract."). Plaintiff alleges purchasing ColourPop products, which is an express contract covering the same purchases and thus defeats her claim.

Plaintiff does not plausibly allege facts showing ColourPop was unjustly enriched by products that she purchased and "used" for "years" without issue. Comp. ¶46. This claim also fails as a matter of law because there is no underlying basis for recovery. Because all the other claims should be dismissed, there is no longer an underlying basis for recovery and the claim for unjust enrichment should be dismissed. *Sprout Foods*, 2022 WL 13801090, at *5.

X.   **PLAINTIFF FAILS TO ALLEGE THAT SHE LACKS AN ADEQUATE REMEDY AT LAW, AND THUS HER EQUITABLE CLAIMS/ REMEDIES FAIL UNDER NINTH CIRCUIT PRECEDENT.**

Plaintiff's claims for equitable relief fail because she does not and cannot plead lack of an adequate remedy at law. *In Sonner v. Premier Corp.*, 971 F.3d 834, 843-44 (9th Cir. 2020), the plaintiff similarly brought a diversity suit under California's UCL and CLRA. As a last-minute

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4883-6824-5310.67                    23                    Case No. 3:22-cv-05198-TLT
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1   amendment of her complaint, plaintiff dropped her damages claim and sought only restitution and

2   equitable relief. *Id.* at 838-39. The district court granted a motion to dismiss, finding that plaintiff

3   "could not proceed on her equitable claims for restitution in lieu of a claim for damages." *Id.* at

4   838. "Specifically, the district court concluded that claims brought under the UCL and CLRA

5   remained subject to California's inadequate-remedy-at-law doctrine, and that [plaintiff] failed to

6   establish that she lacked an adequate legal remedy for the same past harm for which she sought

7   equitable restitution." *Id.* On appeal, the Ninth Circuit affirmed, relying on principles of federal

8   common law. The Ninth Circuit explained that while a state may authorize its courts to give

9   equitable relief without the restriction that an adequate remedy at law be unavailable, the state law

10  "cannot remove th[at] fetter[ ] from the federal courts." *Id.* at 843-44 (citing *Guar. Tr. Co. of N.Y.*

11  *v. York*, 326 U.S. 99, 105-06 (1945)). *Sonner* held "that the traditional principles governing

12  equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply

13  when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 844. The

14  court went on to find that the plaintiff's claims for equitable relief were properly dismissed

15  because she failed to allege the lack of an adequate legal remedy.

16          Under *Sonner*, a plaintiff in federal court must allege the lack of an adequate legal remedy

17  to state a claim for equitable relief. Plaintiff fails to do so here. In the wake of *Sonner*, numerous

18  courts have dismissed equitable claims at the pleading stage.[11] Besides restitution, courts in this

19

---

20  [11] *See, e.g. Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108 (C.D. Cal. 2021) (holding that
    equitable claims based on UCL and CLRA failed under *Sonner* because the plaintiff sought

21  damages and did not allege that they lacked an adequate remedy at law and further concluding that
    the reasoning in *Sonner* applies not only to claims for restitution but also to injunctive relief);

22  *Watkins v. MGA Entm't, Inc.*, 550 F. Supp. 3d 815, 838 (N.D. Cal. 2021) (concluding "Plaintiffs'
    claims for equitable relief under the UCL and the CLRA fail as a matter of law" because

23  "Plaintiffs have not alleged any facts establishing that their remedies at law are inadequate");
    *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020)

24  (dismissing UCL claims for an injunction and restitution on the basis that Sonner "very recently
    made clear" that the requirement that plaintiff establish an inadequate remedy at law "applies to

25  claims for equitable relief under both the UCL and CLRA"); *Teresa Adams v. Cole Haan, LLC*,
    2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) ("The *Sonner* court derived its rule from

26  broader principles of federal common law . . . [and] this broad analysis of the distinction between
    law and equity [does not] create an exception for injunctions as opposed to other forms of

27  equitable relief. The clear rule in Sonner that plaintiffs must plead the inadequacy of legal

28  (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

district have already applied *Sonner* to bar injunctive/equitable relief in similar class actions where there was an adequate legal remedy like monetary damages. *In re MacBook Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020).

Plaintiff seeks damages. Comp. ¶¶12, 171, Prayer (d). But plaintiff has not alleged facts establishing her remedies at law are inadequate, nor could she. Because her claims rest on her "overpaying" (Comp. ¶56), monetary damages would provide an adequate remedy for the alleged injury. *In re MacBook Litig.* at *4. The availability of an adequate legal remedy is clear from the face of the complaint and thus further amendment would be futile. *Id.* Based on this same logic, *In re Macbook Litig.* applied *Sonner* and dismissed the UCL claim in its entirety along with the other similar claims "to the extent they seek an injunction, restitution, or other equitable relief." *Id.* Plaintiff's claims in equity—the UCL, FAL, CLRA and unjust enrichment—must likewise be dismissed in their entirety along with any other requested equitable relief.

## XI.   CONCLUSION

Because the defect is one of legal theory, the motion should be granted without leave.

Date: November 21, 2022                LEWIS BRISBOIS BISGAARD & SMITH LLP


By:   _____
        Michael K. Grimaldi
        Attorneys for Defendant
        ColourPop Cosmetics, LLC

---

remedies before requesting equitable relief therefore applies."); *Schertz v. Ford Motor Co.*, 2020 WL 5919731, at *2 (C.D. Cal. July 27, 2020) (dismissing claims for an injunction and restitution under the UCL because plaintiff failed to allege the lack of an adequate legal remedy as required under *Sonner*); *Hassell v. Uber Techs., Inc.*, 2020 WL 7173218, at *9 (N.D. Cal. Dec. 7, 2020) (finding "the cumulative nature of any state law remedy does not alter the longstanding federal common law requirement that a plaintiff lack an adequate legal remedy to obtain equitable relief"); *Williams v. Apple, Inc.*, 2020 WL 6743911, at *10 (N.D. Cal. Nov. 17, 2020) ("the Court must dismiss Plaintiffs' FAL and UCL claims, which necessarily seek equitable relief, because Plaintiffs' breach of contract claim provides an adequate remedy at law.").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW