UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KACEY WILSON,<br><br>    Plaintiff,<br><br>    v.<br><br>COLOURPOP COSMETICS, LLC,<br><br>    Defendant. | Case No. 22-cv-05198-TLT<br><br>**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: ECF No. 29 |

Plaintiff Kacey Wilson ("Plaintiff") brings this putative class action against ColourPop Cosmetics, LLC ("Defendant"), asserting seven causes of action "concerning Defendant's design, formulation, manufacture, marketing, advertising, distribution, and sale of eye makeup that contains color additives and ingredients that are dangerous when used on the immediate eye area." Am. Compl. ¶ 1, ECF No. 26. Before the Court now is Defendant's motion to dismiss the entire complaint under Rule 12(b)(1), Rule 9(b), and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def. ['s] Mot. to Dismiss ("Mot."), ECF No. 29. In its discretion, the Court finds this motion suitable for determination without oral argument. Civ. L.R. 7-1(b).

Having carefully considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court **GRANTS** Defendant's motion to dismiss.

I.     **BACKGROUND**[1]

Plaintiff is an individual consumer and a resident of San Francisco, California. Am. Compl. ¶ 16. Defendant is registered as a limited liability company in the State of California and has its principal place of business at 1451 Vanguard Drive, Oxnard, California. *Id.* ¶ 17.

---

[1] Well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

According to Plaintiff, Defendant "designs, formulates, manufactures, markets, advertises, distributes, and sells a wide range of consumer cosmetic products including but not limited to, eyeshadow, eyeliner, eyelid primer, and eyebrow pencils, nationwide, including in California" (collectively, the "Products"). Am. Compl. ¶ 17. Although Plaintiff claims she purchased "several" of the Products, her complaint centers on Defendant's "Boudoir Noir" and "Menage a Muah" palettes. *Id.* ¶¶ 16, 53.[2]

Plaintiff claims that the Products contain harmful or dangerous color additives because they "are formulated with and/or contain certain color additives that are not safe for use in the eye area." Am. Compl. ¶ 2. These "Harmful Ingredients" include: "FD&C Red No. 4; D&C Red No. 6, 7, 17, 21, 22, 27, 28, 30, 31, 33, 34, 36; D&C Violet No. 2; Ext. D&C Violet No. 2; FD&C Yellow No. 6; D&C Yellow No. 7, 8, 10, 11; Ext. D&C Yellow No. 7; D&C Orange No. 4, 5, 10, 11; D&C Green No. 6, 8; FD&C Green No. 3; D&C Brown No. 1; and/or D&C Blue No. 4." *Id.*

Plaintiff alleges that these Harmful Ingredients are designated by the Food and Drug Administration ("FDA") as "unsuitable and unapproved for cosmetic use in the eye area," and thus the Products are "adulterated and misbranded" under the Food, Drug, and Cosmetics Act ("FDCA"). *Id.* ¶¶ 2-3. When she purchased the Products, Plaintiff was unaware that they contained these banned Harmful Ingredients, and she "would not have purchased the Products or would have paid substantially less for the Products" if she would have known. *Id.* ¶ 9.

Plaintiff further alleges she "reasonably relied on Defendant's representations and omissions when she decided to…use [the Products]…in the eye area." Am. Compl. ¶¶ 55, 125, 146, 170, 180. When she purchased the Products, she was not aware of any "warnings, safety issues, or instructions for use indicating that the Products are not safe or fit for use in the eye area, or that the Products were misbranded, adulterated, unsafe, and unlawful to sell." *Id.* ¶ 56.

Plaintiff proposes a nationwide class and a California subclass. *Id.* ¶ 63. The nationwide class includes "[a]ll persons residing in the United States who purchased ColourPop Eye Makeup

---

[2] Defendant's request for judicial notice of the Defendant's "Boudoir Noir" and "Menage a Muah" palettes is **GRANTED**. *See* RJN, Ex. 1-2, ECF No. 29-1; *Dinan v. Sandisk LLC*, No. 18-CV-05420-BLF, 2019 WL 2327923, at *2 (N.D. Cal. May 31, 2019) (in product labeling case, taking judicial notice of the actual packaging for the product the plaintiff purchased).

containing Harmful Ingredients during the maximum period permitted by law." *Id*. The California subclass includes "[a]ll members of the Class who purchased ColourPop Eye Makeup containing Harmful Ingredients in California during the maximum period permitted by law." *Id.*

Plaintiff filed her amended complaint on December 5, 2022, and asserts the following seven causes of action: (1) Breach of Implied Warranty, (2) Breach of Implied Warranty Under the Song-Beverly Consumer Warranty Act, Cal. Civil Code §§1790, et seq., (3) Unjust Enrichment or Restitution, (4) False Advertising Law, Cal. Bus. & Prof. C. §17500, et seq. ("FAL"), (5) Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq. ("CLRA"), (6) Unfair Competition Law, Cal. Bus. & Prof. C. §17200, et seq. ("UCL"), and (7) Fraud. *See* Am. Compl.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B.     Rule 9(b)

Federal Rule of Civil Procedure 9(b) heightens the pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b). The Ninth Circuit has interpreted Rule 9(b) to require that allegations of fraud are "specific enough to give defendants notice of the

3

1  particular misconduct which is alleged to constitute the fraud charged so that they can defend
2  against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*,
3  6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks omitted).

