LEWIS BRISBOIS BISGAARD & SMITH LLP
Jon P. Kardassakis, SB# 90602
  Email: Jon.Kardassakis@lewisbrisbois.com
Michael K. Grimaldi, SB# 280939
  Email: Michael.Grimaldi@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant
ColourPop Cosmetics, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KACEY WILSON, individually and on behalf of all other persons similarly situated,<br><br>                 Plaintiff,<br><br>         vs.<br><br>COLOURPOP COSMETICS, LLC,<br><br>                 Defendant. | Case No. 3:22-cv-05198-TLT<br><br>Hon. Trina L. Thompson<br><br>**DEFENDANT COLOURPOP COSMETICS, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT FOR LACK OF STANDING (FRCP 12(B)(1)), AND (2) FAILURE TO STATE A CLAIM (FRCP12(B)(6))**<br><br>Concurrently Filed with a<br>Request for Judicial Notice and<br>Proposed Order<br><br>Date:     August 29, 2023<br>Time:    2:00 p.m.<br>Ctrm:    9 |

### NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on August 29, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Trina L. Thompson (Courtroom 9 of the U.S. Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102), Defendant ColourPop Cosmetics, LLC ("ColourPop") will, and hereby does, move the Court under Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6) to dismiss plaintiff's Second Amended Complaint ("SAC").

**STATEMENT OF RELIEF SOUGHT.** ColourPop seeks an order under Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6) dismissing with prejudice plaintiff's Second Amended Complaint for lack of standing and failure to state a claim upon which relief can be granted. Each of plaintiff's claims for (1) Breach of Implied Warranty; (2) Breach of Implied Warranty Under the Song-Beverly Consumer Warranty Act, Cal. Civil Code §§ 1790, *et seq.* ("Song-Beverly"); (3) Unjust Enrichment or Restitution; (4) False Advertising Law, Cal. Bus. & Prof. C. § 17500, *et seq.* ("FAL"); (5) Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); (6) Unfair Competition Law, Cal. Bus. & Prof. C. § 17200*, et seq.* ("UCL"); and (7) Fraud fails and should be dismissed.

This motion is based on this notice, the concurrently-filed memorandum of points and authorities, the request for judicial notice, and all other facts the Court may or should take notice of, all files, records, and proceedings in this case, and any oral argument the Court may entertain.

Date: May 11, 2023                    LEWIS BRISBOIS BISGAARD & SMITH LLP

By:   _Michael Grimaldi_
          Michael K. Grimaldi
          Attorneys for Defendant
          ColourPop Cosmetics, LLC

# TABLE OF CONTENTS

Page

I.      Introduction and Statement of Issues to Be Decided .................................................1

II.     Summary of Relevant Facts — No New Substantive Facts......................................2

III.    Plaintiff Is Still Attempting to Enforce the FDCA, and Thus Her Claims Are Barred by the Prohibition on Private Enforcement and Implied Preemption. .......................3

IV.     Plaintiff Lacks an Injury in Fact Under Article III, Statutory Standing for Failing to Plead an Injury Under the UCL/FAL, and Damages under the CLRA and the Rest of Her Claims Because (1) the Cosmetics She Purchased Worked, (2) She Fails to Allege Any Facts Showing the Products She Purchased Are Unsafe for the Eye, and (3) There Is No Actionable Defect. .................................................................7

V.      Plaintiff Pleads No Facts About Representations or Reliance and Instead Offers Legal Conclusions, Making Her Claims Fail Under Rules (8)(a) & 9(b). .........................13

VI.     Plaintiff's Fraud, UCL, FAL, and CLRA Claims Fail for Other Reasons. .........................14

        A.      Plaintiff Does Not Allege Any Representation, Let Alone a False or Misleading Representation on the Product Label or Otherwise. ..............................14

        B.      Plaintiff Fails to Plausibly Allege Reliance on or Exposure to Any Statements or Advertising Regarding the Products She Purchased. .......................14

        C.      Plaintiff Has Not Alleged Facts Demonstrating a *Further* Duty to Disclose..........16

        D.      Plaintiff's UCL "Unfairness" Claim Fails. .............................................19

VII.    Plaintiff's Two Implied-Warranty Claims Fail for Other Reasons. .....................................19

VIII.   There Is No Cause of Action for Unjust Enrichment Under California Law......................21

IX.     Plaintiff Lacks Standing and Cannot Bring Claims for Other Reasons. .............................22

        A.      Plaintiff Does Not Have Standing to Seek Injunctive Relief Because She Has Not Plausibly Alleged a Risk of Future Harm. ...............................................22

        B.      Plaintiff Only Has Standing to Sue for the Two Products She Purchased Because Those are the Products That Could Have Caused Her an Injury. ..............23

X.      Conclusion.................................................................................................25

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

Page

## Cases

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................................................................18

*Am. Suzuki Motor Corp. v. Sup. Ct.*,
37 Cal. App. 4th 1291 (1995)......................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................7

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......................................................................................21

*Ballard v. Bhang Corp.*,
2020 WL 6018939 (C.D. Cal. Sept. 25, 2020) ...........................................................14

*Bardin v. DaimlerChrysler Corp.*,
136 Cal. App. 4th 1255 (2006) ....................................................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................................................13

*Bezirganyan v. BMW of N. Am.*,
562 F. Supp. 3d 633 (C.D. Cal. 2021).........................................................................20

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009)......................................................................................9, 11

*Blissard v. FCA LLC*,
2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) ..............................................................19

*Blum v. Yaretsky*,
457 U.S. 991 (1982) .....................................................................................................24

*Borchenko v. L'Oreal*,
389 F. Supp. 3d 769 (C.D. Cal. 2019)............................................................................5

*Braverman v. BMW of N. Am.*,
2023 WL 2445684 (9th Cir. Mar. 10, 2023) ..........................................................10, 11

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017)..................................................................................12

*Cheng v. BMW N.A.*,
2013 WL 3940815 (C.D. Cal. July 26, 2013) .............................................................14

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Chong v. Kind LLC,*
   585 F. Supp. 3d 1215 (N.D. Cal. 2022) ................................................................6

*City of L.A. v. Lyons,*
   461 U.S. 95 (1982) ...........................................................................................22, 23

*Clemens v. DaimlerChrysler,*
   534 F.3d 1017 (9th Cir. 2008)............................................................................20

*Cohen v. DIRECTV, Inc.,*
   178 Cal. App. 4th 966 (2009)..............................................................................15

*Conservation Force v. Salazar,*
   646 F.3d 1240 (9th Cir. 2011) ............................................................................13

*Cooper v. Simpson Strong-Tie Co., Inc.,*
   460 F. Supp. 3d 894 (N.D. Cal. 2020) ..............................................................16

*Daniel v. Ford Motor Co.,*
   806 F.3d 1217 (9th Cir. 2015)............................................................................16

*Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956 (9th Cir. 2018)........................................................................22, 23

*Davidson v. Sprout Foods,*
   2022 WL 13801090 (N.D. Cal. Oct. 21, 2022)..............................................6, 22

*Davidson v. Sprout Foods Inc.,*
   No. 22-cv-01050-RS, 2022 U.S. ........................................................................23

*Davis v. Fed. Election Comm'n,*
   554 U.S. 724 (2008) ...........................................................................................24

*DeBons v. Globus Med., Inc.,*
   2014 WL 12495351 (C.D. Cal. Aug. 8, 2014) ....................................................7

*Engalla v. Permanente Group,*
   15 Cal. 4th 951 (1997)..........................................................................7, 14, 19

*Granfield v. Nvidia Corp.,*
   2012 WL 2847575 (N.D. Cal. July 11, 2012) ....................................................24

*Hadley v. Kellogg Sales Co.,*
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................19

*Hakopian v. Mukasey,*
   551 F.3d 843 (9th Cir. 2008)..............................................................................4

*Ham v. Hain Celestial Grp., Inc.,*
   70 F. Supp. 3d 1188 (N.D. Cal. 2014) ........................................................15, 23

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Hauck v. Advanced Micro Devices, Inc.*,
    2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) .......................................................................20

*Hawyuan Yu v. Dr Pepper Inc.*,
    2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) .......................................................................23

*Hodsdon v. Mars, Inc.*,
    162 F. Supp. 3d 1016 (N.D. Cal. 2016) ............................................................................16

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ......................................................................................16, 18

*Johnson v. Nissan N. Am., Inc.*,
    2022 WL 2869528 (N.D. Cal. July 21, 2022) ...................................................................12

*Kearns v. Ford Co.*,
    567 F.3d 1120 (9th Cir. 2009) .........................................................................................15

*Kwikset Corp. v. Sup. Ct.*,
    51 Cal. 4th 310 (2011) ................................................................................................7, 14

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
    44 Cal. App. 4th 194 (1996) ............................................................................................21

*Lassen v. Nissan*,
    211 F. Supp. 3d 1267. (C.D. Cal. 2016) ..............................................................10, 11, 12

*Lewis v. Casey*,
    518 U.S. 343 (1996) ...................................................................................................24, 25

*Lorentzen v. Kroger Co.*,
    532 F. Supp. 3d 901 (C.D. Cal. 2021) ........................................................................24, 25

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) ........................................................................................8, 9

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ...............................................................................20

*Moceck v. Alfa Leisure, Inc.*,
    114 Cal. App. 4th 402 (2003) ..........................................................................................19