### C. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*quoting W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead herself out of court'" if she "plead[s] facts which establish that [s]he cannot prevail on h[er]…claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (*quoting Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

### III. DISCUSSION

#### A. Implied Preemption

Defendant first argues that Plaintiff's claims are impliedly preempted by the FDCA. Mot. 4. "Preemption is an affirmative defense, so the defendant bears the burden of pleading and supporting its preemption argument." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021). "The FDCA grants authority to the FDA to oversee the safety of drugs and provides

4

1   that 'all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by
2   and in the name of the United States.'" *Goldsmith v. Allergan, Inc.*, No. 09-cv-7088 PSG EX,
3   2011 WL 147714, at *2 (C.D Cal. Jan. 13, 2011) (quoting 21 U.S.C. § 337(a)). "This not only
4   prohibits a plaintiff from expressly seeking to enforce the FDCA, but also from using 'state unfair
5   competition laws as a vehicle to bring a private cause of action that is based on violations of the
6   FDCA.'" *Id.* (citation omitted). "[A] plaintiff may not ground his claims on violations of the
7   FDCA but can assert other federal or state law claims independently actionable without reliance
8   on the FDCA." *Id.* In *Goldsmith*, the court dismissed FAL and UCL claims to the extent that they
9   relied on "violations of the FDCA to create liability," but explained that such claims were
10  "actionable if they include properly pleaded allegations of false or misleading representations that
11  resulted in the Plaintiff's injuries." *Id.*

12  The Supreme Court has also addressed implied preemption under the FDCA in *Buckman*
13  *Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). In *Buckman*, the plaintiffs asserted claims
14  for "fraud on the FDA," alleging that defendants' fraudulent statements to the FDA resulted in
15  approval of a medical device that ultimately injured the plaintiffs. *Id.* at 343. In finding these
16  claims impliedly preempted under the FDCA, the Supreme Court explained that plaintiffs' claims
17  "exist[ed] solely by virtue of the FDCA…requirements." *Id.* at 353.[3]

18  According to Defendant, Plaintiff's theory is that Defendant "violated a technical FDA
19  regulation regarding what types of color additives may be used in makeup that is intended *only* for
20  the eyes," and thus Plaintiff's claims fail because there is no private right of action under the

---

[3] Defendant relies on *Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs.*, 48 F.4th 1040 (9th Cir. 2022) to support its position. In *Nexus Pharm., Inc.*, the Ninth Circuit held, in part, that "[t]o permit Nexus 'to proceed with a claim that Defendants violated this [FDCA] when the FDA did not so determine would, in effect, permit [Nexus] to assume enforcement power which the statute does not allow and require the finder of fact to make a decision that the FDA itself did not make.'" *Id.* at 1049 (citation omitted). The FDCA "includes a prohibition on private enforcement: all proceedings to enforce or restrain violations of the FDCA must be 'by and in the name of the United States,' except for certain proceedings by state governments." *Id.* at 1044 (quoting 21 U.S.C. § 337(a)). Although the *Nexus* Court addressed implied preemption under the FDCA "in the context of pharmaceutical compounding" and the FDA's exclusive authority to enforce violations of the FDCA (*id.* at 1041), the Court's reasoning applies here.

1   FDCA.  Mot. 1 (emphasis in original).  In response, Plaintiff argues that Defendant's implied
2   preemption "argument has been repeatedly rejected by binding and directly on point Ninth Circuit
3   authority" and cites *Ebner v. Fresh, Inc.*, 838 F.3d 958, 964-65 (9th Cir. 2016) and *Astiana v.*
4   *Hain Celestial Grp., Inc.*, 783 F.3d 753, 757 (9th Cir. 2015) to support her position.  However, not
5   only did *Ebner* and *Astiana* involve claims that were allegedly *expressly* preempted by the FDCA,
6   not *impliedly* preempted, but they also involved false advertising claims that relied on affirmative
7   representations about a product.  For example, in *Astiana*, plaintiffs filed a putative class action
8   claiming they were deceived into purchasing cosmetics that were labeled "All Natural," "Pure," or
9   "Pure, Natural & Organic," but the products allegedly contained synthetic ingredients.  *Id.* at 756.

10   Similarly, in *Ebner*, plaintiff brought a putative consumer class action alleging that
11  cosmetics and skin care products manufacturer by the defendant, deceived consumers about the
12  quantity of lip balm in its Sugar Lip Treatment product line.  838 F.3d at 961.  Although the lip
13  products' tube and packaging indicated the net weight of the included lip product, plaintiff alleged
14  that the lip products' "vastly oversized tubes and boxes" created the misleading impression that
15  each unit had a larger quantity of lip product than it contained.  *Id.* at 962.  Thus, because of the
16  "labeling, design, and packaging practices, [plaintiff] was misled as to the amount of lip product
17  actually accessible in a tube of [product] and was deprived of the value of her purchases."  *Id.*

18   Here, Plaintiff has not alleged that the Products' labels contain language or other
19  affirmative representations making positive statements about the Products—for example, that the
20  Products are "All Natural" or "Pure."  Rather, Plaintiff alleges the Products are defective or
21  misleading because "Defendant's packaging, advertising, marketing, website, and retail product
22  identification and specifications, contain numerous omissions as well as false and misleading
23  statements regarding the quality, safety, and reliability" of the Products.  Am. Compl. ¶ 171.