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ..............................................................................................14

*Nationwide Biweekly Admin., Inc. v. Sup.Ct.*,
    9 Cal. 5th 279 (2020) .......................................................................................................21

*Nelson v. Pearson Ford*,
    186 Cal. App. 4th 983 (2010) ..........................................................................................14

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs.*,
  48 F.4th 1040 (9th Cir. 2022)........................................................................1, 5, 6

*Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs., Inc.*,
  2020 WL 6555052 (C.D. Cal. Oct. 29, 2020) ........................................................5

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................................15

*Pfizer Inc. v. Sup.Ct.*,
  182 Cal. App. 4th 622 (2010)............................................................................15

*Punian v. Gillette*,
  2015 WL 4967535 (N.D. Cal. August 20, 2015) ..................................................19

*Sciacca v. Apple*,
  362 F. Supp. 3d 787 (N.D. Cal. 2019) ................................................................19

*Sinatro v. Barilla Inc.*,
  2022 WL 10128276 (N.D. Cal. Oct. 17, 2022) .....................................................23

*Smith v. Allmax Nutrition, Inc.*,
  2015 WL 9434768 (E.D. Cal. Dec. 24, 2015)......................................................21

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ........................................................................................13

*Stewart v. Electrolux Prods*,
  304 F. Supp. 3d 894 (E.D. Cal. 2018).................................................................20

*Stewart v. Kodiak Cakes*,
  537 F. Supp. 3d 1103 (S.D. Cal. 2021)...............................................................23

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ..................................................................................7, 13

*Troup v. Toyota Motor Corp.*,
  545 F. App'x 668 (9th Cir. 2013)........................................................................20

*Whitson v. Bumbo*,
  2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) ......................................................10

*Williams v. Apple, Inc.*,
  449 F. Supp. 3d 892 (N.D. Cal. 2020) ................................................................15

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017)...........................................................................18

*Wilson v. HP Co.*,
  668 F.3d 1136 (9th Cir. 2012)...........................................................................18

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Winters v. Ridgewood,*
    2020 WL 3035217 (E.D. Cal. June 5, 2020) ................................................................12

*Zambrano v. CarMax LLC,*
    2014 WL 228435 (S.D. Cal. Jan. 21, 2014) ................................................................20

*In re Zappos.com, Inc.,*
    888 F.3d 1020 (9th Cir. 2018) ................................................................22

*In re ZF-TRW Airbag Litig.,*
    601 F. Supp. 3d 625 (C.D. Cal. 2022) ................................................................14, 16

**Statutes**

21 U.S.C. § 337 ................................................................6, 7

Cal. Bus. & Prof. Code § 17500 ................................................................16

Cal. Civ. Code § 1780 ................................................................7

Cal. Civ. Code § 1792 ................................................................21

Cal. Commercial Code § 2314 ................................................................20

Cal. Health & Safety Code § 110660 ................................................................5

Cal. Health & Safety Code § 110090 ................................................................1

Food, Drug, and Cosmetics Act ................................................................1

Cal. Song-Beverly Consumer Warranty Act ................................................................2, 4, 21

**Other Authorities**

21 C.F.R. § 4.2206 ................................................................4

21 C.F.R. § 70.5 ................................................................3

21 C.F.R. §§ 74.2052-74.2711 ................................................................1, 3, 8, 17

21 C.F.R. § 74.2205 ................................................................4

29 C.F.R. § 1910.1200 ................................................................17

Federal Rule of Civil Procedure 8 ................................................................14, 21

Federal Rule of Civil Procedure 9 ................................................................13, 14, 15

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

The Court granted ColourPop's prior motion to dismiss because Plaintiff Wilson's claims attempted to enforce the Food, Drug, and Cosmetics Act, and thus her claims were barred by implied preemption and the prohibition on private enforcement. Order, ECF No. 38. The Court's same logic applies to dismiss her Second Amended Complaint. ECF No. 41. Now on the third iteration of the complaint after ColourPop filed two prior motions to dismiss, plaintiff has decided to further scrub her complaint of all references to the FDCA and the FDA in an attempt to avoid dismissal. These deletions do not help her. The entire complaint is still attempting to enforce the FDCA regulations in violation of *Nexus*. She alleges the *same* "Harmful Ingredients" as the prior complaints. SAC ¶ 4. And these ingredients are those that the FDA has not yet approved for use in in eye makeup as plaintiff has admitted. FAC ¶¶ 2-3; 21 C.F.R. §§74.2052-74.2711. Likewise, plaintiff alleges the same "Defect" — that ColourPop's makeup uses these "Harmful Ingredients" that are not yet FDA approved. SAC ¶ 6. She also alleges violations of California's Sherman Law, which incorporates the FDCA in its entirety. Health & Safety Code § 110090; SAC ¶¶ 183-85. The gravamen of this case is  the same. Plaintiff is suing because (1) ColourPop uses ingredients in its makeup that are not yet FDA approved and (2) the use of these ingredients violates FDA regulations.

Besides preemption, all the claims still fail because there is nothing left of the case if plaintiff cannot rely on the FDA regulations. The following other issues to be decided (L.R. 7-4) can only be decided in ColourPop's favor:

1. Plaintiff lacks an injury-in-fact under Article III or an injury/damage needed to plausibly plead her claims. She fails to allege there is anything wrong with the makeup she purchased beyond the regulatory violation. She "used" her makeup for "years" without issue and again fails to identify any misrepresentation. This demonstrates she received the benefit of the bargain and did not overpay. She argues ColourPop should design *new* "safer" makeup products. But she cannot allege facts to show ColourPop misled her to believe *she* was purchasing one of these new "safer" products.

2. The fraud-based claims fail because plaintiff has not alleged any representation, she

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

has not alleged pre-purchase reliance on or exposure to any representation, and ColourPop owed no further duty to disclose beyond its instruction because there is no actionable defect.

3.      The implied-warranty claim fails because the product can be used as makeup, and plaintiff has not pled facts showing the product is unfit for ordinary use or is unmerchantable.

4.      The unjust-enrichment claim fails because it is not a claim under Cal. Law, and she cannot seek injunctive relief and can only bring claims regarding the products she purchased.

Stripping the conclusions from the complaint leaves almost nothing. Plaintiff's claims fail as a matter of law, and her failure to plead facts to support her conclusions requires dismissal.

## II.      SUMMARY OF RELEVANT FACTS — NO NEW SUBSTANTIVE FACTS

ColourPop sells generic makeup that can be used for any part of the body called a "Pressed Powder Palette." Plaintiff purchased two "Pressed Powder Palettes" that are called "Boudoir Noir" and "Menage a Muah." SAC ¶ 18. On the front label, these palettes state no representations. They just say the product name, "ColourPop," "Pressed Powder Palette," and the net weight. RJN Exs. 1- 2 (product pictures). The back labels show the names of the 12 different shades or pans each palette contains and the ingredient list. *Id.* On the back of the "Boudoir Noir" palette next to the shade name "Bedtime Story,*" there is an asterisk "*" and further below on this back panel is the instruction "*not intended for use in the immediate eye area." Ex. 1. Likewise, the back panel of the "Menage a Muah" palette lists three of the 12 shades with asterisks — "Big Tease*", "Confess*," and "No Drama*" — and further below is the same instruction "*not intended for use in the immediate eye area." Ex. 2. These instructions inform consumers that of the 12 shades included in the "Boudoir Noir" palette, one of the 12 includes an instruction that it is not intended for use in the immediate eye area. The other 11 can be used anywhere, including around the eye. Similarly, of the 12 shades included in the "Menage a Muah" palette, three of the shades designated with asterisks include an instruction that they are not intended for use in the immediate eye area. The other nine can be used anywhere, including around the eye. These instructions are the only place that "eye" is mentioned on the packages.

Plaintiff only takes issue with the shades bearing the instruction "*not intended for use in the immediate eye area." SAC ¶ 61; RJN Exs. 1-2. Her theory is that each of these asterisk shades

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

94520245.16                                                2
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

contain color additives that are prohibited by FDA regulations for cosmetics that are intended for use only in the eye area. FAC ¶ 3; SAC ¶ 183. There are four asterisk-bearing shades out of the twenty-four total shades in her two palettes.

Plaintiff alleges she bought the two palettes from Ulta Beauty and "used" this makeup. SAC ¶ 70. Besides that, she does not allege where on her body she "used" the makeup. She does not allege any problems with the makeup after her use. She does not allege physical injury, staining, or irritation. She does not allege the makeup did not work as makeup. Critically, she does not allege that *any* other consumers complained of physical injury, irritation, or any other issue. She does not allege what she read before she purchased. She does not allege if she saw the instruction on the back of the packages. She does not allege if she saw any advertising regarding the palettes she purchased. She does not allege that she saw any ColourPop advertising.

### III.   PLAINTIFF IS STILL ATTEMPTING TO ENFORCE THE FDCA, AND THUS HER CLAIMS ARE BARRED BY THE PROHIBITION ON PRIVATE ENFORCEMENT AND IMPLIED PREEMPTION.

Plaintiff's theory has always been that the products contain color additives that have not been "specifically" approved by the FDA for eye makeup. 21 C.F.R. § 70.5(a). She made this explicit in her first two complaints. Now that the Court dismissed the FAC, plaintiff has tried to hide her reliance on the FDA regulations by deleting references to the FDCA/FDA. But she alleges the exact same theories and facts that rely on the FDA regulations. The SAC — taken has a whole — shows she is attempting to enforce the FDCA.