24   Besides Plaintiff's allegations that Defendant's failed to disclose that the Products were
25  "formulated with and/or contain certain color additives that are not safe for use in the eye area,"
26  and thus the Products are "adulterated and misbranded" under the FDCA and here allegations that
27  the Products are defective or unfit for ordinary use because they contain harmful ingredients
28  designated by the FDA as "unsuitable and unapproved for cosmetic use in the eye area," Plaintiff

does not specify what particular "false and misleading" statements Defendant made "regarding the quality, safety, and reliability" of the Products.

The Court finds that, as presently plead, all of Plaintiff's claims "exist solely by virtue of the FDCA…requirements." *Buckman Co.*, 531 U.S. 353. Specifically, as discussed above, all of Plaintiff's claims arise out of (1) Defendant's alleged failure to disclose that the Products were "formulated with and/or contain certain color additives that are not safe for use in the eye area," and thus the Products are "adulterated and misbranded" under the FDCA or (2) arise out of Plaintiff's allegations that the Products are defective or unfit for ordinary use *because* they contain harmful ingredients designated by the FDA as "unsuitable and unapproved for cosmetic use in the eye area." Am. Compl. ¶ 2. For example, Plaintiff's claim for Breach of Implied Warranty and her claim brought under the Song-Beverly Consumer Warranty Act allege that the Products are "not fit for its ordinary purpose—use in the eye area—because it contains ingredients that the FDA and the State of California have deemed not fit for use around the eye area." *Id.* ¶¶ 2, 95.

In the same way, Plaintiffs third claim for Unjust Enrichment alleges that "Defendant has profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff…in in connection with selling the defective ColourPop Eye Makeup." *Id.* ¶ 110; *see also id.* ¶ 4 (defining "Defect" as the "presence of one or more Harmful Ingredients," which renders the Products "unsafe for use in the eye area"). Plaintiff's FAL, CLRA, UCL, and Fraud claims allege that Defendant advertised that the Products were "free of defects and safe when, in reality, the Products contained Harmful Ingredients that render them defective and unsafe," that "the Products are defective, are unsafe, adulterated, and misbranded under the Sherman Laws," and that the Products were "defective, unsafe, and unsuitable for its intended use." *Id.* ¶¶ 121, 140, 164, 179.

In sum, Plaintiff's amended complaint seeks to impose liability on Defendant "*because* [Defendant's] conduct [of allegedly using ingredients designated by the FDA as 'unsuitable and unapproved for cosmetic use in the eye area'] violates the FDCA" and "such claim[s] would be impliedly preempted under *Buckman*." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (emphasis in original) (quotation omitted). In other words, as presently drafted, Plaintiff's claims allege that the Products are "defective, unsafe, and unsuitable for its intended use" *because* they

7

contain "Harmful Ingredients" designated by the FDA as "unsuitable and unapproved for cosmetic use in the eye area." *See In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1287-92 (C.D. Cal. Dec. 17, 2008) ("As currently pled,…Plaintiffs' allegations of fraud (i.e., deceptive advertising) are so intertwined with allegations that Defendants engaged in [conduct that violates the FDCA] that the Court must dismiss the Complaint in its entirety."). Plaintiff may not use "state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA." *Id.* at 1290-91. Accordingly, Defendant's motion to dismiss based on implied preemption is **GRANTED** with leave to amend.

## IV. CONCLUSION

For the above reasons, it is hereby **ORDERED** that Defendant's motion to dismiss is **GRANTED** and Plaintiff's amended complaint is dismissed in its entirety with leave to amend.[4] Any amended complaint must be filed no later than within 14 days of the date of this Order. No new claims or parties may be added without leave of court or stipulation of Defendant. Any response to an amended complaint is due 14 days after Plaintiff's filing. In any such response, Defendant may not move to dismiss based on arguments that should have been raised previously.

This Order terminates docket number 29.

**IT IS SO ORDERED.**

Dated: April 13, 2023

TRINA L. THOMPSON
United States District Judge

---

[4] Because the Court finds Plaintiff's claims are impliedly preempted, it need not reach the question of whether Plaintiff's claims are subject to dismissal under Rule 12(b)(1), Rule 9(b), and Rule 12(b)(6). In addition, because the Court did not consider any information contained in Defendant's request for judicial notice of the "European Union's 'List of Colorants Allowed in Cosmetic Products,'" *see* RJN, Ex. 3, ECF No. 29-1, the Court **DENIES** Defendant's request for judicial notice of Exhibit 3 as moot.