Looking at how she defines "Harmful Ingredients" and the "Defect" shows why her claims are preempted. "Harmful Ingredients" is defined to include the same color additives as before. FAC ¶ 2; SAC ¶ 4. Plaintiff was deliberate in picking these FDA-regulated additives because they are the ones that have not yet been "specifically" approved by the FDA. The regulation 21 C.F.R. § 70.5(a) states that FDA regulations that approve the use of a color additive for cosmetics do not "authorize" the color additive for use in a cosmetic "intended for use in the area of the eye" unless that additive is "specifically" approved. All the color additives approved for cosmetics are deemed safe in general, but some are not yet "specifically" approved for cosmetics intended only for the eye area. 21 C.F.R. §§ 74.2052-74.2711.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

As an example, "Green No. 5 may be safely used for coloring cosmetics generally, including cosmetics intended for use *in the area of the eye* . . . ." 21 C.F.R. § 74.2205(b). Plaintiff does not take issue with Green No. 5 since the FDA approved it. On the other hand, Green No. 6 "may be *safely* used for coloring externally applied cosmetics . . . ." 21 C.F.R. § 4.2206(b). Plaintiff does take issue with Green No. 6. While Green 6 is considered "safe," it just has not yet been "specifically" approved for cosmetics intended only for the eye area (unlike Green 5). Plaintiff only takes issue with additives like Green 6 that have been deemed "safe" for general use but have not yet "specifically" approved for eye cosmetics. 21 C.F.R. §§ 74.2052-74.2711. In short, the "Harmful Ingredients" are "harmful" *because* they violate FDA regulations. The products are not "safe" because they are not approved by the FDA. Plaintiff relies on the FDA regulations because she cannot allege a single safety issue that she or anyone else had.

Plaintiff then defines the "Defect" to be ColourPop products that contain "Harmful Ingredients." SAC ¶ 6. The "Harmful Ingredients" are harmful *because* they violate FDA regulations, and the products are "defective" because they contain "Harmful Ingredients." Plaintiff thus admits that her theory still is that the products are defective because they violate FDA regulations. Plaintiff has previously alleged that "these Harmful Ingredients are designated by the Food and Drug Administration ('FDA') as 'unsuitable and unapproved for cosmetic use in the eye area,' and thus the Products are 'adulterated and misbranded' under the [FDCA]." Order at 2 (quoting FAC ¶¶ 2-3). Plaintiff has admitted that the gravamen of this case is about enforcing FDA regulations. *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions."). The fact that she deleted a few words does not change the fact that her case theory is that the ColourPop products are "defective" because they violate FDA regulations about what cosmetics can be marketed as eye makeup. She slightly changes her allegations, but they still show every claim rests upon an underlying FDCA violation.[1]

---

[1] Implied Warranty (Claim 1) & Song-Beverly (Claim 2): Plaintiff claims the "Makeup is not fit for its ordinary purpose—use in the eye area—*because* it contains the *Harmful Ingredients*." SAC ¶¶ 95, 112. Unjust Enrichment (Claim 3): She alleges ColourPop was "selling Defective ColourPop Eye Makeup," which is makeup colors with additives not approved by the FDA. ¶ 125. FAL (Claim 4): She claims ColourPop falsely advertised the makeup because it contains "Harmful (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    _Plaintiff's Reliance on the Sherman Law Shows She Is Trying to Enforce the FDCA._

2    Plaintiff attempts to circumvent implied preemption by alleging the products are "misbranded"

3    and "illegal to sell" in violation of the Sherman Law, Cal. Health & Safety Code § 110660, et seq.

4    SAC ¶¶ 183-85. But the Sherman Law incorporates the FDCA in its entirety. The Sherman Law

5    provides that "[a]ll color additive regulations and any amendments to the regulations adopted

6    pursuant to the federal act …are the color additive regulations of this state." Health & Safety Code

7    § 110090. If the FDA were to remove a regulation on which plaintiff relies, plaintiff's claims

8    would fail  because FDA's action would have the effect of also removing the requirement from the

9    Sherman Law. A violation of the Sherman law is by definition  a violation of the FDCA. Because

10   "the Sherman Law references and incorporates the FDCA," courts "cannot grant any relief to

11   [p]laintiff[s] without referring to and applying provisions of the FDCA." _Borchenko v. L'Oreal_,

12   389 F. Supp. 3d 769, 773 (C.D. Cal. 2019).

13       In _Nexus_, the district court considered the fact that "the FDCA and parallel state statutes"

14   like the Sherman Law regulate drugs identically. _Nexus Pharm., Inc. v. Cent. Admixture Pharm._

15   _Servs., Inc._, 2020 WL 6867069 (C.D. Cal. Nov. 18, 2020) (citing Sherman Law). The Ninth

16   Circuit affirmed dismissal despite the fact the plaintiff was seeking to enforce "California law."

17   The complaint in _Nexus_ also tried to circumvent the private-enforcement bar by a similar "series

18   of steps" by claiming "California [via the Sherman law] …prohibits the sale of drugs not approved

19   by the FDA" and that the defendant was violating California law by violating the FDA regulation.

20   _Nexus Pharm., Inc. v. Cent. Admixture Pharm._, 48 F.4th 1040, 1044 (9th Cir. 2022). The fact that

21   California law provided a means of enforcing FDA regulations via the Sherman Law did not

22   matter to the Ninth Circuit. There is no getting around the fact that finding a violation of the

23   Sherman Law requires a finding that the FDCA has been violated, and the FDCA can only be

24   

---

25   Ingredients," which are colors not approved by the FDA. ¶ 138. <u>CLRA (Claim 5)</u>: She claims
     ColourPop made "false representations and statements to consumers about ColourPop Eye

26   Makeup"; the only issue she raises is that some colors are not FDA approved. ¶ 158. <u>UCL (Claim
     6)</u>: She claims, "Defendant's conduct violates the Sherman Laws," which is tantamount to alleging

27   a violation of the FDCA. ¶183. <u>"Fraud" (Claim 7)</u>: She claims ColourPop induced consumers to

28   buy "defective products" because they include additives that are not FDA-approved. ¶ 199.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    enforced by the United States. Chief Judge Seeborg has twice dismissed similar California class

2    actions where the plaintiffs tried to enforce FDA regulations via the Sherman Law.[2] In short, by

3    seeking to enforce the Sherman Law, plaintiff is seeking to enforce the FDCA.

4           *Plaintiff's Failure to Allege Any Affirmative Representations Shows She Is Trying to*

5    *Enforce the FDCA.* As the Court explained, "Plaintiff has not alleged that the Products' labels

6    contain language or other affirmative representations making positive statements about the

7    Products—for example, that the Products are 'All Natural' or 'Pure.'" Order at 6. That is true

8    again. Plaintiff does not allege any representations on the package or on the website. Rather, this

9    case is about plaintiff trying to claim the products are "defective" because they contain additives

10   that have not yet been approved by the FDA. "Plaintiff may not use 'state unfair competition laws

11   as a vehicle to bring a private cause of action that is *based on* violations of the FDCA.'" Order at 8

12   (emphasis added). Because there are no representations, this case falls under the FDCA's

13   *"prohibition on private enforcement*: all proceedings to enforce or restrain violations of the FDCA

14   must be 'by and in the name of the United States.'…" *Nexus*, 48 F.4th at 1044. *Nexus* held that

15   "[p]roceedings to enforce or restrain violations of the FDCA… must be by and in the name of the

16   United States, not a private party. [Plaintiff's] claim is such a proceeding, so it is barred by the

17   exclusive enforcement statute," 21 U.S.C. § 337(a). *Id.* at 1049.

18          In short, plaintiff is attempting to enforce the FDCA under the guise of a state-law

19

20   ───────────────────

[2] In *Chong v. Kind LLC*, 585 F. Supp. 3d 1215, 1219-20 (N.D. Cal. 2022), the court found that the

21   claims were impliedly preempted because a violation of the Sherman Law requires a finding that

22   the FDCA has been violated, and the FDCA can be enforced only by the United States. The

     plaintiffs argued that they could pursue a misbranding claim because their claims were based on

23   state-law claims that "parallel the FDA regulations." *Id.* But Judge Seeborg rejected these

     arguments, explaining: "Although plaintiffs are correct that the FDCA does not preempt

24   preexisting state common-law duties that 'parallel federal requirements,' it does preempt state-law

     claims that ultimately are dependent on the existence of violations of federal law . . . Plaintiffs

25   here are not pursuing pre-existing, traditional, state tort law claims, rather they *rely on*

     *California's Sherman Law*, which post-dates and is *entirely dependent upon the FDCA*, in that it

26   expressly adopts the FDCA and regulations as state law. . . . As such, plaintiffs' claims based on

     the omission of [required labeling information per FDA regs] in some of [defendant's] product

27   labels are preempted." *Id.* (emphasis added); *Davidson v. Sprout Foods*, 2022 WL 13801090, at *4

28   (N.D. Cal. Oct. 21, 2022) (same).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  consumer-protection delivery device. She is still trying to create a *backdoor* to privately enforce

2  the FDCA despite the express preclusion of a private claim. Her color-additive claims could not

3  exist independently of FDA regulations (she would not have sued without the regs), and thus the

4  claims are impliedly preempted. If plaintiff's claims were permitted to go forward, "the doctrine of

5  implied preemption under 21 U.S.C. § 337(a) and *Buckman* would be almost entirely eliminated

6  and private citizens would in effect be permitted to enforce the FDCA's requirements." *DeBons v.*

7  *Globus Med., Inc.*, 2014 WL 12495351, at *4 (C.D. Cal. Aug. 8, 2014).

8  **IV.     PLAINTIFF LACKS AN INJURY IN FACT UNDER ARTICLE III, STATUTORY STANDING FOR
         FAILING TO PLEAD AN INJURY UNDER THE UCL/FAL, AND DAMAGES UNDER THE CLRA
9       AND THE REST OF HER CLAIMS BECAUSE (1) THE COSMETICS SHE PURCHASED
        WORKED, (2) SHE FAILS TO ALLEGE ANY FACTS SHOWING THE PRODUCTS SHE
10      PURCHASED ARE UNSAFE FOR THE EYE, AND (3) THERE IS NO ACTIONABLE DEFECT.**

11      "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory

12  violation may sue that private defendant over that violation in federal court." *TransUnion LLC v.*

13  *Ramirez*, 141 S. Ct. 2190, 2205 (2021). To have statutory standing to pursue claims under the

14  UCL and FAL, plaintiff must show that she "suffered injury in fact and has lost money or property

15  as a result of the unfair competition." *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 321 (2011)

16  (citing Cal. Bus. Prof. Code §§17204, 17535). Under the CLRA, only a consumer "who suffers

17  any *damage* as a result of the use or employment by any person of a method, act, or practice

18  declared to be unlawful" may bring an action. Cal. Civ. Code § 1780. Fraud requires "resulting

19  damage." *Engalla v. Permanente Group*, 15 Cal. 4th 951, 974 (1997). Plaintiff does not plead

20  injury in fact or damages to support any of her claims. She offers conclusions. SAC ¶ 76. Her

21  "labels and conclusions" and "naked assertions devoid of further factual enhancement" do not

22  suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

23      Plaintiff concedes the following: (1) She "used" the two products she purchased for

24  "years." SAC ¶¶ 18, 70. (2) *The products that she used did not cause her eye irritation, physical*

25  *injury, or any other physical symptoms*. (3) She cannot identify any complaints about a negative

26  physical reaction with the products. (4) There is no performance defect with the products; they can

27  be physically applied in the area of the eye and used as eye makeup (she does not allege

28  otherwise). (5) All the ingredients in the four shades at issue, out of 24 may be "*safely* used for

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

94520245.16                                    7
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1   coloring externally applied cosmetics." 21 C.F.R. §§74.2052-74.2711.

2         Plaintiff *only* offers conclusions on why she now cannot use the product in the eye area. If

3   the Court concludes she is not relying on the FDA regulations (she is), then even assuming

4   ColourPop sold the products as "eye makeup" she has not alleged any other statute/theory that

5   shows ColourPop did anything illegal. There are no facts alleged showing that the product caused

6   any negative reaction to anyone. The FDA has  not made a scientific determination that the

7   additives that are not "specifically" approved for the eyes are likely to cause injuries. In short,

8   beyond the issue of whether the ingredients have been approved by the FDA, *plaintiff cannot*

9   *allege a single substantive fact showing the products are unsafe*. Plaintiff cites safety data sheets

10  for single additives that are prepared for workers who handle raw color additives. SAC ¶¶ 39-58.

11  She has not alleged any fact showing a safety issue for the multi-ingredient makeup products that

12  she purchased. *See* Sec. VI.C., below.

13        <u>Plaintiff Has Not Alleged an Economic Injury Because the ColourPop Makeup She</u>

14  <u>Purchased Worked</u>. Plaintiff attempts to allege an economic injury under a Benefit-of-the-Bargain

15  Theory (¶ 77) and an Overpayment Theory (¶ 83). The Ninth Circuit rejected these same theories

16  and affirmed dismissal in a similar case concerning a food product a consumer claimed was illegal

17  to sell and unsafe. In *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 703 (9th Cir. 2020), the plaintiff

18  alleged that the maker of Pop Secret popcorn violated consumer-and-warranty laws because the

19  popcorn contained partially hydrogenated oils (PHOs) known as artificial trans-fat and alleged this

20  is an unsafe food additive. The plaintiff alleged that because of FDA regulations, the

21  manufacture's inclusion of PHOs in Pop Secret was unlawful under federal and California law. *Id.*

22  Plaintiff alleged that the "amount of trans fat she consumed in Pop Secret caused her economic

23  injury because she believed she was purchasing a safe product when she was not." *Id.* at 704.

24        The court found that plaintiff had not alleged an economic injury to support standing under

25  a *<u>Benefit-of-the-Bargain Theory</u>*. "[A] plaintiff might successfully plead an economic injury by

26  alleging that she bargained for a product worth a given value but received a product worth less

27  than that value." *Id.* at 705-06. *McGee* explained that "[a] plaintiff… must do more than allege

28  that she did not receive the benefit she *thought* she was obtaining. The plaintiff must show that she

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  did not receive a benefit for which she actually *bargained*." *Id.* at 706. In *Birdsong v. Apple, Inc.*,

2  590 F.3d 955 (9th Cir. 2009), for example, the plaintiffs claimed "that the iPod's inherent risk of

3  hearing loss . . . deprived them of the full benefit of their bargain because they cannot 'safely'

4  listen to music." *Id.* at 961. The court disagreed, holding that plaintiffs' benefit-of-the-bargain

5  theory failed because:

> They have not alleged that they were deprived of an agreed-upon benefit in purchasing their iPods. The plaintiffs do not allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time. In fact, the plaintiffs admit that Apple provided a warning against listening to music at loud volumes. The plaintiffs' alleged injury in fact is premised on the loss of a 'safety' benefit that was not part of the bargain to begin with. [*Id.*]

*McGee* likewise rejected plaintiff's theory because she did not contend that the manufacturer "made any representations about Pop Secret's safety":

> Although she may have assumed that Pop Secret contained only safe and healthy ingredients, her assumptions were not included in the bargain, particularly given the labeling disclosure that the product contained artificial trans-fat. Thus, even if those expectations were not met, she has not alleged that she was denied the benefit of her bargain. Absent some allegation that [the manufacture] made false representations about Pop Secret's safety, [plaintiff's] benefit of the bargain theory falls short." [*McGee*, 982 F.3d at 706.]

So too here. Wilson does not identify any representation ColourPop made about the makeup's safety. She alleges safety assumptions, but these assumptions were not part of the bargain. In both cases, the ingredient list disclosed what was in the product (and here there is an instruction that the shades at issue were not intended for the eye).

*Overpayment Theory*. "[A] plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *Id*. *McGee* rejected this theory because the plaintiff did not allege "she paid more for a product due to [manufacturer's] deceptive conduct" or that the manufacturer made "false representations" about the popcorn. *Id*. at 707. The plaintiff was thus missing "a key element" — "misrepresentations about a product." *Id*. The court noted that "Pop Secret's nutritional label disclosed the presence of artificial trans-fat" *Id*. The same logic applies

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

1   here. Wilson failed to allege any false representations ColourPop made about its makeup.[3]

2   _Plaintiff Cannot Establish an Actionable Defect in This Consumer Fraud Case. While_

3   _Plaintiff Suggests Possible Changes to make the Product "Safer," ColourPop Disclosed All the_

4   _Color Additives and Never Gave Plaintiff an Expectation That the Product Would Not Include the_

5   _Additives She Takes Issue with_. This is not a case where the plaintiff is alleging "false advertising

6   claims that relied on affirmative representations about a product." Order at 6. Instead, plaintiff is

7   trying to argue that the makeup should have been designed to be "safer," and that ColourPop

8   should have created a different product with a different formula. SAC ¶ 79 (requesting that the

9   products be "reformulated to remove the Harmful Ingredients"). This is a "design defect"

10  products-liability theory, which can only be made by consumers that are physically injured. Courts

11  have rejected attempts like this to import products-liability standards into consumer-fraud actions

12  that are seeking only economic damages. The defectiveness of a product cannot be proven "by the

13  retrospective standards of products liability law" in the consumer-fraud context. _Lassen v. Nissan_,

14  211 F. Supp. 3d 1267, 1287-88. (C.D. Cal. 2016).

15      As explained in a recent Ninth Circuit decision, "because consumer protection laws are

16  concerned with the bargaining process rather than product design, the mere existence of a design

17  defect that might be actionable under tort law—were there a non-economic injury—is not

18  sufficient to establish consumer protection liability. Several courts have recognized the problem

19  with extending tort-law principles to consumer protection actions seeking only economic

20  damages." _Braverman v. BMW of N. Am._, 2023 WL 2445684 (9th Cir. Mar. 10, 2023) (Bennett,

21  C.J., concurring). There is difference between tort law's purpose of optimizing product safety with

22  consumer law's aim of ensuring fair bargaining:

23          [T]he design defect standards developed in the products liability context do not
24          readily map to the consumer fraud context. Whether a product is defectively
            designed and therefore triggers a duty to disclose for purposes of consumer fraud
25          actions cannot be coextensive with the retrospective, open-ended design defect tests

26  _____
    [3] _See also Whitson v. Bumbo_, 2009 WL 1515597, at *2-6 (N.D. Cal. Apr. 16, 2009) (no standing
27  where the plaintiff alleged that a child safety seat was defective because of the propensity of
    children to fall from it but where there were no allegations that any child fell from the seat or that
28  she saw any representations suggesting the seat was safe for use under the alleged circumstances).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

of products liability law. This is apparent when the *product in issue functions as designed*. While the policy objectives underlying products liability law allow for a properly functioning product to be deemed defectively designed in retrospect and regardless of the seller's knowledge, the policies animating consumer fraud law do not. [*Lassen* at 1288 (emphasis added).]

The Ninth Circuit in *Birdsong* implicitly adopted this reasoning when it affirmed dismissal of a complaint seeking economic damages. *Birdsong* found no "cognizable defect" under consumer laws where, as here, plaintiffs "merely suggest[ed] possible changes to the [product] which they believe would make the product safer." 590 F.3d at 959-62. Of course, "[c]onsumer protection laws can reach certain types of design defect claims. …But the goal of *consumer protection law* is not to optimize product safety, and not to force manufacturers to sell only the safest possible product, no matter the cost. Instead, it is to incentivize merchants to bargain in good faith, and to hold merchants accountable for their representations." *Braverman*, 2023 WL 2445684 (concurrence).

*Braverman* affirmed dismissal of consumer-fraud claims against a car manufacturer where the claim was the vehicle could have been designed to be safer and only economic damages were alleged like here. 2023 WL 2445684. Judge Bennett explained that

> even if plaintiffs can establish the existence of a design defect through use of the consumer-expectations or risk-benefit tests, such a defect is not cognizable under the state consumer protection laws plaintiffs invoke. ... Absent fraud or deception, plaintiffs received exactly what they bargained for, even if BMW could have marketed a more expensive product without the claimed flaw. See Restatement (Third) of Torts: Products Liability § 2 cmt. a (Am. Law Inst. 2022) ("Society does not benefit from products that are excessively safe. ... Society benefits most when the right, or optimal, amount of product safety is achieved."). [*Id.*]

Likewise, in *Lassen*, plaintiffs purchased vehicles equipped with keyless fob ignition systems that lacked an auto-off feature. 211 F. Supp. 3d at 1271. Plaintiffs asserted the lack of an auto-off feature constituted a design defect that defendant had a duty to disclose. *Id.* The court found that plaintiff "failed to plead a design defect that is actionable in the consumer fraud context" because "Plaintiffs did not purchase their vehicles based on any expectation that they included additional safety features." *Id.* at 1283-84. Instead, plaintiff *"merely suggest[ed] possible changes . . . which they believe[d] would make the product safer." Id.* at 1283 (quoting *Birdsong,*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   590 F.3d at 959).

2       As a last example, in *Winters v. Ridgewood*, 2020 WL 3035217 (E.D. Cal. June 5, 2020),

3   the plaintiff claimed that a piece of furniture had "defective" drawers because they posed a "severe

4   tip-over and entrapment" risk. The court ruled that "because the allegations do not establish facts

5   that support plaintiff's expectations of a heightened level of safety, the allegations fail to establish

6   that the drawer malfunctioned or otherwise failed to do anything it was designed to do…..[T]he

7   allegations here do not establish that plaintiff purchased the drawers based on any expectation that

8   they included additional or better wall attachment hardware or instructions. Plaintiff's allegations

9   instead suggest improvements to defendant's current safety measures and therefore do not

10  sufficiently plead injury-in-fact…. [T]his case amounts to an attempt to recast a no-injury products

11  liability action as a consumer fraud claim and does not allege an injury-in-fact." *Id.*; *Cahen v.*

12  *Toyota Motor Corp.*, 717 F. App'x 720 (9th Cir. 2017) (future risk of harm was too speculative

13  where plaintiffs' alleged injury was that their cars were at risk of hacking, but no hacking of any

14  vehicles had occurred outside of experiments).

15      These cases support dismissal. Wilson does not allege any facts showing that ColourPop

16  advertised the makeup as "safe." Her allegations do not establish that she purchased the makeup

17  based on any expectation that it did not include the additives at issue. For example, ColourPop did

18  not advertise that the product did not contain Green No. 6 when it did. ColourPop disclosed all the

19  ingredients and instructed that shades with these additives were not intended for the eyes.

20  Plaintiff's allegations suggest improvements to ColourPop's makeup; plaintiff wants ColourPop to

21  make *new* "safer" makeup products. SAC ¶ 79. Plaintiff does not allege any facts to show

22  ColourPop misled her to believe *she* was purchasing one of these "safer" products.

23      In short, a manufacturer has no duty to disclose that a product could theoretically be

24  redesigned to be safer.[4] That is all plaintiff's claims amount to. Plaintiff's economic-damages

25  _____

26  [4] *See Lassen*, 211 F. Supp. 3d at 1288 ("[T]he retrospective design defect standards developed in
    the products liability context, in which a seller's knowledge of the defect is not relevant to
    establishing liability, cannot also establish a "known defect" for consumer fraud claims"); *Johnson*

27  *v. Nissan N. Am., Inc.*, 2022 WL 2869528 (N.D. Cal. July 21, 2022) ("[A] 'defect' is relevant to
    the consumer protection claims only to the extent that it shows it is something that [the product

28  (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   claims are not cognizable under the consumer- and-warranty laws cited in the SAC.

2   <u>Plaintiff Attempts to Allege a Technical Statutory Violation But She Cannot Allege a</u>

3   <u>Concrete Injury Because the Product Worked</u>. Article III standing requires a concrete injury even

4   in the context of a statutory violation. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016). "Article

5   III grants federal courts the power to redress harms that defendants cause plaintiffs, not a

6   freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 141 S. Ct.

7   at 2205. This case is analogous to *Transunion* where the plaintiffs showed a federal statutory

8   violation, but the violation did not amount to "concrete harm." *Id.* at 2210 (2021). Like the

9   *Transunion* class members who only could show a statutory violation but not "concrete harm,"

10  plaintiff has alleged a technical regulatory violation but cannot allege a concrete harm because of

11  that violation. She has not alleged ColourPop's products caused her physical injury or that they do

12  not work. Without *facts* showing a misrepresentation, plaintiff lacks an injury in fact and fails to

13  state a "facially plausible claim to relief." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242

14  (9th Cir. 2011).

15  **V.    PLAINTIFF PLEADS NO FACTS ABOUT REPRESENTATIONS OR RELIANCE AND INSTEAD
           OFFERS LEGAL CONCLUSIONS, MAKING HER CLAIMS FAIL UNDER RULES (8)(A) & 9(B).**

16

17  Plaintiff fails to plead "enough facts to state a claim to relief that is plausible." *Bell Atl.*

18  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). She fails to plead her fraud claims with particularity

19  as required by Rule 9(b). Her complaint consists primarily of "labels and conclusions, and a

20  formulaic recitation of the elements" that should be disregarded. *Id.* at 555. Plaintiff claims she

21  "believed that Plaintiff's Purchased Products were safe for their intended use, namely for use

22  around the eye area." SAC ¶ 71. She alleges conclusions like that she paid more than she should

23  have because the products contain "Harmful Ingredients" and are "worthless." ¶ 7. She does not

24  allege plausible facts showing the products she purchased and "used" for "years" are not safe. ¶¶

25  18, 70. She does not allege she read product labels or saw any advertising. ¶¶ 70-78. This makes

26  her conclusions of reliance implausible. ¶ 72. She does not allege how any of the ingredients in the

27  ─────────────────

28  manufacturer] was obligated to disclose or misrepresented.").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   two products she purchased harmed her. *She cannot allege there is anything wrong with the*

2   *products she used.*[5] She mentions products she did not purchase. ¶ 28. At the motion-to-dismiss

3   stage, only the named plaintiff's claims are relevant. *Cheng v. BMW N.A.*, 2013 WL 3940815, at

4   *4 (C.D. Cal. July 26, 2013) ("[C]ourts generally consider only claims of named plaintiffs in

5   ruling on [a] motion to dismiss . . . prior to class certification.").

6   **VI.   PLAINTIFF'S FRAUD, UCL, FAL, AND CLRA CLAIMS FAIL FOR OTHER REASONS.**

7   **A.   Plaintiff Does Not Allege Any Representation, Let Alone a False or Misleading
         Representation on the Product Label or Otherwise.**

8

9   Plaintiff has not alleged a required element of her fraud claim — a "false representation."

10  *Engalla*, 15 Cal. 4th at 974. And "claims based on deceptive or misleading marketing must

    demonstrate that a 'reasonable consumer' is likely to be misled by the representation."

11  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021). She has not alleged facts showing

12  ColourPop made an actionable "false representation" or any representation. SAC ¶¶ 72, 77-78,

13  137, 147, 157 (claiming "representations" but not naming a single example). She has not identified

14  any deceptive advertising or packaging statement regarding the two products she purchased.

15  Plaintiff does not allege where she first saw the palettes she purchased. ColourPop did represent

16  the product as being a generic "pressed powder" makeup. The product name is accurate (she does

17  not allege she did not receive a "pressed powder" makeup product). She cannot point to any

18  promise ColourPop made regarding the products she purchased. Her failure to allege a false or

19  misleading statement made pre-suit disposes of these claims. Plaintiff's *ipse dixit* and conclusions

20  do not cut it under Rule 9(b).

21  **B.   Plaintiff Fails to Plausibly Allege Reliance on or Exposure to Any Statements
         or Advertising Regarding the Products She Purchased.**

22

23  Plaintiff failed to plead "actual reliance" on any representation or omission.[6] She does not

24  _____

25  [5] *Ballard v. Bhang Corp.*, 2020 WL 6018939, at *7 (C.D. Cal. Sept. 25, 2020) (dismissing, per
    Rules 8, 9(b), claims based on the theory that chocolates contained a smaller quantity of CBD than

26  advertised because plaintiff failed to allege "which chocolates he bought, when he bought them,
    how they were advertised, and how they fell short…").

27  [6] *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 326 (2011); *Nelson v. Pearson Ford*, 186 Cal. App.

28  4th 983, 1022 (2010) ("Under the CLRA, plaintiffs must show actual reliance on the
    (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  identify a single representation that she saw or relied on *prior to* her purchase. The complaint

2  includes a "webpage" that plaintiff does not claim she relied on featuring a product she did not

3  purchase. SAC ¶¶ 28-30. Of course, "[a] party does not have standing to challenge statements or

4  advertisements that she never saw." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1197

5  (N.D. Cal. 2014). "To make the reliance showing, . . . plaintiffs in misrepresentation cases must

6  allege that they actually read the challenged representations." *Perkins v. LinkedIn Corp.*, 53 F.

7  Supp. 3d 1190, 1220 (N.D. Cal. 2014).[7] "Additionally, to adequately plead reliance for alleged

8  misrepresentations, Plaintiffs must satisfy Rule 9(b)'s heightened pleading standard and allege

9  facts with particularity." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 913 (N.D. Cal. 2020).

10  Plaintiff needed to allege specific examples of advertising she saw and what was

11  misleading about them. *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 823-24 (N.D. Cal. 2017).

12  (finding "Plaintiffs only generically refer[ing] to 'advertisements' or 'advertising'" as not

13  particular). She has not identified any advertising or packaging statement regarding the two

14  products she purchased, let alone a promise that the product is "safe." Rule 9(b) requires more.

15  *Kearns v. Ford Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009) (affirming dismissal where plaintiff

16  did not plead with particularity the content of the advertising or sales materials, he claimed was

17  misleading, when he saw it, or which he relied on when purchasing).

18  Plaintiff has also not alleged reliance on an "omission." ColourPop disclosed that there is

19  an instruction next to each shade at issue that says "*not intended for use in the immediate eye

20  area." She does not allege she read this instruction and read the labels of the products she

21

22  _____

misrepresentation and harm." *In re ZF-TRW Airbag Litig.*, 601 F. Supp. 3d 625, 765 (C.D. Cal.

23  2022) ("To establish standing to bring claims under the UCL, FAL or CLRA, Plaintiffs also must

establish actual reliance. Actual reliance is a required element of standing whether the claims are

24  premised on a fraudulent misrepresentation or omission theory.").

25  [7] *See also Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 980 (2009) ("we do not understand the

UCL to authorize an award for injunctive relief and/or restitution on behalf of a consumer who

26  was *never exposed* in any way to an allegedly wrongful business practice."); *Pfizer Inc. v. Sup.Ct.*,

182 Cal. App. 4th 622, 631 (2010) ("one who was *not exposed* to the alleged misrepresentations

27  and therefore could not possibly have lost money or property as a result of the unfair competition

is not entitled to restitution.").

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

purchased. Plaintiff thus cannot plead the "first sub-element [of reliance on an omission] -- that [she] *would have been aware of a disclosure*" of the omitted information had it been disclosed. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015); *see also Cooper v. Simpson Strong-Tie Co., Inc.*, 460 F. Supp. 3d 894, 910 (N.D. Cal. 2020) ("[A] plaintiff alleging fraud must still be able to show she would have been aware of the information had it been disclosed."). Plaintiff does not allege she was aware of the current instruction on the product label. She thus fails to allege sufficient facts showing she would have been aware of a *further* disclosure had one been made. *In re ZF-TRW*, 601 F. Supp. 3d at 767 (dismissing claims because "Plaintiffs have not alleged that they actually read Defendants' alleged misrepresentations, nor have they made sufficient allegations that they would have been aware of a disclosure of the Alleged Defect had one been made").

### C.    Plaintiff Has Not Alleged Facts Demonstrating a *Further* Duty to Disclose.

ColourPop Bore No Further Duty to Disclose Due to the Lack of a Physical Product Defect Relating to the Central Function of the Makeup and No Safety Defect. Omissions are only actionable if they are "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). The duty to disclose is limited.[8] To establish a duty to disclose, plaintiffs must allege that the undisclosed information (1) "caused an *unreasonable* safety hazard" or (2) that the omission is a physical product defect that was "central to the product's function." *Id.* She has not alleged these elements.

Plaintiff Fails to Plausibly Allege an "*Unreasonable* Safety Hazard" with Respect to the

---

[8] Plaintiff alleges "omissions" in her FAL claim. SAC ¶ 139. But the FAL does not apply to omissions. The FAL states that "[i]t is unlawful for any ... corporation ... with intent directly or indirectly to dispose of real or personal property... to make or disseminate ... any *statement* ... which is known, or by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The plain language of the statute — which prohibits making false "*statement[s]*" — does not encompass omissions. "[M]any courts have [thus] held a plaintiff who asserts that a business omitted a material fact in its advertisements, labels, or literature has not stated a claim under the FAL." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016). This same logic applies to dismiss the FAL omission claim.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

94520245.16                                    16

COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Products She Purchased. Plaintiff theory — that a few color additives in the generic palettes she purchased are not FDA "approved" for only-eye applications — does not suggest she faced an unreasonable hazard. She does not allege anyone experienced a safety hazard. She does not cite a single customer complaint. The lack of any safety issue ever happening with the product she purchased is dispositive. She ignores the fact that the packaging for the palettes instructs customers that certain shades are "not intended for use in the immediate eye area." RJN Exs. 1-2. She admits there is no safety issue for using the products outside the eye, and that the only purported issue is when the product is not used according to the instruction. All the color additives that plaintiff lists as being "harmful" (SAC ¶ 4) have been deemed "safe" for general cosmetics use. 21 C.F.R.§§74.2052-74.2711. The FDA has made no scientific determination that these additives present an "unreasonable safety hazard." The EU, known for stricter regulations, allows these pigments around the eye. RJN Ex. 3.

Realizing the weakness in her "safety" allegations, plaintiff cites "Safety Data Sheets" that employers must display at workplaces for employees that work with these chemicals. 29 C.F.R. §1910.1200(g); SAC ¶¶ 40-58. These data sheets do not help her. The purpose of safety data sheets is to ensure "information concerning the classified hazards is transmitted to employers and employees." 29 C.F.R. § 1910.1200(a)(1). These data sheets provide instructions for *workers* who are using *one* of these ingredients. They do not say anything about the safety of the *multi-ingredient* cosmetics at issue. *Critically, she does not allege what "harmful" additives were in the products she purchased*. Just looking at the first four shows there are no issues. The data sheets plaintiff cites for Red 7, 27 and 28 state "*THIS PRODUCT IS NOT HAZARDOUS* AS DEFINED BY HAZARDOUS COMMUNICATION STANDARD. HOWEVER, AS WITH ALL CHEMICAL; HANDLE WITH CARE AVOID EYE & SKIN CONTACT…" SAC ¶¶ 40 n.17, 41 n.20, 42 n.24. These data sheets admit that these chemicals are "not hazardous" and that workers should avoid contact with the eyes and skin like "all chemicals[s]." The SDS Yellow 6 she cites says "*Potential* Acute Health Effects: Hazardous in case of eye contact (irritant), of ingestion." ¶ 43 n.27. Oral ingestion is not a concern for an externally-applied cosmetic. All this SDS is saying is that if pure Yellow 6 gets in the eye it "potentially" could be an irritant. Anything that gets into

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

a person's eye can cause irritation. That is all plaintiff has alleged — that these additives standing alone potentially "can" cause eye irritation. ¶ 39. Plaintiff does not allege that the makeup ever made it into her eyes and caused irritation.

Her allegations — about makeup that could possibly irritate the eye if it accidently gets into the eye — amount to "conjectural and hypothetical" injuries that fail to establish "an *unreasonable* safety risk." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1029 (9th Cir. 2017) ("[A] party's allegations of an unreasonable safety hazard must describe more than merely conjectural and hypothetical injuries."); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 568 (N.D. Cal. 2019) ("[T]he case law suggests that an event only rises to the level of an unreasonable safety hazard in dangerous situations analogous to engine disintegration or failure or engine fire, a faulty speedometer easily leading to traveling at unsafe speeds and moving-violation penalties, or moisture on the wiring causing overheating and leading to a fire"). Like *Williams*, the SAC "lacks any allegations indicating that any customer, much less any plaintiff, experienced such [irritation]—a notable omission." *Williams*, 851 F.3d at 1028. This lack of examples shows the "safety risk is speculative and unsupported by factual allegations." *Id.*

No Physical Defect that Effects the Makeup's Central Function. A manufacturer also only has a duty to disclose alleged product defects that relate to the "central functionality" of the product. *Hodsdon*, 891 F.3d at 863. Central-functionality defects stop the product from being usable, such as defects that cause a broken laptop screen or a defect that causes data corruption on a hard drive. *Id*. Plaintiff has not alleged any physical defect or any issue relating to performance. She cannot because she "used" the product for "years." SAC ¶¶ 18, 70. Her own experience shows the makeup is functional. *Ahern*, 411 F. Supp. 3d at 568 (dismissing because plaintiff alleges no facts that demonstrate that the "Defect" impairs the computers' central function). Because there was no performance issue with the cosmetics, there is no physical defect and no duty to disclose further information.

Plaintiff Does Not Allege ColourPop's Knowledge of a Defect. To state a claim for failing to disclose a defect, a party must allege "that the manufacturer knew of the defect at the time a sale was made." *Williams*, 851 F.3d at 1025-26 (affirming dismissal of claims brought under the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   CLRA and UCL based on lack of knowledge); *Wilson v. HP Co.*, 668 F.3d 1136, 1145 n.5 (9th

2   Cir. 2012) ("the failure to disclose a fact that a manufacturer does not have a duty to disclose, i.e.,

3   a defect of which it is not aware, does not constitute an unfair or fraudulent practice"); *Engalla*, 15

4   Cal. 4th at 974 (fraud requires proving "knowledge of falsity or scienter"). Plaintiff has not alleged

5   a single consumer complaint, online post, or FDA investigation that pre-dates her purchases.

6   Instead, she offers conclusions. SAC ¶ 199. Courts dismiss based on a similar lack of facts

7   showing knowledge.[9]

8       **D.   Plaintiff's UCL "Unfairness" Claim Fails.**

9       Plaintiff alleges no facts about what is unfair about a product she "used" that works.

10  Because the other parts of the UCL claim overlap entirely with her "unfairness" claim (SAC ¶

11  187), the UCL unfairness claim falls with them. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d

12  1074, 1104-05 (N.D. Cal. 2017). ColourPop's purported failure to disclose information it had no

13  duty to disclose is not substantially injurious, immoral, or unethical. *Bardin v. DaimlerChrysler

14  Corp.*, 136 Cal. App. 4th 1255, 1263 (2006) (holding that the use of less expensive parts did not

15  violate public policy because the defendant made no representation about the composition of the

16  parts and the plaintiffs did not allege a safety concern or a violation of the warranty); *Hodsdon*,

17  891 F.3d at 867 (dismissing unfairness claim).

18  **VII.   PLAINTIFF'S TWO IMPLIED-WARRANTY CLAIMS FAIL FOR OTHER REASONS.**

19      <u>Plaintiff Does Not Allege Facts Showing the Product Is Unmerchantable and Unfit for</u>

20  <u>Ordinary Use</u>. The implied warranty of merchantability requires goods to be "fit for the ordinary

21

22  _____
    [9] *E.g.*, *Punian v. Gillette*, 2015 WL 4967535, at *9 (N.D. Cal. August 20, 2015) (dismissing

23  CLRA, UCL, and FAL claims because the plaintiff failed to sufficiently allege that the defendants
    had knowledge of the defect at the time the defendant made its advertising statements or at the

24  time of sale); *Sciacca v. Apple*, 362 F. Supp. 3d 787, 800 (N.D. Cal. 2019) (finding that plaintiff's
    allegations do not show Apple's knowledge of the alleged defect because plaintiff "fails to explain

25  how Apple's alleged knowledge of the alleged defect in the First Generation Watches relates to
    knowledge of the alleged defect in the Series 1, 2, and 3 Watches."); *Blissard v. FCA LLC*, 2018

26  WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) (allegations of exclusive knowledge insufficient
    where the plaintiffs made speculative allegations about Defendant's testing and records and relied

27  on consumer complaints on third-party websites or to NHTSA but the plaintiffs "concede that they
    have not identified any complaint that predates [one named plaintiff's] purchase.").

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

94520245.16                    19
COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1   purposes for which such goods are used" and is breached only if the goods "[do] not possess even

2   the most basic degree of fitness." *Moceck v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003);

3   Cal. Com. Code § 2314(2)(c). The implied warranty does not "impose a general requirement that

4   goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of

5   quality." *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291, 1296, (1995). Courts require

6   more than conclusions to plead an implied-warranty breach. A breach occurs where a defect

7   "drastically undermine[s] the ordinary operation" of the consumer good. *Troup v. Toyota Motor*

8   *Corp.,* 545 F. App'x 668, 669 (9th Cir. 2013) (a defect that required a vehicle to "refuel more

9   often" was fit for its intended purpose since the "the alleged defect did not compromise the

10  vehicle's safety, render it inoperable, or drastically reduce its mileage range").

11          Plaintiff alleges no facts to show the products she purchased were unmerchantable nor

12  unfit for use as makeup. She admits she kept using the products for years without issue. SAC ¶¶

13  18, 70. An implied warranty does not promise a perfect, or even problem-free product; it only

14  assures the buyer that the product will "at least function for its intended purpose." *Zambrano v.*

15  *CarMax LLC*, 2014 WL 228435, at *7 (S.D. Cal. Jan. 21, 2014). The products pass this test

16  because plaintiff used the products as "pressed powder" makeup. Courts in this district regularly

17  dismiss implied-warranty claims for failing to plausibly allege unmerchantability.[10]

18          <u>The UCC Implied-Warranty Claim Fails for Lack of Privity</u>. Under Cal. Commercial Code

19  § 2314, a plaintiff asserting a claim for breach of warranty must stand in vertical contractual

20  privity with the defendant as "adjoining links in the distribution chain." *Clemens v.*

21  *DaimlerChrysler*, 534 F.3d 1017, 1023 (9th Cir. 2008). There is no third-party beneficiary

22

---

23  [10] *Hauck v. Advanced Micro Devices, Inc*., 2019 WL 1493356, at *17 (N.D. Cal. Apr. 4, 2019)
    (plaintiffs alleged only that their computers ran "more slowly" and could not attain "advertised

24  specifications"; even if the alleged defect caused the processors to run more slowly, such a defect
    did not "drastically undermine" the processors' ordinary operation, and thus did not render them

25  unmerchantable); *Minkler v. Apple, Inc.,* 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014)
    (rejecting implied-warranty claim because the plaintiff had not alleged "that Apple Maps failed to

26  work at all or even that it failed to work a majority of the time," such that there was no
    "fundamental defect" with her smartphone); *Bezirganyan v. BMW of N. Am*., 562 F. Supp. 3d 633,

27  642 (C.D. Cal. 2021) (dismissing implied-warranty claim because "Plaintiff does not plausibly
    plead that squeal of this sort causes a safety hazard").

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  exception as *Clemens* recognized, and the law has not changed. *Stewart v. Electrolux Prods*, 304

2  F. Supp. 3d 894, 915 (E.D. Cal. 2018) ("*Clemens* forecloses a third-party-beneficiary exception to

3  the rule of privity").

4     <u>The Song-Beverly Act Does Not Apply to Goods Sold Outside of California.</u> The Act

5  states that the implied warranty applies only to "consumer goods that are sold at retail *in this*

6  *state*…" Cal. Civ. Code § 1792 (emphasis added). The plain text of this statute forecloses a claim

7  if the goods are purchased at retail in *another state* like at an out-of-state Ulta Beauty. This

8  disposes of any putative class member's Song-Beverly claim who purchased at retail outside of

9  California. Plaintiff does not allege the Ulta Beauty store she purchased ColourPop products from.

10  SAC ¶ 70. Because she does not allege that she purchased "at retail" in California, she has not

11  alleged a claim.

12  **VIII.   THERE IS NO CAUSE OF ACTION FOR UNJUST ENRICHMENT UNDER CALIFORNIA LAW.**

13     There is no standalone claim for "Unjust Enrichment or Restitution." SAC ¶¶ 122-133.

14  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("In California, there is not

15  a standalone cause of action for "unjust enrichment," which is synonymous with "restitution.").

16  Restitution is only a remedy, not a cause of action, and thus this claim fails for this reason alone.

17  *Nationwide Biweekly Admin., Inc. v. Sup.Ct.*, 9 Cal. 5th 279, 326, 332 (2020) (restitution is a

18  "clearly equitable remed[y]"). When a plaintiff alleges unjust enrichment, a court may "construe

19  the cause of action as a quasi-contract claim seeking restitution." *Astiana., Inc.*, 783 F.3d at 762.

20  Even if plaintiff did allege a quasi-contract claim, "[i]t is well settled that an action based on an

21  implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express

22  contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44

23  Cal. App. 4th 194, 203 (1996). A direct purchase equates to an express contract under the

24  California Commercial Code. *Smith v. Allmax Nutrition, Inc*., 2015 WL 9434768, at *9 (E.D. Cal.

25  Dec. 24, 2015) ("Although Rule 8… allows a party to state multiple, even inconsistent claims, the

26  rule does not allow a plaintiff invoking state law to assert an unjust enrichment claim while also

27  alleging an express contract."). Plaintiff alleges purchasing ColourPop products, which is an

28  express contract covering the same purchases and thus defeats her claim.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

94520245.16

21

COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1    Plaintiff does not plausibly allege facts showing ColourPop was unjustly enriched by

2  products that she "used" for "years" without issue. SAC ¶¶ 18, 70. This claim also fails because

3  there is no underlying basis for recovery. Because all the other claims should be dismissed, there

4  is no longer an underlying basis for recovery and this derivative claim should be dismissed. *Sprout*

5  *Foods*, 2022 WL 13801090, at *5.

6  **IX.    PLAINTIFF LACKS STANDING AND CANNOT BRING CLAIMS FOR OTHER REASONS.**

7    **A.    Plaintiff Does Not Have Standing to Seek Injunctive Relief Because She Has
8         Not Plausibly Alleged a Risk of Future Harm.**

   "A plaintiff must demonstrate constitutional standing separately for each form of relief

9  requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). A plaintiff

10 seeking injunctive relief must demonstrate a "real or immediate threat that they will be wronged

11 again—a likelihood of substantial and immediate irreparable injury." *City of L.A. v. Lyons*, 461

12 U.S. 95, 111 (1982). "[T]he injury or threat of injury must be both real and immediate, not

13 conjectural or hypothetical." *Id.* at 102. "A plaintiff threatened with future injury has standing to

14 sue if the threatened injury is certainly impending, or there is a substantial risk the harm will

15 occur." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018).

16   Plaintiff lacks standing to seek injunctive relief because she now knows (1) what the

17 allegedly "harmful" ingredients are and (2) that those ingredients are listed on the package. SAC ¶

18 4. The required ingredient list is displayed on the ColourPop products she purchased and online.

19 RJN Exs. 1-2. All plaintiff must do is look at the ingredient list in the future to determine if there

20 is a "harmful ingredient." She concedes that each of the shades she takes issue with has the

21 instruction "*not intended for use in the immediate eye area." RJN Exs. 1-2. Plaintiff does not

22 allege that she is unable to determine the ingredients. ¶ 79. Because there is no likelihood of future

23 harm, there is no standing to seek an injunction.

24   While under *Davidson* certain consumer-protection plaintiffs may seek injunctive relief, it

25 does not mean that all such plaintiffs can do so. *Davidson* is "narrower than a blanket conclusion

26 that plaintiffs seeking injunctive relief in mislabeling cases always have standing." *Schneider v.*

27 *Chipotle Inc.*, 328 F.R.D. 520, 528 (N.D. Cal. 2018). *Davidson* permits injunctive-relief claims

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   only where the consumer *credibly alleges* that she intends to purchase the product again but is

2   "*unable*" to determine whether the product remains deceptive. *Davidson v. Kimberly-Clark Corp.*,

3   889 F.3d 956, 970 (9th Cir. 2018). In *Davidson*, the plaintiff had a "desire to purchase truly

4   flushable wipes," but was "unable to rely on Kimberly-Clark's representations of its product in

5   deciding whether or not she should purchase the product in the future." *Id.* at 972. *Davidson* thus

6   only applies where the plaintiff wants to buy a reconstituted product but has no way of knowing

7   whether the reconstitution has occurred until after purchase and use.

8       Here plaintiff can tell from the outside packaging whether the ColourPop palettes have the

9   "harmful ingredients." This is not a case where the product characteristics are like "natural" or

10  "flushable," where the consumer cannot doublecheck the package to determine whether the

11  representation is true. *Davidson* at 970-71. Because she can determine the ingredients from the

12  packaging, she will not be fraudulently induced to purchase in the future. *Ham v. Hain Celestial*

13  *Inc.*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014) (dismissing requests for injunctive relief without

14  leave "[b]ecause [the plaintiff] is now aware that the products use [the particular ingredient at

15  issue], she cannot allege that she would be fraudulently induced to purchase the products in the

16  future").[11] In short, plaintiff has not established a "real and immediate threat of repeated injury"

17  sufficient to establish standing to assert her claim for injunctive relief. *Lyons*, 461 U.S. at 102.

18      **B.    Plaintiff Only Has Standing to Sue for the Two Products She Purchased**
            **Because Those are the Products That Could Have Caused Her an Injury.**
19
20      If plaintiff was bringing an individual suit against ColourPop, she could only seek a

21  _____

22  [11] *See also Sinatro v. Barilla Inc.*, 2022 WL 10128276, at *10 (N.D. Cal. Oct. 17, 2022)
    (dismissing request for injunctive relief because the plaintiffs could not "plausibly allege that they
23  remain unaware that the products are manufactured in the United States from ingredients that are
    not from Italy"); *Stewart v. Kodiak Cakes*, 537 F. Supp. 3d 1103, 1127 (S.D. Cal. 2021) (finding
24  no standing for injunctive relief where plaintiffs could "cross-check their previous disappointing
    purchases" by examining information on the front label with the nutrition facts label); *Martinez v.*
25  *Mead Johnson*, 2022 WL 15053334, at *8 (C.D. Cal. Oct. 22, 2022) (dismissing injunctive relief
    claim where plaintiff can look at the ingredient list of the product to determine the predominant
26  ingredients by weight); *Hawyuan Yu v. Dr Pepper Inc.*, 2020 WL 5910071, at *8 (N.D. Cal. Oct.
    6, 2020) ("Given what Plaintiff knows about Defendants' products and his preference for
27  applesauce and apple juice free of trace amounts of pesticides, the Court does not find it plausible
    that he would be misled into purchasing these Products in the future.").

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  remedy for the two products that she purchased. The same commonsense principle applies in class

2  actions. As one court explained, "[a] plaintiff has standing to assert injury based on a defective

3  product or false advertising only if the plaintiff experienced injury *stemming from the purchase of*

4  *that product*." *Granfield v. Nvidia Corp.*, 2012 WL 2847575 (N.D. Cal. July 11, 2012).

5  In *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901 (C.D. Cal. 2021), the court held that a

6  plaintiff only has Article III standing to bring a class action for the products that she purchased.

7  This same logic requires dismissal of all the products in this case beyond the two that plaintiff

8  purchased. The *Lorentzen* plaintiff brought a class action against Kroger alleging the grocery

9  chain's private-label coffee products are misleading. *Id.* at 905. While plaintiff only purchased one

10  type of Kroger's private-label coffee products, she brought a class action regarding eight types of

11  the coffee products. *Id.* at 909. She alleged all eight types made the same representations and are

12  similarly deficient. *Id.* at 905. Kroger argued that plaintiff lacked Article III standing to bring

13  claims for the seven other products she did not purchase. The court agreed. *Id.* at 907-09.

14  Federal courts have limited jurisdiction and can only hear "[c]ases" and "[c]ontroversies."

15  To constitute a case or controversy, a plaintiff must have standing and is required to prove they

16  suffered an "injury in fact." Some district courts have held that a plaintiff has Article III standing

17  to sue for products they did not purchase if the other products or representations are "substantially

18  similar." *Lorentzen* held these cases run afoul of binding Supreme Court precedent, including

19  *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) which held that "[n]or does a plaintiff who has been

20  subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in

21  litigating conduct of another kind, *although similar*, to which he has not been subject." *Lorentzen*

22  held that the "substantial similarity' analysis "appears to be inconsistent with the basic concept of

23  standing." *Lorentzen*, 532 F. Supp. 3d at 908. Indeed, "[t]he standing requirement extends to each

24  claim and each remedy sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

25  *Lorentzen* reasoned that "[t]he similarity of a product, by itself, says nothing about whether

26  a party suffered an injury traceable to the allegedly wrongful conduct of another. A plaintiff who

27  is falsely led to buy a product may claim injury resulting from that purchase; the same plaintiff,

28  however, cannot claim injury from similarly false advertising upon which he or she did not

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Case 3:22-cv-05198-TLT   Document 42   Filed 05/11/23   Page 33 of 33

injuriously rely (by buying a similar product or otherwise). Article III 'standing is not dispensed in gross.' *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). …Importing a 'substantial similarity' test into the principle of standing overlooks this point and invites an analysis that is both difficult to apply and unrelated to its objective." *Lorentzen* at 908-09. Likewise, "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis*, 518 U.S. at 357. *Lorentzen* held that because the plaintiff bought only one of the eight products, "[s]he therefore did not suffer any injury—economic or otherwise—related to the other seven Products." *Lorentzen* at 909. Because plaintiff did not have standing with respect to the products she did not purchase, the court dismissed plaintiff's claims with respect to those products. *Id.*

The same logic applies here. Plaintiff only purchased two palettes. Standing principles make clear she can only bring a class action for these two products she purchased.

In the alternative, plaintiff made no showing that the products are substantially similar. Each palette is manufactured with a unique mix of *different ingredients*. Plaintiff claims that the products at issue are makeup palettes as well as "eyeliner products." SAC ¶ 2. Plaintiff did not allege she purchased an eyeliner product. An eyeliner product that is meant to go on the eyes is not substantially similar to a generic makeup product that can be used for any part of the body and is safe per the FDA regulations.

## X.    CONCLUSION

Because the defect is one of legal theory and plaintiff has had three chances to plead claims, further amendment would be futile. The motion should be granted without leave.

Date: May 11, 2023                    LEWIS BRISBOIS BISGAARD & SMITH LLP


By:    _Michael Grimaldi_
          Michael K. Grimaldi
          Attorneys for Defendant ColourPop Cosmetics

COLOURPOP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW